1  Rachel Dollar, SBN 199977
   Sherrill A. Oates, SBN 213763
2  SMITH DOLLAR PC
   Attorneys at Law
3  404 Mendocino Avenue, Second Floor
   Santa Rosa, California 95401
4  Telephone:  (707) 522-1100
   Facsimile:   (707) 522-1101
5
   Attorneys for Defendants  Homeward Residential, Inc. formerly known as American
6  Home Mortgage Servicing, Inc. and Power Default Services, Inc.

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11 SAMUEL D. ELLSWORTH and ROBIN        CASE NO: SACV12-1499 AG (MLGx)
   ELLSWORTH,
12                                       DECLARATION OF CINDI ELLIS IN
          Plaintiffs,                    SUPPORT OF MOTION FOR
13                                       SUMMARY JUDGMENT OR, IN THE
   v.                                    ALTERNATIVE, PARTIAL
14                                       SUMMARY JUDGMENT
   AMERICAN HOME MORTGAGE
15 SERVICING, INC., a business entity
   form unknown and POWER DEFAULT        Date:  June 3, 2013
16 SERVICES, INC.,  a business entity form Time: 10:00 a.m.
   unknown and DOES 1-100, inclusive     Dept:  10D
17
          Defendants.                    Judge: Honorable Andrew J. Guilford
18
                                         Complaint Filed:  August 2, 2012
19                                       Trial Date:        N/A

20

21     I, Cindi Ellis, declare:

22     1.     I am over the age of 18 and am the Foreclosure Mediations Manager of

23 Defendant Homeward Residential, Inc ("Homeward"), formerly known as American

24 Home Mortgage Servicing, Inc. I have personal knowledge of the facts set forth in

25 this declaration unless alleged herein on information and belief and could testify

26 competently thereto if called upon to do so. I am also a duly authorized custodian of

27 the records for Homeward.  As such I am familiar with Homeward's books, records

28
                                  - 1 -

1   and files with respect to the loan which is the subject of this action, a loan to Samuel

2   D. and Robin Ellsworth ("Plaintiffs") in the original principal amount of $1,500,000

3   (the "Loan") secured by a deed of trust recorded against the title to the property

4   located at 1702 La Loma Drive, Santa Ana, California (the "Property"). I have the

5   authority to certify the records submitted herewith.   The photocopied records

6   submitted herewith are true and correct copies of the records described in this

7   Declaration. All such records were prepared or compiled by Homeward personnel in

8   the ordinary course of business, at or near the time of the acts, conditions, or events

9   recorded by a person who has personal knowledge of the events being recorded, and

10   who had a business duty to record such events. I am familiar with the Loan and with

11   the litigation in this case. I have reviewed the records of Homeward in connection

12   with this Declaration.

13       2.      Plaintiffs executed both a Note and Deed of Trust as security for the

14   Loan. Attached hereto as Ex. 1 is a true and correct copy of the Note. Attached

15   hereto as Ex. 2 is a true and correct copy of the Deed of Trust.

16       3.      When the Loan closed, Plaintiffs, or some other party by or through

17   them received cash-out proceeds in the amount of $359,777.72. A true and correct

18   copy of the HUD-1 Settlement Statement is attached hereto as Ex. 3.

19       4.      Homeward evaluated Plaintiffs for a loan modification and offered them

20   a loan modification.   In June 2009, Homeward received a completed loan

21   modification agreement from Plaintiffs.   A true and correct copy of the loan

22   modification agreement is attached hereto as Ex. 4.

23       5.      Plaintiffs defaulted on their modified payments and Homeward began

24   trying to contact them by telephone to discuss the delinquency. Homeward uses an

25   automated process that records the contact or attempted contact information in a

26   Consolidated Notes Log (the "Log"). Attached hereto as Exhibit 5 is a true and

27   correct copy of the Log.

28

- 2 -

DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO: SACV12-1499 AG (MLGx)

6.     Homeward caused a Notice of Default ("NOD") to be recorded on or about April 16, 2012.  A true and correct copy of the NOD is attached hereto as Ex. 6.

7.     Homeward sent Plaintiffs several letters regarding their delinquency and possible workout options.  Attached hereto as Ex. 7, 8, & 9 are true and correct copies of some of the letters.

8.     On or about January 19, 2012, a letter regarding Plaintiffs' default on the Loan was prepared by Homeward and sent to Plaintiffs by certified mail.  A true and correct copy of the letter is attached hereto as Ex. 10.

9.     In February 2012, Homeward generated a letter to Plaintiffs known as the "No Contact" Letter.  It is Homeward's practice to send such letters by certified mail with a return receipt requested, and regular mail.

10.    After the NOD was recorded, Homeward continued to attempt to contact Plaintiffs regarding the Loan and the delinquency.

11.    Homeward maintains a toll-free telephone number for customers to use to contact it during business hours.  The toll-free number is (877)304-3100.  Customers may call and reach a live representative Monday through Friday from 7am to 9pm Central Time and Saturday from 7 am to 1 pm Central Time.

12.    Homeward maintains an internet web site that includes information concerning foreclosure-avoidance options, a list of financial documents borrowers should collect to enable them to discuss foreclosure-avoidance options with Homeward; Homeward's toll-free telephone number; HUD's toll-free telephone number to reach a HUD-certified counselling agency.  Attached hereto as Exhibit 11 is a true and correct copy of the website information.

13.    Attached hereto as Exhibit 12 is a true and correct copy of the Ellsworth's payment history current through February 2013.  There has been no payment made on the Ellsworth's Loan since January of 2012.  Homeward continues

DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO: SACV12-1499 AG (MLGx)

1   to advance payments for insurance and taxes.

2         14.   I declare under penalty of perjury under the laws of the State of

3   California and the United States that the foregoing is true and correct. Executed this

4   __11__ day of April, 2013, in Duval County, Florida.

5

6

7

8                           Cindi Ellis

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO: SACV12-1499 AG (MLGx)



Exhibit 1

MIN: 1000157-0006302080-0                    Loan Number: 00628856

## ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

JANUARY 24, 2006                SANTA ANA                CALIFORNIA
   [Date]                            [City]                            [State]

   1702 LA LOMA DRIVE, LEMON HEIGHTS (AREA), CALIFORNIA 92705
                           [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $1,500,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed (ONE HUNDRED FIFTEEN PERCENT       ) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   1.500 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the           1st        day of MARCH, 2006           , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 725/1000           percentage point(s)   2.725 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than   9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the           1st        day of each month beginning on MARCH 1, 2006. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707
or at a different place if required by the Note Holder.

Borrower Initials: _____ _____ _____ _____ _____
PayOption ARM Note - MTA Index
FE-5312 (0511)                              Page 1 of 4

**EXHIBIT 1**
**PAGE 1**

**(B)   Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $5,176.80       unless adjusted under Section 3 (F).

**(C)   Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the   1st
                         day of   MARCH, 2007      , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below.   If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)   Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to   115.000   percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)   Required Full Payment**
On the     5th       Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)   Payment Options**
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:
(i)     Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii)    Fully Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
(iii)   15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

Borrower Initials: _____  _____  _____  _____      .
PayOption ARM Note - MTA Index
FE-5312 (0511)                          Page 2 of 4

**EXHIBIT 1**
**PAGE 2**

Us531222 cw

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

Borrower Initials: _____ _____ _____ _____ _____ _____

PayOption ARM Note - MTA Index
FE-5312 (0511)                                          Page 3 of 4

EXHIBIT 1
PAGE 3

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____ (Seal)
SAMUEL D. ELLSWORTH                    -Borrower

_____ (Seal)
ROBIN ELLSWORTH                        -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

PayOption ARM Note - MTA Index
FE-5312 (0511)                                      Page 4 of 4



EXHIBIT 1
PAGE 4

MIN: 1000157-0006302080-0                    Loan Number: 00628856

# ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

JANUARY 24, 2006            SANTA ANA                CALIFORNIA
[Date]                      [City]                   [State]

1702 LA LOMA DRIVE, LEMON HEIGHTS (AREA), CALIFORNIA 92705
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $1,500,000.00  (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed (ONE HUNDRED FIFTEEN PERCENT        ) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST
### (A)  Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  1.500 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B)  Interest Rate Change Dates
The interest rate I will pay may change on the         1st       day of MARCH, 2006         , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C)  Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)  Calculation of Interest Rate Changes
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 725/1000        percentage point(s)  2.725 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than  9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3.  PAYMENTS
### (A)  Time and Place of Payments
I will make a payment every month.
I will make my monthly payments on the         1st       day of each month beginning on MARCH 1, 2006. I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707
or at a different place if required by the Note Holder.

Borrower Initials: _____  _____  _____  _____  _____
PayOption ARM Note - MTA Index
FE-5312 (0511)                                        Page 1 of 4

EXHIBIT 1
PAGE 5

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $5,176.80 unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of MARCH, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the Last Payment Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to 115.000 percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the 5th Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)  **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)  **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)  **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

Borrower Initials: _____ _____ _____ _____ _____

PayOption ARM Note - MTA Index
FE-5312 (0511)                                        Page 2 of 4

**EXHIBIT 1**

**PAGE 6**

**4.   NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY  ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

Borrower Initials: _____  _____  _____  _____

PayOption ARM Note - MTA Index
FE-6312 (0511)                                Page 3 of 4

EXHIBIT 1

PAGE 7

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____ (Seal)
SAMUEL D. ELLSWORTH          -Borrower

_____ (Seal)
ROBIN ELLSWORTH              -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

Exhibit 2

RECORDING REQUESTED BY:
LandAmerica Commonwealth Title

**This Document was electronically recorded by Common Wealth**

Recording Requested By:
FIRST GUARANTY FINANCIAL
CORPORATION

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

||||||||||||||||||||||||  69.00
**2006000071388 04:30pm 01/31/06**
227 92 D11 22
0.00 0.00 0.00 0.00 63.00 0.00 0.00 0.00

And After Recording Return To:
FIRST GUARANTY FINANCIAL CORPORATION
3 HUTTON CENTRE, STE#150
SANTA ANA, CALIFORNIA 92707
Loan Number: 00628856

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

MIN: 1000157-0006302080-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated  JANUARY 24, 2006         , together with all Riders to this document.
**(B)** "Borrower" is SAMUEL D. ELLSWORTH AND ROBIN ELLSWORTH, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is FIRST GUARANTY FINANCIAL CORPORATION

Lender is a CALIFORNIA CORPORATION                                             organized
and existing under the laws of  CALIFORNIA
Lender's address is 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707

**(D)** "Trustee" is  LAND AMERICA COMMONWEALTH
28 EXECUTIVE PARK, STE 300, IRVINE, CALIFORNIA 92614

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated  JANUARY 24, 2006     .
The Note states that Borrower owes Lender ONE MILLION FIVE HUNDRED THOUSAND AND 00/100                                      Dollars (U.S. $ 1,500,000.00     ) plus interest.

Borrower Initials:  _____   _____   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *eForms* 800-649-1362
Form 3005 01/01                              Page 1 of 14                                    www.docmagic.com

**EXHIBIT 2**
**PAGE 1**

Ca3005l.mzd.1.tem

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1, 2036 .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY    of            ORANGE             :

[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

Borrower Initials: _AK_ _K_ _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 2 of 14

DocMagic *eFerns* 800-649-1362
www.docmagic.com

Ca30052.mzd.2.tem

**EXHIBIT 2**
**PAGE 2**

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 502-181-19

which currently has the address of   1702 LA LOMA DRIVE

[Street]

LEMON HEIGHTS (AREA)        , California    92705     ("Property Address"):

[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Borrower Initials:

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                            Page 3 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

EXHIBIT 2
PAGE 3

Ca30053.mzd.3.tem

Loan Number: 00628856

Date: JANUARY 24, 2006

Property Address: 1702 LA LOMA DRIVE, LEMON HEIGHTS (AREA), CALIFORNIA 92705

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 502-181-19

DocMagic eForms 800-649-1362
www.docmagic.com

**EXHIBIT 2**

**PAGE 4**

Exhibit A

All that certain real property situated in the County of Orange, State of California, described as follows:

PARCEL 1:

THAT PORTION OF BLOCK 14 OF IRVINE' S SUBDIVISION, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 1, PAGE 88 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF LOT 349, IN BLOCK 14 OF SAID IRVINE'S SUBDIVISION, AND RUNNING THENCE NORTH 40 DEGREES EAST 1320 FEET; THENCE SOUTH 50 DEGREES EAST 1320 FEET; THENCE SOUTH 40 DEGREES WEST 931.84 FEET; THENCE NORTH 20 DEGREES 29' WEST 193.09 FEET TO THE TRUE POINT OF BEGINNING OF THE BOUNDARY OF LAND DESCRIBED HEREIN; THENCE NORTH 55 DEGREES 55' EAST 169.38 FEET; THENCE NORTH 18 DEGREES 16' WEST 73.82 FEET; THENCE NORTH 27 DEGREES 56' WEST 98.14 FEET TO THE MOST EASTERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO JOHN C. BLYSTONE AND OTHERS, RECORDED AUGUST 19, 1949 IN BOOK 1891, PAGE 184 OF OFFICIAL RECORDS; THENCE SOUTH 55 DEGREES 16' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LAND CONVEYED TO BLYSTONE, 182.72 FEET TO THE MOST NORTHERLY CORNER OF THE PARCEL OF LAND DESCRIBED IN PARCEL 1 OF THE DEED TO EMMET C. ROGERS AND WIFE, RECORDED DECEMBER 31, 1959 IN BOOK 5038, PAGE 588 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHEASTERLY LINE OF SAID LAND, SOUTH 21 DEGREES 07' 40" EAST 170.88 FEET TO THE MOST EASTERLY CORNER OF SAID LAND; THENCE NORTH 55 DEGREES 55' EAST 21.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 2:

AN EASEMENT FOR ROAD AND PUBLIC UTILITY PURPOSES ALONG A STRIP OF LAND 40 FEET IN WIDTH, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE NORTHEASTERLY LINE OF SAID LAND CONVEYED TO BLYSTONE BY DEED RECORDED IN BOOK 1319, PAGE 510 OF OFFICIAL RECORDS, DISTANT THEREON SOUTH 50 DEGREES 04' 30" EAST 646.63 FEET FROM THE MOST NORTHERLY CORNER THEREOF AND RUNNING THENCE SOUTH 10 DEGREES 58' 30" WEST 192.36 FEET; THENCE SOUTH 39 DEGREES 58' 30" WEST 241.31 FEET; THENCE SOUTH 9 DEGREES 04' 45" EAST 167.16 FEET; THENCE SOUTH 34 DEGREES 20' EAST 112 FEET; THENCE SOUTH 26 DEGREES 07' 30" EAST 44.95 FEET; EXCEPTING FROM SAID LAST MENTIONED COURSE THE NORTHEASTERLY 20 FEET THEREOF.

PARCEL 3:

AN EASEMENT FOR SEWER PURPOSES OVER A STRIP OF LAND 10.00 FEET IN WIDTH THE NORTHWESTERLY LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE TRUE POINT OF BEGINNING OF PARCEL 1 ABOVE DESCRIBED; THENCE SOUTH 55 DEGREES 55' 00" WEST 10.00 FEET, SAID POINT BEING THE TRUE POINT OF BEGINNING OF SAID NORTHWESTERLY LINE; THENCE CONTINUING SOUTH 55 DEGREES 55' 00" WEST 11.00 FEET; THENCE SOUTH 39 DEGREES 15'45" WEST 96.57 FEET.

EXHIBIT 2
PAGE 5

legal rev. (010698)

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Borrower Initials: _____

**EXHIBIT 2**
**PAGE 6**

Ca3005.4.mzd.4.tem

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower  Initials: _____   _____   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 5 of 14                         *DocMagic* 800-649-1362
                                                                                                    www.docmagic.com

**EXHIBIT 2**
**PAGE 7**

Ca30055 mzd.5.tem

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Borrower  Initials: _____  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 6 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

EXHIBIT 2
PAGE 8

Ca3005 mzd.6.tem

**8.  Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These

Borrower Initials: _____ _____ _____ _____ _____ _____

**EXHIBIT 2**
**PAGE 9**

Cx30057.mzd.7.tem

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower Initials: _____  _____  _____  _____  _____  _____

EXHIBIT 2
PAGE 10

Ca30058.mzd 8.tem

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

Borrower Initials: _____  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01

Page 9 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

**EXHIBIT 2**

**PAGE 11**

Ca30059.mzd.9.tem

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

Borrower Initials: _____ _____ _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 10 of 14

*DocMagic* 800-649-1362
www.docmagic.com

Ca3005l0.mxd.10.tem

**EXHIBIT 2**

**PAGE 12**

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

Borrower Initials:

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic *eRoms* 800-645-1362
Form 3005 01/01                          Page 11 of 14                              www.docmagic.com

Ca300511.mzd.11.tem

**EXHIBIT 2**
**PAGE 13**

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Borrower Initials:

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                       Page 12 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005l2.mzd.12.tem

**EXHIBIT 2**
**PAGE 14**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SAMUEL D. ELLSWORTH                -Borrower

_____ (Seal)
ROBIN ELLSWORTH                    -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

Witness:                           Witness:

_____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

**EXHIBIT 2**
**PAGE 15**

Ca30D513.mzd.13.tem

State of California                          )
                                             ) ss.
County of  ORANGE                            )

On  Jan. 24, 2006  before me,  D. K. Baumgartner, Notary Public

personally appeared  SAMUEL D. ELLSWORTH, ROBIN ELLSWORTH

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

D. K. BAUMGARTNER
Commission # 1471898
Notary Public - California
Riverside County
My Comm. Expires Mar 4, 2008

NOTARY SEAL

_____
NOTARY SIGNATURE

D.K. Baumgartner
_____
(Typed Name of Notary)

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 14 of 14

DocMagic eForms  800-649-1362
www.docmagic.com

EXHIBIT 2
PAGE 16

Ca30014.mzd.14.tem

GOVERNMENT CODE 27361.7

I certify under penalty that the Notary Seal on the document to which this statement is attached read as follows:

NAME OF THE NOTARY:  D. K. Baumgartner

DATE COMMISSION EXPIRES:  March 4, 2008

COUNTY WHERE BOND IS FILED:  Riverside

COMMISSION NUMBER: 1471898                    VENDOR NUMBER:  NNA1

I certify under penalty of perjury and the laws of the State of California that the illegible portion of this document to which this statement is attached reads as follows:

PLACE OF EXECUTION Irvine                    DATE  1/26/06

SIGNATURE

*personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

**EXHIBIT 2**
**PAGE 17**

MIN: 1000157-0006302080-0                    Loan Number: 00628856
Doc ID#:

## ADJUSTABLE RATE RIDER

### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this       24th       day of  JANUARY
    2006           , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and
located at:

    1702 LA LOMA DRIVE, LEMON HEIGHTS (AREA), CALIFORNIA 92705
                          [Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.    INTEREST**
    **(A)  Interest Rate**
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I
will pay interest at a yearly rate of     1.500 %. The interest rate I will pay may change.
    The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note.

    **(B)  Interest Rate Change Dates**
    The interest rate I will pay may change on the     1st       day of  MARCH
    2006           , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

Borrower Initials: _____   _____   _____   _____   _____

**PayOption MTA ARM Rider**
**FE-5315 (0511)**                      Page 1 of 5

EXHIBIT 2
PAGE 18

Us531511.cw

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 725/1000 percentage point(s) 2.725 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than 9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on MARCH 1, 2006 . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 5,176.80 unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of MARCH, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

Borrower Initials: _____

PayOption MTA ARM Rider

FE-5315 (0511)                                  Page 2 of 5

EXHIBIT 2
PAGE 19

Us531322.cw

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to  my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE  HUNDRED FIFTEEN  AND  000/1000 percent ( 115.000 %)of  the  Principal  amount  I  originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the    5th       Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**PayOption MTA ARM Rider**

FE-5315 (0511)                                                    Page 3 of 5

Borrower Initials:

**EXHIBIT 2**

**PAGE 20**

Us331533.cw

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)   **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii)   **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii)   **15 Year Amortized Payment:**  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Borrower Initials: _____  _____  _____  _____  _____

PayOption MTA ARM Rider
**FE-5315 (0511)**                                    Page 4 of 5

**EXHIBIT 2**
**PAGE 21**

UsS31544.cw

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  -Borrower
SAMUEL D. ELLSWORTH

_____  -Borrower
ROBIN ELLSWORTH

_____  -Borrower

_____  -Borrower

PayOption MTA ARM Rider
**FE-5315 (0511)**                    Page 5 of 5

**EXHIBIT 2**
**PAGE 22**

Us531555.cw

Exhibit 3

| A.  U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B.        TYPE      OF      LOAN |
|---|---|

**⬥ OMB No. 2502-0265**

| **A.  U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** |
|---|
| **SETTLEMENT STATEMENT** |

| B.        TYPE      OF      LOAN |
|---|
| 1. ☐ FHA   2. ☐ FHMA   3. ☐ CONV. UNINS. |
| 4. ☐ VA   5. ☐ CONV. INS. |
| 6. FILE NUMBER:   05-2739 | 7. LOAN NUMBER:   00628856 |
| 8. MORTGAGE INS. CASE NO.: |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME & ADDRESS OF BORROWER: | Samuel D. Ellsworth and Robin Ellsworth   1702 La Loma Drive, Santa Ana, CA 92705 |
|---|---|
| E. NAME & ADDRESS OF SELLER: | |
| F. NAME & ADDRESS OF LENDER: | First Guaranty Financial Corporation   3 Hutton Centre, #150, Santa Ana, CA 92707 |
| G. PROPERTY LOCATION: | 1702 La Loma Drive, Santa Ana, CA 92705 |
| H. SETTLEMENT AGENT: | American Union Escrow |
| | PLACE OF SETTLEMENT: 3200 Bristol Street, Suite 650, Costa Mesa, CA 92626 (800) 982-8773 |

| I. SETTLEMENT DATE:   1/31/2006   Final | DISBURSEMENT DATE:   2/01/2006 |
|---|---|

| J.   Summary of Borrower's Transaction | | K.   Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 8,106.59 | 403. | |
| 104. Payoff To Thornburg Mortgage | 1,002,111.75 | 404. | |
| 105. Payoff To Wells Fargo Bank | 130,003.94 | 405. | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower:** | 1,140,222.28 | **420. Gross Amount Due To Seller:** | |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 1,500,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st Mtg. Ln. | |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| | | | |
| **220. Total Paid By/For Borrower:** | 1,500,000.00 | **520. Total Reductions In Amount Due Seller:** | |
| **300. Cash At Settlement From/To Borrower:** | | **600. Cash At Settlement From/To Seller:** | |
| 301. Gross amount due from borrower (line 120) | 1,140,222.28 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 1,500,000.00 | 602. Less reductions in amount due seller (line 520) | |
| 303. Cash ( ☐ FROM) ☒ TO) Borrower: | 359,777.72 | 603. Cash ( ☐ TO) ( ☐ FROM) Seller: | 0.00 |

CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL.   *Christina F. Meda*

Previous Edition Is Obsolete
Form No. 1581
3/86

SB-4-3538-000-1
HUD-1 (3-86)
RESPA, HB 4305.2

EXHIBIT 3
PAGE 1

| | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission: Based On Price $ @ % = | | | |
| Division of Commission (line 700) As Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable in Connection With Loan:** | | | |
| 801. Loan Origination fee % | | | |
| 802. Loan Discount % | | | |
| 803. Appraisal fee to: American Residential Funding POC   $1,000.00 | | | |
| 804. Credit report to: | | | |
| 805. Lender's inspection fee | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption fee | | | |
| 808. Lender Fee To: First Guaranty Financial Corporation | | 1,415.00 | |
| 809. Yield Spread Premium To: American Residential Funding POC   $1,875.00 | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 816. | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest from 1/30/2006 to 2/01/2006 @$ 61.6440 /day | | 61.64 | |
| 902. Mortgage insurance premium for mo. to | | | |
| 903. Hazard insurance premium for yrs. to | | | |
| 904. Flood insurance premium for yrs. to | | | |
| 905. | | | |
| 906. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard insurance months @ $ per month | | | |
| 1002. Mortgage insurance months @ $ per month | | | |
| 1003. City property taxes months @ $ per month | | | |
| 1004. County property taxes months @ $ per month | | | |
| 1005. Annual assessments months @ $ per month | | | |
| 1006. Flood insurance months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| 1008. Aggregate Adjustment | | | |
| 1009. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to American Union Escrow | | 750.00 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| (includes above item Numbers: ) | | | |
| 1108. Title Insurance to Commonwealth Land Title Company | | | |
| (includes above item Numbers: ) | | 2,346.00 | |
| 1109. Lender's coverage $ 1,500,000.00 Premium: $2,346.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. E-Mail/Loan Doc Prep Fee to American Union Escrow | | 150.00 | |
| 1112. Overnight/Fed Ex Fees to American Union Escrow | | 50.00 | |
| 1113. Loan Doc Prep Fee For 2nd to American Union Escrow | | 50.00 | |
| 1114. Exhibit "B" Attached Hereto | | 100.00 | |
| **1200. Government Recording and Transfer Charges:** | | | |
| 1201. Recording fees: Deed $ :Mortgage $ 69.00 :Releases $ | | 69.00 | |
| 1202. City/county tax/stamps: Deed $ :Mortgage $ | | | |
| 1203. State tax/Stamps: Deed $ :Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. Hazard Insurance to Abernathy Insurance Agency | | 1,879.95 | |
| 1304. Credit Payment to Crescent Collection | | 642.00 | |
| 1305. Credit Payment to Central Finance | | 593.00 | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| **1400. Total Settlement Charge** *(Enter on line 103, Section J - and - line 502, Section K)* | | 8,106.59 | |

Form No. 1582

Escrow: 05-2739

SB-4-3538-000-1

EXHIBIT 3
PAGE 2

Page 2 of 2

ATTACHMENT TO HUD 1                                    Escrow No.:          05-2739
Settlement Date:  1/31/2006                            Title No.:

                                                                  Page:        1

**EXHIBIT A: (HUD Section 100)**                       Buyer Amount  Seller Amount
Gross Amount Due From Borrower - Loan Payoff Breakdown:

**Thornburg Mortgage**
Principal Balance To: Thornburg Mortgage                 974,403.20
Statement / Demand Fee To: Thornburg Mortgage                59.85
Recording Fee To: Thornburg Mortgage                         16.00
Escrow Advance To: Thornburg Mortgage                    21,816.16
Late Charge To: Thornburg Mortgage                          263.90
Interest Per Diem From  1/01/2006 to 2/02/2006 @ $    173.5200 To: Thornburg Mort       5,552.64
                                      Total:           1,002,111.75

**Wells Fargo Bank**
Principal Balance To: Wells Fargo Bank                   128,279.60
Interest Per Diem From  / /   to  2/02/2006 @ $     29.4300 To: Wells Fargo Bank          1,518.70
Late Charge To: Wells Fargo Bank                             45.64
Miscellaneous Charge To: Wells Fargo Bank                    75.00
Reconveyance Fee To: Wells Fargo Bank                        45.00
Statement / Demand Fee To: Wells Fargo Bank                  40.00
                                      Total:            130,003.94

**EXHIBIT B: (HUD Section 1100)**                      Buyer Amount  Seller Amount
Title Charges:

Endorsement to Commonwealth Land Title Company               25.00
Electronic Recording Fee to Commonwealth Land Title Company  20.00
Sub Escrow Fee to Commonwealth Land Title Company            40.00
Overnight Fees to Commonwealth Land Title Company            15.00
                                      Total:               100.00

CERTIFIED THAT THIS IS A
TRUE & CORRECT COPY OF
THE ORIGINAL.
*Christine E. Meade*

EXHIBIT 3
PAGE 3

Exhibit 4



AMERICAN HOME MORTGAGE INC.
*Servicing*
at a higher power

April 28, 2009

RE ;E .V, EF
JUN 08 2009
BY: --------------------

Samuel D Ellsworth
Robin Ellsworth
1702 La Loma Dr
Santa Anna, CA 92705

Re: Loan No. 0030995377

### **\*\*\*\* URGENT MESSAGE – TIME SENSITIVE – REQUIRES IMMEDIATE ATTENTION – THIS COULD SAVE YOUR HOME FROM FORECLOSURE! \*\*\*\***

*American Home Mortgage Servicing (AHMSI) knows that these are difficult times and we are here to help you. Our records show that your account is delinquent or perhaps already in foreclosure. We have developed a special program that will ease your payment burden over the next few years and will assist you in keeping your home through this difficult period. Please read the following information carefully and respond to us as quickly as possible. This is a limited time offer and requires your immediate attention.*

Dear Samuel D Ellsworth And Robin Ellsworth:

As you are aware, the above referenced loan is seriously delinquent and may be in foreclosure. Because we do not want you to lose your home, we are pleased to advise that you are eligible for a permanent loan modification that will allow us to suspend your loan from foreclosure, bring your loan current and stop the principal balance from increasing. While we know that your monthly payment may increase, you will have the comfort of knowing that it is fixed for a three year period and then will increase slowly for a few years until it reaches a final fixed interest rate. Overall your loan will be much more affordable and will allow you to build equity in your property.

Contingent on you executing the enclosed Loan Modification Agreement and returning it, along with the required down payment, by May 27th, 2009, to the address and in the amount as indicated in the agreement, we will modify the terms of your loan documents in accordance with the following:

1) The amount of your arrearage (which includes but is not limited to accrued and unpaid interest, accrued late charges, and advances made by us for your tax and insurance payments, attorneys' fees and costs, property inspections, etc.) will be added to your loan balance, bringing your loan current.

**EXHIBIT 4**
**PAGE 1**

2) The amount of arrearage that is added to your loan balance, plus the amount of negative amortization that has accrued on your loan, will not amortize or accrue interest for the remaining term of your loan (instead being due in a lump sum upon maturity of the loan)

3) Your monthly payments of principal and interest will be calculated at a fixed rate of 2% for a period of 3 years, effective May 1, 2009, 3% for 1 year, effective May 1, 2012, 4% for 1 year, effective May 1, 2013, 5% for 1 year, effective May 1 2014 and 6% for the remaining term of your loan, effective May 1, 2015.

4) Your May 2009 payment(s) (your down payment) will be due at signing, so your regular modified monthly payments will not begin until June 1, 2009.

5) There will be no fees assessed to complete this loan modification.

We must receive your down payment, in the form of a cashier's check or certified funds, and the Loan Modification Agreement, signed by all borrowers (and any non-borrower mortgagors), on or before May 27th, 2009. All four pages of the Loan Modification Agreement along with Schedule A must be returned. We have provided a self-addressed, prepaid express delivery envelope for your convenience. Also provided for your convenience are two originals of the Loan Modification Agreement so you can retain one for your records.

As a further inducement to you to accept this offer, if you return your down payment and agreement, signed as indicated above, for our receipt on or before May 13th, 2009, we will send you a VISA gift card (or its equivalent) in the amount of $250.00, by June 30, 2009.

If you have any questions regarding this important opportunity, please contact us at your earliest convenience at (877) 304-3100. Our office hours are Monday through Friday, 7:00 a.m. to 9:00 p.m., and Saturday, 7:00 a.m. to 1:00 p.m., Central Time.

Sincerely,
American Home Mortgage Servicing, Inc.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR, BUT IT DOES NOT IMPLY THAT AMERICAN HOME MORTGAGE SERVICING, INC. IS ATTEMPTING TO COLLECT MONEY FROM ANYONE WHOSE DEBT HAS BEEN DISCHARGED PURSUANT TO (OR IS UNDER THE PROTECTION OF) THE BANKRUPTCY LAWS OF THE UNITED STATES; IN SUCH INSTANCES, IT IS INTENDED SOLELY FOR INFORMATIONAL PURPOSES.

**EXHIBIT 4**
**PAGE 2**

Loan #_____

# LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate with Balloon Payment)

## BALLOON PAYMENT DISCLOSURE

**THIS MODIFICATION AGREEMENT CONVERTS YOUR LOAN INTO A BALLOON LOAN, WHICH MEANS THAT EVEN IF YOU MAKE ALL YOUR SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM (WHICH REMAINS AS SET FORTH IN THE NOTE). AS A RESULT, ON THE MATURITY DATE, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE (THE BALLOON PAYMENT INDICATED IN PARAGRAPH 2 BELOW) PLUS ALL ACCRUED AND UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).**

***CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE*** **– LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTERST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.**

This Loan Modification Agreement ("Agreement"), made this 1st day of April 2009 (the "Effective Date"), between <u>Samuel D Ellsworth And Robin Ellsworth</u> (collectively "Borrower") and American Home Mortgage Servicing, Inc. as Servicer ("Loan Servicer"), modifies (1) the mortgage, deed of trust, or security deed (the "Security Instrument") dated <u>January 24, 2006,</u> and (2) the promissory note (the "Note"), bearing the same date as, and secured by, the Security Instrument (Borrower's obligation under the Note, Security Instrument and this Agreement hereinafter referred to as the "Loan"), which covers the real and personal property located at <u>1702 La Loma Dr, Lemon Heights Area, CA, 92705,</u>

(Property Address)

more fully described in the Security Instrument and defined therein as the "Property." All capitalized terms in this Agreement shall have the same meanings as set forth in the Note and Security Instrument, unless defined in this Agreement; all schedules and exhibits attached to this Agreement are incorporated into and made part of this Agreement; and all references to this Agreement include the schedules and exhibits.

In consideration of the mutual promises and agreements exchanged, Loan Servicer and Borrower agree that the Note and Security Instrument shall be modified hereby as follows:

1. As of April 1, 2009 the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $1,631,128.64 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A", attached hereto and made a part hereof. The amount that shall bear interest and amortize in accordance with the terms of this Agreement is referred to herein as the "Amortizing Amount," which may be equal to or less than the New Principal Balance, as specified in paragraph 2 below.

**EXHIBIT 4**
**PAGE 3**

2. This Agreement contains a balloon feature that offers the advantage of lower monthly payments but the disadvantage of a significant portion of the New Principal Balance, referred to herein as the "Balloon Payment," being due and payable in a lump sum on the Maturity Date. Borrower understands and agrees that the New Principal Balance consists of the sum of (i) an Amortizing Amount of U.S. $1,500,000.00 and (ii) a Balloon Payment (a principal deferment that will not accrue interest and will not amortize over the remaining term of the Loan) of U.S. $131,128.64.

3. Borrower promises to pay the New Principal Balance, plus interest on the Amortizing Amount, to the order of Loan Servicer. Interest will be charged on the Amortizing Amount at the yearly rate of 2% for the three (3) year period beginning on the 1st day of April, 2009, and Borrower promises to pay monthly payments of principal and interest in the amount of $6,023.45 (plus any amounts due for taxes and insurance as set forth in Schedule "A"), beginning on the 1st day of May, 2009; provided that the payment due for May 1, 2009, is made in a lump sum upon execution of this Agreement (the "Mod Start Payment"). After the Mod Start Payment is made, the next payment will be due June 1, 2009. If the Loan is an adjustable-rate mortgage ("ARM") loan and Borrower receives an ARM adjustment notice prior to the payment beginning date indicated in the preceding sentence, Borrower should ignore such notice and make payments in accordance with this Agreement. During the fourth year, interest will be charged on the Amortizing Amount at the yearly rate of 3% from April 1, 2012, and Borrower shall pay monthly payments of principal and interest in the amount of $6,707.79 (plus any amounts due for taxes and insurance), beginning on the 1st day of May, 2012. During the fifth year, interest will be charged on the Amortizing Amount at the yearly rate of 4%, from April 1, 2013, and Borrower shall pay monthly payments of principal and interest in the amount of $7,407.86 (plus any amounts due for taxes and insurance), beginning on the 1st day of May, 2013. During the sixth year, interest will be charged on the Amortizing Amount at the yearly rate of 5%, from April 1, 2014, and Borrower shall pay monthly payments of principal and interest in the amount of $8,119.12 (plus any amounts due for taxes and insurance), beginning on the 1st day of May, 2014. During the seventh year, and for the remaining term of the loan, interest will be charged on the Amortizing Amount at the yearly rate of 6%, from April 1, 2015, and Borrower shall pay monthly payments of principal and interest in the amount of $8,837.40 (plus any amounts due for taxes and insurance), beginning on the 1st day of May, 2015, and continuing thereafter on the same day of each succeeding month until the Maturity Date or until the New Principal Balance and interest on the Amortizing Amount are paid in full, whichever is sooner. If on February 01, 2036 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts (including but not limited to the Balloon Payment) in full on the Maturity Date.

**AS MORE PARTICULARY SET FORTH IN PARAGRAPH 8, THIS AGREEMENT SHALL BE VOID AND NOT TAKE EFFECT UNLESS THE MOD START PAYMENT IN THE FORM OF A CASHIER'S CHECK OR CERTIFIED FUNDS, AND THIS AGREEMENT, ARE RECEIVED ON OR BEFORE MAY 27, 2009.**

4. Borrower will comply with all covenants, agreements, and requirements of the Security Instrument, including, without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the Effective Date:

  (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to any change or adjustment in the rate of interest payable under the Note; and

  (b) all terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands, acknowledges and agrees that:

LOAN MODIFICATION AGREEMENT (FOA Balloon Step Mod)—Single Family—AHMSI Instrument     Form (4-23-09)     (page 2 of 5)
MODC20A134

**EXHIBIT 4**
**PAGE 4**

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Note and Security Instrument shall also apply to default in the making of the modified payments under this Agreement.

(b)    Except as herein modified, all covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect and none of Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Loan Servicer's or Note Holder's rights or remedies under the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Loan Servicer and Note Holder are presently entitled against the Property, Borrower, any other property or any other persons in any way obligated for, or liable on, the Note and Security Instrument, are expressly reserved by Loan Servicer and Note Holder.

(c)    Borrower has no right of set-off or counterclaim against Note Holder or Loan Servicer, or any defense to the obligations of the Note or Security Instrument.

(d)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e)    All costs and expenses incurred by Loan Servicer in connection with this Agreement, including but not limited to property inspection fees and attorney's fees, shall be paid by Borrower to Loan Servicer and, to the extent such fees are deferred or become part of the New Principal Balance, shall be secured by the Security Instrument. The type and amount of such fees, and the manner in which they are paid by Borrower, are set forth in Schedule "A."

(f)    In addition to and simultaneously with Borrower's monthly payments of principal and interest as set forth in paragraph 3 above, Borrower shall be required pay to Loan Servicer, until such time as the New Principal Balance and interest on the Amortizing Amount are paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Loan Servicer as of the Effective Date shall not constitute a waiver of such requirement at any future date, and Loan Servicer specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to Borrower.

(g)    Borrower shall make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

6.    Borrower and Loan Servicer understand, acknowledge and agree that:

(a)    If foreclosure proceedings have been commenced with respect to the Loan, upon payment of the Mod Start Payment and Loan Servicer's receipt of this Agreement, fully executed, Loan Servicer shall forbear from taking any further action in connection with any such foreclosure proceeding. **In consideration of Lender's forbearance, Borrower hereby expressly waives the right to challenge or contest the foreclosure process initiated by Loan Servicer, Loan Servicer's attorney and/or the foreclosure trustee, including all acts or omissions prior to or subsequent to this Agreement, whether such acts or omissions were performed by Loan Servicer, Loan Servicer's attorney, the foreclosure trustee, and/or any party acting on behalf of the Loan Servicer, Loan Servicer's attorney and/or the foreclosure trustee.** Borrower admits and recognizes that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of Borrower and Loan Servicer and that, to the extent allowed by applicable law, the foreclosure sale may be postponed from time to time until the loan is fully reinstated or the foreclosure sale is consummated.

LOAN MODIFICATION AGREEMENT (POA Balloon Step Mod)—Single Family—AHMSI Instrument    Form (4-23-09)   (page 3 of 5)
MODC70AL34

EXHIBIT 4

PAGE 5

(b)    Time is of the essence of this Agreement, in particular the receipt by Loan Servicer of this Agreement (fully executed by Borrower and any Non-Obligor Mortgagors) and the Mod Start Payment. **There are no grace periods with respect to the payments due under this Agreement, and failure to make timely payments as specified in paragraph 3 constitutes a breach of the terms of this Agreement.** Notwithstanding the above, late charges as specified in the Note will continue to accrue as allowed by applicable law.

(c)    If Borrower fails to make any of the payments specified in paragraph 3 on the due dates and in the amount stated, or otherwise fails to comply with each and all of the terms and conditions herein, Loan Servicer, at its sole option, may terminate this Agreement without further notice to Borrower. In such case, all amounts that are owing under the Note and Security Instrument, as amended by this Agreement, shall become immediately due and payable, and Loan Servicer shall be permitted to exercise any and all rights and remedies provided for in the Note and Security Instrument, including, but not limited to, immediate commencement of a foreclosure action without further notice to Borrower, and/or resumption of a pending foreclosure action without further notice to Borrower, and/or conducting a pending foreclosure sale without further notice to Borrower.

(d)    Loan Servicer represents that it has the authority to enter into this Agreement on behalf of the Note Holder.

(e)    The terms, clauses, conditions and provisions of this Agreement are binding upon and shall inure to the benefit of all assignees, successors-in-interest, personal representatives, estates, administrators, heirs, devisees, and legatees of each of the parties hereto.

(f)    Except as is otherwise provided for herein, this Agreement (along with the Note and Security Instrument) constitutes the entire agreement between the parties with reference to the subject matter hereof, and supersedes any prior agreement, oral or written, with respect thereto; and, in entering into this Agreement, no party is relying upon any representation, warranty, agreement, or covenants not set forth herein.

(g)    This Agreement may be signed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

7.    To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as so modified, legal and enforceable under applicable law, provided that should such modification or deletion materially diminish the benefit of this Agreement to either Loan Servicer, Note Holder or Borrower, the Agreement shall be of no force or effect and the relationship of Loan Servicer, Note Holder and Borrower shall be entirely governed by the provisions of the Note and Security Instrument.

8.    This Agreement shall be of no force or effect, and no action will be taken by Loan Servicer to cease collection and foreclosure activities relating to the Loan, unless and until Loan Servicer has received this Agreement, fully executed and initialed by Borrowers, along with the Mod Start Payment, in the form of a cashier's check or certified funds, no later than May 27, 2009. This Agreement is not considered "received" by Loan Servicer unless and until it has been delivered to Loan Servicer at 4650 Regent Blvd., Suite 100, Irving, TX 75063, and internally date stamped. Furthermore, this Agreement shall be of no force or effect if Borrower files a bankruptcy petition prior to Loan Servicer's receipt of this Agreement.

LOAN MODIFICATION AGREEMENT (POA Balloon Step Mod)—Single Family—AHMSI Instrument    Form (4-23-09)    (page 4 of 5)
MODC20AL34

**EXHIBIT 4**
**PAGE 6**

NOTICE TO BORROWERS WITH ADJUSTABLE RATE LOANS:  For Borrowers with an adjustable rate Loan, please read this notice carefully.   In accordance with subparagraphs 4(a) and 4(b) of this Agreement, you (Borrower) understand that the Loan is modified from an adjustable-rate loan to a step-rate loan. An adjustable-rate loan differs from a step-rate loan. With a step-rate loan, the interest rate stays the same during specified intervals as provided under paragraph 3 of this Agreement. With an adjustable-rate loan, the interest rate changes periodically, in relation to an index and a margin, and payments may go up or down accordingly.   IF INTEREST RATES DECREASE, AN ADJUSTABLE-RATE LOAN COULD BE LESS EXPENSIVE OVER A LONG PERIOD THAN A STEP-RATE LOAN.  YOU UNDERSTAND THAT BY MODIFYING THIS LOAN TO A STEP-RATE LOAN, YOU ARE **FOREGOING** THIS POTENTIAL ADVANTAGE.

IN WITNESS WHEREOF, the undersigned have set their hands hereunto as of the date written below.

American Home Mortgage Servicing, Inc.

By: _____

_____
Borrower

_____
Borrower

**EXHIBIT 4**
**PAGE 7**

# Loan Modification Agreement
## Schedule A

Name of Borrower(s):
Samuel D Ellsworth
Robin Ellsworth

Loan Number: 0030995377

| DESCRIPTION OF TOTAL AMOUNT DUE | TOTAL DUE |
|---|---|
| Current Principal Balance (includes negative amortization) | $1,607,094.87 |
| Plus Delinquent Interest Through 03/31/2009: | $18,326.76 |
| Plus Advances Made for Attorneys' Fees/Costs/Inspections | $0.00 |
| Plus Escrow (tax and Insurance) Shortage (including escrow advances if applicable) | $4,141.53 |
| Plus Unpaid Late Charges | $1,540.48 |
| Plus Other Accrued and Unpaid Fees | $25.00 |
| Less Suspense Balance (funds held that will reduce amount owed) | $0.00 |
| Total Amount to be Capitalized (added to the current principal balance) | $24,033.77 |
| Negative Amortization Amount | $107,094.87 |
| Balloon Payment (negative amortization amount plus capitalized amount) | $131,128.64 |
| Amortizing Amount | $1,500,000.00 |
| New Principal Balance | $1,631,128.64 |

| Monthly Escrow Payment (for Taxes and Insurance)* | $1,380.51 |
|---|---|

\* Includes estimated amount for the monthly escrow payment (which is subject to change).

EXHIBIT 4
PAGE 8

**citibank**

Citibank, N.A.

**OFFICIAL CHECK**

310869074

62-20
311

FC# 00721 FA# 010          $10.00 ONL PIC      DATE      0 6 / 0 4 / 0 9
002-03  Ck. Ser.#      310869074    * * * * * 1 3 , 4 3 1 . 3 1 · * * *

PAY        ****THIRTEEN THOUSAND FOUR HUNDRED THIRTY-ONE
           AND 31/100 DOLLARS****

TO
THE        ****AMERICAN HOME MORTGAGE SERVICING INC.****
ORDER
OF         00309953 77

NAME OF REMITTER          Drawer: Citibank, N.A.
ADDRESS                   SAMUEL D ELLSWORTH
Citibank, N.A. One Penn's Way    BY
New Castle, DE 19720             AUTHORIZED SIGNATURE

⑈310869074⑈  ⑆031100209⑆  387629 24⑈

**EXHIBIT 4**
**PAGE 9**

Exhibit 5

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:29
SD ELLSWORT     L:  F:A B:  R:          DUE 12/01/11   TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y      DATE SELECT: 01/01/01
                                                              PAGE NO:  1


PRI 012109 RVK     NO MULTI FOUND
COL 083012 ***  ORIGINAL OWNER      CONDITION ON 082712    S83R
COL 082712 DWT  DELQ STAT =      REASON FOR DELQ = 006
COL 082712 DWT  COBRWR CALLED                  CURTALMNT OF INCOME         0828
COL 082712 DWT  COLL: COBRW ROBIN ELLSWORTH  CONTACTED 08/27/2012
                AT   BOR INTN: REFUSED TO PAY RFD: INCOME CURTA
                ILED USER COMMENTS:CO-BORROWER CALLED TO SEE THE
COL 082712 DWT  COLL: STATUS OF THE LOAN I TOLD HER THE EST REINSTM
                NT AMT OF $79,536.12 AND THE EST F/C SALE  DATE IS
                8/28 I EXPALINED IT IS HOLD SHE STATED THAT WE S
COL 082712 DWT  COLL: OLD HER PROPERTY ONCE WHIE THE SALE DATE WAS
                ON HOLD SHE STATED THAT SHE HAS A ATTY THAT IS TRY
                ING TO GET HER MOD PKG
COL 081512 ***  OTH CUST DOCS REC OTHER DOC TYPE
COL 081512 4AW  AND IT HASS BEEN IMAGED PER HIS REQUEST, CHKD WITH
                MY SENIOR AND ADV CAN FAX   FAXED TO HIM AT 9492088
                983
COL 081512 4AW  BRWR CALLED
COL 081512 4AW  BWR TRYING TO GET 2008 AND 2009 INTERST PD
SER 081512 5EN  ADVISED COULD NOT FAX 1098 TAXES PREV YEARS AND UP
                SET THAT OTHER AGENTS GAVE INFO THAT HOMEWARD WOUL
                D FAX OUT 1098 STATEMENT. FILING A LAWSUIT WITH HO
                MEWARD RESIDENTIAL. 2008-2009.  3RD PARTY TRISCIA
                PHILLIPS MM DONE AND PASSED THE CUSTOMER. CUSTOMER
                HUNG UP THE LINE.
SER 081512 5EN  B1 CLLD VERIFIED THE LOAN. MM DONE.   STATED NEED T
                AX INFO SO CAN AMEND TAXES.
SER 081512 5EP  ENDORSED NOTE REVIEW COMPLETED             ENDREV
TSK 081512 PAS  IMG DTD 8/7/12 DOCID 117051889 ALREADY TASKED/PROC    CUSREJ
                ESSED AS  AHMYES, SO DELETED TSKNDD & OPENED CUSRE
                J
TSK 081512 PAS  REASON FOR DELETE:                                    TSKNDD
                IMG DTD 8/7/12 DOCID 117051889 ALREADY TASKED/PROC
                ESSED AS  AHMYES, SO DELETED TSKNDD & OPENED CUSRE
                J
COL 081512 DVX  Inbound Caller ID: (949) 390-1281
FOR 081412 WEB  CLIENT MANAGED - ESCALATED LITIGATION  HOLD
                OPENED: 8/14/2012 12:00:00 AM
COL 081412 9JW  DELQ STAT =      REASON FOR DELQ = 006
COL 081412 9JW  ACNT MONITORD                  CURTALMNT OF INCOME         0817
COL 081412 9JW  COLL: CONTACTED AT   BOR INTN: RETENTION  FUNDS AVL
                IN 7 DAYS: NO  RFD: INCOME CURTAILED USER COMMENT
                S:CALL TRANSFERD FROM PZUSA NOT VERFD; VERFD BOR1
COL 081412 9JW  COLL:  GAVE MM BOR1 GAVE 24HOUR AUTH FOR TRICIA PHI
                LLIPS OFFICE ASSISTNT GAVE MM ADVSD REQST FOR STMN
                TS ARE IN FOR 2008 AND 2009 HOWEVER DOCS ARE ARCH
COL 081412 9JW  COLL: IVED AND COULD TAKE A FEW DAYS FOR US TO GET
                THEM ADVSD REQST TO FAX IS INCLUDED ADVSD EVEN THO
                UGH FAXED ON THE 7TH DOCS TAKE 24-48 TO BE UPLOAD
```

EXHIBIT 5
PAGE 1

```
NOTS  0030995377          CONSOLIDATED NOTES LOG           09/10/12 14:01:29
SD ELLSWORT        L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.    ARM
   ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
   PIF Y PMT Y REO Y SER Y TAX Y TSK Y       DATE SELECT: 01/01/01
                                                                PAGE NO:  2


COL 081412 9JW COLL: ED SO INITIAL REQST NOT REC'D UNTIL 08/09/201
               2 A3P SAYS SHE WILL CALL BACK LATER TODAY
COL 081412 USA TP CLLD ACCT IS NOT VERIFIED SHE WANTED TO SPEAK TO
               SOMEBODY IN THE US ONLY TRD TO 60+ US ONLY PZ 9JW
COL 081412 USA OTHER CALLED   TRAN TO OTHER
COL 081412 DVX Inbound Caller ID: (949) 390-1281
COL 081312 8KE 3RD PARTY CLD NO ARRANG MADE
COL 081312 8KE COLL: 3RDPRTY   CONTACTED 08/13/2012    AT    ATHRZD
               TP: YES  BOR INTN: UNABLE TO PAY  USER COMMENTS:T
               RICIA PHILLIPS ..A3P.... FORECLOSURE SALE DATE (A
COL 081312 8KE COLL: CTUAL)  : 08/13/12 ...ADVISED REQ FOR YEAR EN
               D STATMENTS RECEIVED ON 08/06/2012 ADN IT TAKES 5-
               7 DAYS TO PROCESS....
COL 081312 12S DELQ STAT =      REASON FOR DELQ = 006
COL 081312 12S ACNT MONITORD                   CURTALMNT OF INCOME
COL 081312 12S COLL: CONTACTED AT   ATHRZD TP: YES  RFD: INCOME CU
               RTAILED USER COMMENTS:AUTHO 3RD PT TERESHA    PHILI
               PS  FROM NEW AMERICAN FUNDING (VERBAL AUTHO TAKEN
COL 081312 12S COLL:  BY PREV REP FOR 24HRS )  SD WANT THE  YES FO
               R 2008 AND 2009 TO BE FAXED ADV CAN PUT A REQUEST
               AND ADV TO CALL ABCK ON 08/15/12 TO CK THE STATUS
COL 081312 12S COLL:  SD NEED IT RIGHT AWAY SO TAKEN AN ASSISTANCE
               FROM  PZ2MV AND AS PER HER SUGGESTION ITS SENT TO
               IMAGING AND ADV TO LET HER CALL AFTER 24HRS AND
COL 081312 12S COLL: ONCE UPLOADED WE CAN FAX , AND WHILE GOING BA
               CK TO INFRM HER BWR ON LINE , SO VERIFIED THE BWR
               AND INFRM TO CALL US BACK AFTER 24HRS  TO CK IF U
COL 081312 12S COLL: PLODADE IN THE SYSTEM AND IF YES WE CAN FAX I
               T , WANTS TO SPEAK TO US REP SO DID COLD XFR AS NO
               AGENT AVAIL EOC
SER 081312 2MV COMPLAINT TRACKER: INTERDEPARTMENTAL FORM
               INT
SER 081312 2MV PZID12S, INQ TO KNW IF CAN FAX 1098 2008-2009 TODA
               Y, ADV NOT READY NEED TO  ALLOW DOC TO IMAGE ON TH
               E ACCT SO WE CAN PRINT AND FAX TO CUST, ORIG DOC H
               AS BEEN MAILED,....CUST NEEDS TO CLL BCK IN 24HRS
               SO CAN VIEW AND PRINT DOC
TSK 081312 2MV PZID12S, INQ TO KNW IF CAN FAX 1098 2008-2009 TODA     INQDOC
               Y, ADV NOT READY NEED TO  ALLOW DOC TO IMAGE ON TH
               E ACCT SO WE CAN PRINT AND FAX TO CUST, ORIG DOC H
               AS BEEN MAILED,....CUST NEEDS TO CLL BCK IN 24HRS
               SO CAN VIEW AND PRINT DOC
TSK 081312 2MV COMPLAINT TRACKER: INTERDEPARTMENTAL FORM              INQDOC
                                  INT
TSK 081312 12S                                                       TSKNDD
               **HELLO TEAM WE DO RECEIVE A REQUEST TO FAX 2008 A
               ND 2009 MORTGAGE INTEREST PAID STATEMENT AT FAX NO
               9492088983 IN OPENCLIENT LINE NO 207 DATED 8/7/20
```

EXHIBIT 5
PAGE 2

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:29
SD ELLSWORT      L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y      DATE SELECT: 01/01/01
                                                              PAGE NO:  3

TSK 081312 12S 12, **                                             TSKNDD
COL 081312 EQR {{{ ****** PROPER DOCUMENTATION IN DARES ******
               {{{ ********** INCIDENT: IM-104518 **********
COL 081312 EQR 3RD PARTY CLD
COL 081312 EQR COLL: 3RDPRTY    CONTACTED 08/13/2012    AT   ATHRZD
               TP: NO  USER COMMENTS:  L NRD, BWR HUNG UP......E
               OC
TSK 081312 3NL CREDIT SUPPRESSION IS NEEDED ON LOAN PER LEGAL    CRD002
COL 081312 3NL CRD002: COMPLETED CREDIT SUPPRESSION ON LOAN PER
               LEGAL
COL 081312 6KG AHMYES MAILED 2009 AND 2009 1098 PER REQUEST SENT T
               O IMGING,
COL 081312 DVX Inbound Caller ID: (949) 390-1281
COL 081112 DVX             RECORD RESTRICTED
COL 080912 4AY 3RD PARTY CLD
COL 080912 4AY COLL: 3RDPRTY    CONTACTED 08/09/2012    AT   ATHRZD
               TP: YES  BOR INTN: REFUSED TO PAY  USER COMMENTS:
               MORTG / STMT   TP TERESHA    PHILIPS . .. CALD
COL 080912 4AY COLL:  VERIFD . SD   SHE IS THE ASST OF THE BOWR
               .  SPOKE TO BORR OBTN VERBAL  AUTH    FRM THE BOWR
               R GOOD FOR 24 HRS .  SPOKE TO BOWR   VERIFD  , G
COL 080912 4AY COLL: AVE  PARTIAL  MM .        TP  WANTED   TO KN
               W   IF WE HAVE SEND  OUT THE  YR END STMT FOR  TH
               E  YR 2009  AND 2010  , ADVSD   WE ARE WORKING  O
COL 080912 4AY COLL: N  IT . ADVSD TO CALL  LATER  TODAY .  ADVSD
               OPND TILL 9 PM CST/  ..
COL 080912 4AY 24HR BRW AUTH
FOR 080912 JE6 PROCEED WITH SCHEDULED FORECLOSURE SALE
               72 HOUR PRE SALE REVIEW COMPLETED.
FOR 080912 WEB 298623 -  - 8/9/2012 3:05:57 PM
COL 080912 AAQ 3RD PARTY CLD
COL 080912 AAQ COLL: 3RDPRTY    CONTACTED 08/09/2012    AT   ATHRZD
               TP: NO  USER COMMENTS:TT UNAUTH 3P TRICIA PHILLIP
               S  CALLING FOR A COPY OF THE 2008 MORTGAGE STATME
COL 080912 AAQ COLL: NT N SHE RQ VIA FAX,,,, ADV HER NO LOA ON THE
               FILE .ADV HER VERBAL AUTH IS GOOD FOR 24HRS . N S
               HE HU EO C
TSK 080912 BAM FWD TO FCL                                        FCLFWD
TSK 080912 LVP CUS038-7IJ                                        LTRAPV
TSK 080912 PAS IMG DTD 8/7/12 DOCID# 117051616                   FCLFWD
TSK 080912 PAS IMG DTD 8/7/12 DOCID#117051889                    AHMYES
COL 080912 DVX Inbound Caller ID: (949) 390-1281
TSK 080812 CR1 TASK AUTO OPENED BY IMAGING                       RESINQ
TSK 080812 7IJ MANUAL LETTER SENT, SAVED TO Y DRIVE AND IMAGED  MANLET LTRMAL
               REJECT
TSK 080812 7IJ MANUAL LETTER SENT, SAVED TO Y DRIVE AND IMAGED  MANLET CPNER2
               REJECT
TSK 080812 LVP REASON FOR DELETE:                               LTRMAL
               OPENED IN ERROR
```

EXHIBIT 5
PAGE 3

```
NOTS  0030995377          CONSOLIDATED NOTES LOG           09/10/12 14:01:29
SD ELLSWORT       L: F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.    ARM
   ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
   PIF Y PMT Y REO Y SER Y TAX Y TSK Y       DATE SELECT: 01/01/01
                                                              PAGE NO:   4

TSK 080812 LVP CUS038-7IJ                                          CPNRJ2
COL 080712 *** OTH CUST DOCS REC OTHER DOC TYPE
COL 080712 MBG HAMP CERTIFICATION DONE FOR 08/13/12
TSK 080712 7IJ MANUAL LETTER SENT, SAVED TO Y DRIVE AND IMAGED   MANLET LTRMAL
               REJECT
TSK 080712 7IJ MANUAL LETTER SENT, SAVED TO Y DRIVE AND IMAGED   MANLET CPNER2
               REJECT
SER 080712 7IJ FROM MEM1:
               RECD LOA FOR DIANA LOPEZ, ALICIA NIKKHOO, LINA
               NAHHAS, CHENAI BRINEZ, THE LAW OFFICE OF JOSEPH
               R. MANNING, JR., AND ITS AGENTS REGARDING THE
               LOAN. PASSWORD FOR THIS OFFICE IS "HELP"
TSK 080712 S7L 7IJ - CUS038 - AUTHORIZATION NOT UPDATED CORRECTLY  CPNRJ3
               . IT SHOULD BE LAW OFFICES OF JOSEPH R MANNING IN
               STEAD OF JACOB R MANNING.
TSK 080712 S7L REASON FOR DELETE:                                 LTRMAL
               OPENED IN ERROR.
TSK 080712 S7L REASON FOR DELETE:                                 LTRAPV
               OPENED IN ERROR.
COL 080612 12S DELQ STAT =      REASON FOR DELQ = 006
COL 080612 12S ACNT MONITORD                 CURTALMNT OF INCOME
COL 080612 12S COLL: CONTACTED AT  ATHRZD TP: YES  RFD: INCOME CU
               RTAILED USER COMMENTS:AUTHO 3RD PT DIANA LOPEZ,  F
               ROM THE LAW OFFICE OF JACOB R. MANNING, JR. VERIF
COL 080612 12S COLL: IED  CALLING FOR THE LOAN INFO PROVIDED :  DU
               E( 9) LATE CHRG  1,807.02 BAD CK FEES     50.00
               NET DUE   72,342.16 INT : 2% PRINCIPAL   1,387
COL 080612 12S COLL: ,997.89 AND INFRM NOT EXACT PAYOFF AMT,  AND
               INFRM 1 REG PYMT IS 7676.86 INCLUDING EXCROW/ EOC
COL 080612 AB7 CONT WITH FC AS B1 HAS NOT TRIED FOR MOD OR ANYOTH
               ER WORK OUT
COL 080612 FP8 3RD PARTY CLD
COL 080612 FP8 COLL: 3RDPRTY    CONTACTED 08/06/2012   AT   ATHRZD
               TP: YES  BOR INTN: RETENTION  USER COMMENTS:TRICI
               A PHILLIPS SD WANTE TO CHK THE ONLINE INFO FR THE
COL 080612 FP8 COLL:  BORR , ADVSD WANTED 2008 & 2009 YE STATEMENT
               S,  ADSVD CANNOT HELP WITH THE ONLINE HELP,   SD W
               ANTE DTO TT THE SUP  , BEFORE COULD XFER HE HU .
COL 080612 OCS ALSO ADVISED HER TO TRY OUR WEBSITE TO GET THIS INF
               ORMATION.
COL 080612 OCS 3RD PARTY CLD
COL 080612 OCS COLL: 3RDPRTY    CONTACTED 08/06/2012   AT    ATHRZD
               TP: NO  USER COMMENTS:UN-AUTHORIZED 3RD PARTY MIS
               S TRISHA PHILLIPS & B1 CALLED/VERIFICATION DONE/G
COL 080612 OCS COLL: AVE MM/B1 GAVE VERBAL AUTH/SPK TO 3RD PARTY W
               HO WANTED 2008 & 2009 YE STATEMENTS/GAVE HER FAX #
               6529 TO SEND A WRITTEN REQUEST WITH B1'S NAME, L
COL 080612 OCS COLL: OAN # & SIGNATURE ON IT REQUESTING THIS INFOR
               MATION.
```

EXHIBIT 5
PAGE 4

```
NOTS  0030995377           CONSOLIDATED NOTES LOG            09/10/12 14:01:29
SD ELLSWORT        L: F:A B:  R:           DUE 12/01/11   TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y           DATE SELECT: 01/01/01
                                                                PAGE NO:  5


COL 080612 ZAB HAMP CERTIFICATION DONE 081312.
COL 080612 OCS 24HR BRW AUTH
COL 080612 OCS B1 GAVE VERBAL AUTH FOR MISS TRISHA PHILLIPS.
TSK 080612 7IJ MANUAL LETTER SENT, SAVED TO Y DRIVE AND IMAGED    MANLET LTRMAL
               CUS038
TSK 080612 7IJ MANUAL LETTER SENT, SAVED TO Y DRIVE AND IMAGED    MANLET CPNER1
               CUS038
COL 080612 7IJ 3RD PARTY AUTH UPDTD,SENT CONF LETTER TO BORR &
               3RD PARTY,REFER IMG ID#116615837
               DTD:8/1/12. PHONE NUMBER(S) UPDTD
SER 080612 7IJ FROM MEM1:
               RECD LOA FOR DIANA LOPEZ, ALICIA NIKKHOO, LINA
               NAHHAS, CHENAI BRINEZ, THE LAW OFFICE OF JACOB R.
               MANNING, JR., AND ITS AGENTS REGARDING THE LOAN.
               PASSWORD FOR THIS OFFICE IS "HELP"
SER 080612 7IJ FROM MEM1:
               RECD LOA FOR DIANA LOPEZ, ALICIA NIKKHOO, LINA
               NAHHAS, CHENAI BRINEZ, THE LAW OFFICE OF JACOB R.
               MANNING, JR., AND ITS AGENTS REGARDING THE LOAN.
COL 080612 DVX Inbound Caller ID: (949) 390-1281
COL 080312 APK NO PK DOC RCD
COL 080312 APK NO REL DOC
TSK 080212 6DC 08/13/2012                                         POCFSR
TSK 080212 CR1 TASK AUTO OPENED BY IMAGING                        CUS038
COL 080112 *** OTH CUST DOCS REC 3RD PRTY AUTH
COL 080112 ***  ORIGINAL OWNER        CONDITION ON 072912    S83R
COL 071912 JIS 3RD PARTY CLD
COL 071912 JIS COLL: 3RDPRTY    CONTACTED 07/19/2012    AT    ATHRZD
               TP: YES  BOR INTN: REFUSED TO PAY  USER COMMENTS:
               AUTH THIRD PARTY TRISHA PHILIPS CALLING FROM NUME
COL 071912 JIS COLL: RICAL FUNDING SAID HAVE BORR ONLINE CAN GV TH
               E AUTH  SO TAKE THE 24 HRS VERBAL AUTH WITH THE BO
               RR VAIG DONE MMGV .. HE HANDOVER THE PHONE TO THI
COL 071912 JIS COLL: RD PARTY SAID WANT THE INT PAID IN 2010 AND 2
               009 ADVS TO SNED THE REQ TO 6529#....  ADSV TO MEN
               TION THE LOAN NO ...  ADSV FOR 2010 CAN GIVE THE
COL 071912 JIS COLL: INFO 67,854.93...  ADSV THE BORR SIGN ARE MAN
               DATORY . SO RECAP/ VRFD/ EOC..
COL 071912 JIS 24HR BRW AUTH
COL 071912 JIS BORR GV 24 HRS VERBAL AUTH TO S/W TRISHA PHILIPS CA
               LLING FROM NUMERICAL FUNDING ... ADSV TO SEND THE T
               HE LOA TO CRD
COL 071912 DVX Inbound Caller ID: (949) 390-1281
COL 071812 DMU COBRWR CALLED
COL 071812 DMU COLL: COBRW ROBIN ELLSWORTH    CONTACTED 07/18/2012
                  AT    BOR INTN: HANG UP  USER COMMENTS:TRF CALL F
               ROM PZID 4AP BRWR2 FULLY VERIFIED...ENQ ABT SALE
COL 071812 DMU COLL: DATE.....ADV  FORECLOSURE SALE DATE (ACTUAL)
               :  08/13/12 .....SHE SD THEY ARE TRYING FOR LOAN
```

EXHIBIT 5
PAGE 5

```
NOTS  0030995377           CONSOLIDATED NOTES LOG           09/10/12 14:01:29
SD ELLSWORT      L: F:A B:  R:          DUE 12/01/11   TYPE CONV. RES.   ARM
   ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
   PIF Y PMT Y REO Y SER Y TAX Y TSK Y      DATE SELECT: 01/01/01
                                                                PAGE NO:  6


COL 071812 DMU MOD .. SHE WANTED THE ACTUAL  SALE DATE IN WRITIN
COL 071812 DMU COLL: G TO GIVE TO HER ATTORNEY  ADV WE DO NOT SEND
               THE INFO IN WRITING CAN GET THE INFO BY WRITTEN R
               EQUEST TO FAX NUM 6529  SHE HUNGUP
COL 071812 4AP COBRWR CALLED TRAN TO OTHER
COL 071812 4AP B2 VERIFIED/MANCODE F AND EDUCATED WOULD NEED TO TR
               ANSFER TO FORECLOSURE/TRANSFERED TO REP PZ DMU/WARM
               TRANSFER/END OF CALL
COL 071112 JSV CALLED BUS     LEFT MSG TO CALL                        0715
COL 071112 8RN CALLED HOME    NO MESS LEFT
COL 070712 MSB CALLED HOME    NO ANSWER
COL 070712 MSB CALLED HOME    NO ANSWER
COL 070712 DVX                DIALER DRPD FRM HD
COL 070712 JVM CALLED HOME    NO MESS LEFT                            0709
COL 070712 JVM PLEASE DESREGRD PREVIOUS NOTES LIQUIDATION DIL
COL 070712 JVM CALLED HOME    LIQUIDATION DIL                         0709
COL 070712 JVM CALLED HOME    NO MESS LEFT                            0709
COL 070312 AB7                SPOC ATTEMPT                            0705
COL 070312 AB7 CALLED HOME    LEFT MSG TO CALL
COL 070212 AB7                SPOC ATTEMPT                            0704
COL 070212 AB7 CALLED HOME    LEFT MSG TO CALL
COL 070212 *** ORIGINAL OWNER        CONDITION ON 063012   S83R
COL 062912 AB7                SPOC ATTEMPT                            0702
COL 062912 AB7 CALLED HOME    CUSTOMER HUNG UP
COL 062812 AB7                SPOC ATTEMPT                            0629
COL 062812 AB7 CALLED HOME    LEFT MSG TO CALL
COL 062712 P6S CALLED HOME
COL 062712 P6S COLL: COBRW ROBIN ELLSWORTH   CONTACTED 06/27/2012
               AT HOME  BOR INTN: RETENTION  OUT-OF-POCKET EXP=
               Y  INCOME REDUCTION= Y  USER COMMENTS: VER CO-BR
COL 062712 P6S COLL: , PITCHED MM,  REINSTATEMENT AMOUNT (ESTIMATE
               ) : $64000  ( GOOD THRU : ) , FORECLOSURE SALE DAT
               E (ESTIMATE)  :   07/17/12 ,, SD THE BR1 WILL PRO
COL 062712 P6S COLL: BABLY FILR THE BANKRUPTCY, SD JSUT GOT THE SU
               RGERY, THE PAYMENT ARE  HIGH ,, SUGG ABT TRAD MOD,
               NO A GURANTEEED OPTION, PROV THE LSIST DOCS , MOD
COL 062712 P6S COLL: POT OPEN, TAT: 30-60 DAYS,  SPOC ASSIGED : AM
               ANDA BRISENO, EXT NO : 27562, M- F, 12:00 PM TO 09
               :00 PM CST,, CALL BK NO :3100,, RFD: TWO SURGRICE
COL 062712 P6S COLL: S FOR CANCER, OUT OF POCKET : $180000.00,,  S
               O UNABLE TO WORK,, REDUCTION $100000.00 PER YEAR ,
               , REQ TO CALLBK AT 3100 TO UPDATE FINANCIALS,,
COL 062712 P6S                SPOC COMPLETE
COL 062312 DVX                AMD NO MSG LEFT
COL 062012 DVX                RECORD RESTRICTED
COL 062012 DEA CALLED HOME    NO MESS LEFT                            0622
COL 061612 EC1 DELQ STAT =        REASON FOR DELQ = 031
COL 061612 EC1 CALLED HOME    NO MESS LEFT          UNABLE TO CONTACT
COL 061312 JFR CALLED HOME    LFT MSG ANS MACH                        0615
```

EXHIBIT 5
PAGE 6

```
NOTS  0030995377           CONSOLIDATED NOTES LOG              09/10/12 14:01:29
SD ELLSWORT        L: F;A B:  R:           DUE 12/01/11   TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                              PAGE NO:  7


COL 061112 DFU VCI176 SIGNUP
COL 060912 DVX                   AMD NO MSG LEFT
COL 060612 DVX                   RECORD RESTRICTED
COL 060212 DVX                   RECORD RESTRICTED
COL 060212 MA1 CALLED HOME   NO ANSWER
COL 060112 *** ORIGINAL OWNER       CONDITION ON 052912   S83R
COL 053012 DVX                   DIALER DRPD FRM HD
COL 053012 SSG CALLED HOME   NO MESS LEFT
COL 052912 7JG COBRW CALLED IN TO ADV SHE DIDNT GET SHORT SALE PPW
               ADV WILL RE-EMAIL PPW.
COL 052512 7JG CALLED HOME   LEFT MSG TO CALL
COL 052312 DVX                   RECORD RESTRICTED
COL 052312 JSV CALLED HOME   NO MESS LEFT                          0526
COL 052212 7JG CALLED HOME   NO MESS LEFT
COL 052112 DVX                   RECORD RESTRICTED
COL 052112 7JG CALLED HOME   NO MESS LEFT
COL 051912 SSG CALLED HOME   LEFT MSG TO CALL                      0521
COL 051612 MMG CALLED HOME   LEFT MSG TO CALL    UNABLE TO CONT BWR  0518
COL 051412 TAS DELQ STAT =      REASON FOR DELQ = 006
COL 051412 TAS COBRWR CALLED              CURTALMNT OF INCOME
COL 051412 TAS COLL: COBRW ROBIN ELLSWORTH   CONTACTED 05/14/2012
               AT    BOR INTN: LIQUIDATION  RFD: INCOME CURTAILE
               D USER COMMENTS:TT BOR CUST CLD IN TO CHK ON STAT
COL 051412 TAS COLL:  OF LOAN ADV CUST THT   FORECLOSURE SALE DATE
               (ESTIMATE) : 07/17/12,    REINSTATEMENT AMOUNT (
               ESTIMATE) : $55,149.03 ( GOOD THRU : ) 05/14/12
COL 051412 TAS COLL: CUST WANTS TO KNW IF SHE CAN DO A SS ADV CUST
               YES I WILLS END OUT DOCS AND ALSO SENT CUST OVER
               TO VANTIUM CAPITAL
COL 051412 TAS CALLED HOME   TRANSFR TO VAN CAP
SER 051412 7NW BRR2 CLD.VAIG.WAS RETURNING A PH CL..COLD XFERD CL
               AS REP NT AVAIL.EOC
SER 051412 7NW OFFERED INTER-DEPARTMENTAL ASSISTANCE          GASST
COL 051212 SML CALLED HOME   LEFT MSG TO CALL                      0514
COL 050912 RB4 CALLED HOME   LEFT MSG TO CALL
COL 050912 RB4 COLL: USER COMMENTS:UNABLE TO CONTACT BRW
COL 050512 DVX                   RECORD RESTRICTED
COL 050512 DEA CALLED HOME   NO MESS LEFT                          0507
COL 050512 DEA TTUNAUTHORIZED  REG SHE PROVIDED ME WITH THE FOLLOWI
               NG # 714-343-2900
COL 050212 DVX                   AMD NO MSG LEFT
COL 050212 *** ORIGINAL OWNER       CONDITION ON 042912   S83R
FOR 043012 WEB CANDY REEVES HERZOG - DELAY SUMMARY    LOAN #
               30995377  TS # 2012-00323  STATE CA  MILESTONE NOD
               FILE SENT 3/29/2012  ORIGINAL PROJECTED NOD RECORD
               4/3/2012  NOD RECORDED  4/16/2012  TOTAL DAYS 13
               REASON FOR DELAY: DOCUMENT - SOT & AOM  DELAY # OF
               DAYS RESPONSIBLE DELAY #1 13 SERV DELAY #2   DELAY
               #3   DELAY #4   TOTAL DAYS DELAYED 13       DELAY #
```

EXHIBIT 5
PAGE 7

```
NOTS  0030995377          CONSOLIDATED NOTES LOG           09/10/12 14:01:29
SD ELLSWORT        L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                              PAGE NO:  8


FOR 043012 WEB DELAY DESCRIPTION  DELAY #1 RECVD EXECUTED DOCS
               SENT TO RECORD  DELAY #2    DELAY #3    DELAY #4
COL 042512 AFN CALLED HOME   LFT MSG ANS MACH                        0427
COL 042512 1JO BRWR CALLED
COL 042512 1JO COLL: BRW SAMUEL ELLSWORTH    CONTACTED 04/25/2012
               AT   BOR INTN: HANG UP  USER COMMENTS:B1 FULLY VE
               RIFIED CI TO CHECK WHEN WE SENT CHECK BACK ADV WE
COL 042512 1JO COLL:  RETURNED CHECK TODAY */// NO ADD ASSIT.
SER 042512 T1M DEFAULT CSH RTND CK REQ COMPLETE. CK MAILED TODAY.
               RETND OFFICIAL CHK# 312290600 IAO$ 7800.00 DTD 4/1
               6/12 DRWN FROM CITIBANK
COL 042512 DVX Inbound Caller ID: (714) 343-2900
COL 042312 SFT BRWR CALLED
COL 042312 SFT COLL: BRW SAMUEL ELLSWORTH    CONTACTED 04/23/2012
               AT   BOR INTN: HANG UP  USER COMMENTS:BRRW CLD,VA
               IG DONE,WANTD TO KNW IF THE CHK OF 7800 RECVD AND
COL 042312 SFT COLL:  RET,CONFD RECVD AND RET TO CICTIBANK TODAY..
               BRWR HUGN UP.
COL 042312 1SI BRWR CALLED
COL 042312 1SI COLL: BRW SAMUEL ELLSWORTH    CONTACTED 04/23/2012
               AT   BOR INTN: HANG UP  USER COMMENTS:RECVD CALL
               FRM BWR -SAMUEL ELLSWORTH  VERFYD NAME  AND LAST
COL 042312 1SI COLL: 4 OF  SSN-CAL TO SPK WITH THE USA REP AND REF
               USD MY ASSITNCE AND ASKD TO SPK WITH TEH USA MANAG
               ER HENCE  BFR I CULD TRASFR  THE CALL  TO THE USA
COL 042312 1SI COLL:  REP BWR HUNGUP
SER 042312 SIN ********RETND AS NO ARRANGEMENTS MADE
               RETND OFFICIAL CHK# 312290600 IAO$ 7800.00 DTD 4/1
               6/12 DRWN FROM CITIBANK
               ************************************************
SER 042312 SIN *************************
               RECVD OFFICIAL CHK# 312290600 IAO$ 7800.00 DTD 4/1
               6/12 DRWN FROM CITIBANK
               ************************************************
COL 042312 SIN          FC FUNDS RETURNED
COL 042312 SIN LETTER SENT   CA022 TX - Return Chk/Ref'd to FC
SER 042312 0GE FUNDS RCVD IN CASHIERING(DALLAS) ON 4/20/12,
               CHECK NUMBER - 312290600, AMOUNT - $7,800.00
COL 042312 DVX Inbound Caller ID: (714) 343-2900
COL 042112 JPE DELQ STAT =        REASON FOR DELQ = 006
COL 042112 JPE BRWR CALLED                         CURTALMNT OF INCOME
COL 042112 JPE COLL: BRW SAMUEL ELLSWORTH    CONTACTED 04/21/2012
               AT   BOR INTN: REFUSED TO PAY  RFD: INCOME CURTAI
               LED USER COMMENTS: TT BRW I ED ON THE STATUS OF T
COL 042112 JPE COLL: HE ACCNT, CI TO KNOW WHAT WILL HAPPEN WITH TH
               E PYMNT THAT HE SENT FOR THE AMNT OF 7800.00 , I E
               D THAT THE PYMNT WILL BE RETURNED TO THE ADDRESS
COL 042112 JPE COLL: THAT APPEARS ON THE CHECK SINCE HE SAID THAT
               THERE ISNT AN ADDRESS ON THE ENVELOPE, I ED THAT T
```

EXHIBIT 5
PAGE 8

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:29
SD ELLSWORT        L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
   ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
   PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                              PAGE NO:  9


COL 042112 JPE HE ACCNT DOESNT REFLECT THE PYMNT HAVING BEEN REC
COL 042112 JPE COLL: VD YET,I OFFRED FURTHER ASST, EOC
COL 042112 6SF CALLED HOME
COL 042112 6SF COLL: BRW SAMUEL ELLSWORTH   CONTACTED 04/21/2012
               AT HOME  BOR INTN: HANG UP  USER COMMENTS:SPOKE T
               O BRW ADV EST REIN AMOUNT AS OF TODAY AND PROP IN
COL 042112 6SF COLL:  F/C... SD SENT CASHIERS CHECK A WEEK AGO...
               SD SENT IT FOR $7800... ADV WE WONT ACCEPT A CHECK
               ... ADV WE HAVENT RECVD A CHECK... ADV TO CHECK W
COL 042112 6SF COLL: ITH HIS BANK... HUNG UP... EOC...
COL 041812 DVX                AMD NO MSG LEFT
COL 041412 1JO CALLED HOME    LEFT MSG TO CALL
COL 041112 DVX                AMD NO MSG LEFT
SER 040912 NB3 CA SB1137 INITIAL CONTACT LETTER SENT 01/17/2012
               CALL 1 ATTEMPTED 01/17/2012 @ 14:37 ALL 2 ATTEMPT
               01/18/2012 @ 11:09, CALL 3 ATTEMPT 01/19/2012 @
               15:50, NOT CONTACT LETTER SENT 02/07/2012, ALL
               WITHIN LAST 180 DAYS, DUE DILIGENCE MET
COL 040712 RB4 CALLED HOME    NO MESS LEFT
COL 040712 RB4 COLL: USER COMMENTS:UNABLE TO CONTACT BRW
COL 040412 DVX                AMD NO MSG LEFT
COL 040212 *** ORIGINAL OWNER        CONDITION ON 033112   S83R
COL 033112 DFB CALLED HOME    LFT MSG ANS MACH                    0402
COL 033112 NBC CALLED HOME    PARTY HUNG UP
FOR 032912 WEB BULK IMPORTER - SYSTEM UPDATED FOR THE FOLLOWING
               EVENT: USER HAS CREATED A PROCESS-LEVEL ISSUE FOR
               THIS LOAN.ISSUE TYPE: HAMP NON-ELIGIBLE. ISSUE
               COMMENTS: PLEASE BE AWARE THAT THE BORROWER ON
               RECENT REFERRAL IS NOT HAMP ELIGIBLE STATUS:
               ACTIVE
COL 032712 4RG DUE DILIGENCE COMPLETED: NA
               NO LOSS MIT EFFORTS UNDERWAY.
               LETTER SENT 1/19/2012      . NOT TENANT OCCUPIED,
COL 032712 4RG PROPERTY NOT  SURRENDERED.
COL 032712 4RG MIN NO. IN MAS1/MERS SCREEN IS WRONG HENCE NOT ABLE
               TO GET MIN INFORMATION IN MERS.
COL 032712 4RG 20 DAY LETTER SENT DATE :01/17/12
               3 CONTACT ATTEMPTS ON DATE :011712,011812,011912
               NO CONTACT LETTER SENT ON : 02/06/12
SER 032712 4RG REVIEWED DOD WEBSITE, BORROWERS NOT IN MILITARY   DODREV
COL 032712 4RG HAMP/SOL PROCESS COMPLETED WITHOUT RESULTING
               IN A MODIFICATION
COL 032712 4RG FC APPROVED
COL 032712 4RG   RAN PACER, NO BK FILED,NO PTP, NO TASK OPEN,NO FE
                 ,VRFD DOD STATUS.
COL 032712 4RG REVD FOR F/C  REFRRD TO FC
COL 032712 4RG REVD FOR F/C  DID NOT REFER 2 FC
COL 032612 DVX                DIALER DRPD FRM HD
COL 032412 8JS CALLED HOME    LEFT MSG TO CALL                    0328
```

EXHIBIT 5
PAGE 9

```
NOTS  0030995377           CONSOLIDATED NOTES LOG          09/10/12 14:01:29
SD ELLSWORT      L:  F:A B:  R:          DUE 12/01/11   TYPE CONV. RES.  ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                            PAGE NO: 10


COL 032112 S2K CALLED HOME    LEFT MSG TO CALL                          0323
COL 032112 S9D FIRST CLASS LETTER SENT ON  - 01/19/12
               NOT TENANT OCCUPIED,
               PROPERTY NOT SURRENDERED
COL 032112 S9D CA DEC REQ: 3 CALL ATTEMPTS MADE : YES
               01/17/12 01/18/12 01/19/12
COL 032112 S9D DUE DILIGENCE COMPLETED - NA
               NO CONTACT LETTER SENT ON - 2/6/12
COL 032112 S9D RAN PACER NO BK FOUND, NO FEMA , NO PTP FOUND
               ALSO VRFD DOD WEBSITE AND NO TSK OPEN
COL 032112 S9D HAMP/SOL PROCESS COMPLETED WITHOUT RESULTING IN A
               MODIFICATION
COL 032112 S9D FC APPROVED
COL 032112 S9D REVD FOR F/C  REFRRD TO FC
COL 032112 S9D REVD FOR F/C  REIM CHECK REQ'D
COL 032012 1SI CALLED HOME    NO MESS LEFT
COL 032012 FRB CALLED BUS     LEFT MSG TO CALL
COL 032012 FRB CALLED BUS     LEFT MSG TO CALL
COL 031512 DVX               AMD NO MSG LEFT
COL 031512 NBT CALLED HOME    LEFT MSG TO CALL    UNABLE TO CONT BWR     0317
COL 031512 VKD AS PER DARES COLLATERAL LMTH  VALUE IS $1200000
COL 031512 VKD 20/45 DAY LETTER SENT DATE: 01/17/12.
               3 CALL ATTEMPTS MADE:
               011712,011812, & 011912.
COL 031512 VKD DUE DILIGENCE COMPLETED DATE- NA
               NO CONTACT LETTER SENT ON- 02/07/12.
               FIRST CLASS LETTER SENT ON 1/19/12.
COL 031512 VKD NO LOSS MIT EFFORTS UNDERWAY.
               NON TENANT OCCUPIED, PROPERTY NOT SURRENDERED.
COL 031512 VKD FC APPROVED
COL 031512 VKD REVD FOR F/C  REFRRD TO FC
COL 031512 VKD RAN PACER, NO BK FILED, NO PTP, NO TASK OPEN,
               NO FEMA, VRFD DOD STATUS
COL 031212 HDS CALLED HOME    LEFT MSG TO CALL                          0314
COL 031212 FRB CALLED BUS     LEFT MSG TO CALL
COL 031212 8GD CALLED HOME    NO MESS LEFT
COL 031012 AKQ CALLED HOME    NO ANSWER
COL 031012 ARP DELQ STAT =        REASON FOR DELQ = 031
COL 031012 ARP CALLED HOME    NO MESS LEFT       UNABLE TO CONTACT
COL 031012 S2K CALLED HOME    NO MESS LEFT
COL 030712 1HG CLD CELL PH    LEFT MSG TO CALL                          0309
COL 030612 CSM CALLED HOME    NO MESS LEFT
COL 030312 JRV DELQ STAT =        REASON FOR DELQ = 031
COL 030312 JRV CALLED HOME    LFT MSG ANS MACH   UNABLE TO CONTACT      0305
COL 030212 JRV DELQ STAT =        REASON FOR DELQ = 031
COL 030212 JRV CALLED HOME    NO MESS LEFT       UNABLE TO CONTACT
COL 030112 JC0 DELQ STAT =        REASON FOR DELQ = 031
COL 030112 JC0 CALLED HOME    AMD NO MSG LEFT    UNABLE TO CONTACT
COL 030112 *** ORIGINAL OWNER         CONDITION ON 022712   S83R
```

EXHIBIT 5
PAGE 10

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:30
SD ELLSWORT      L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                              PAGE NO: 11


COL 022712 KLR CLD CELL PH   LFT MSG ANS MACH   UNABLE TO CONT BWR        0229
COL 022712 *** HH001 Hope Now Letter            LETTER SENT
COL 022412 JC0 DELQ STAT =       REASON FOR DELQ = 031
COL 022412 DVX                RECORD RESTRICTED
COL 022412 JC0 CALLED HOME   AMD NO MSG LEFT    UNABLE TO CONTACT
COL 022212 *** HRCC PKG RCVD REC OTHER DOC TYPE
COL 022112 RSB CALLED BUS    LEFT MSG TO CALL                             0223
COL 021712 T3L CALLED HOME   LEFT MSG TO CALL                             0220
COL 021412 FLH CALLED BUS    LFT MSG ANS MACH   UNABLE TO CONT BWR        0216
COL 020912 SMG DELQ STAT =       REASON FOR DELQ = 031
COL 020912 SMG CALLED HOME   LEFT MSG TO CALL   UNABLE TO CONTACT         0211
COL 020612 FLH CALLED BUS    LFT MSG ANS MACH   UNABLE TO CONT BWR        0208
COL 020412 DRN CALLED HOME   LEFT MSG TO CALL                             0206
COL 020412 8JS CALLED HOME   NO MESS LEFT
COL 020412 B7P CALLED HOME   NO MESS LEFT
COL 020112 6FA CALLED HOME   LEFT MSG TO CALL                             0203
COL 013112 DVX               AMD NO MSG LEFT
COL 013012 DVX               AMD NO MSG LEFT
COL 013012 BBL CALLED HOME   NO ANSWER
COL 013012 *** ORIGINAL OWNER        CONDITION ON 012512    S83R
COL 012812 VZP CALLED HOME   NO ANSWER
SER 012612 C0R DEBIT REVIEW RECON: ADVANCES OWED FROM BORROWER     DBTOWD
               DEBIT AMOUNT $87.97 DBRE, OWED FROM BORROWER.
COL 012612 DVX Inbound Caller ID: (714) 731-0578
COL 012512 MMF CALLED HOME   LEFT MSG TO CALL                             0127
COL 012412 DVX               AMD NO MSG LEFT
COL 012012 2CV CALLED HOME   LFT MSG ANS MACH                             0122
COL 012012 KPJ CALLED HOME   NO MESS LEFT
COL 011912 DVX               FAX MACHINE ON
COL 011812 PRI               AMD LEFT MSG
COL 011812 PRI               NO ANSWER
COL 011812 PRI               NO ANSWER
COL 011712 PRI               AMD LEFT MSG
COL 011712 PRI               NO ANSWER
COL 011712 PRI               NO ANSWER
COL 011612 *** FN045 CA 45 Day Letter           LETTER SENT
COL 011112 8NS CALLED BUS    LEFT MSG TO CALL                             0113
COL 011012 PSH CALLED HOME   NO MESS LEFT
COL 010912 SSK CALLED HOME   NO MESS LEFT
COL 010712 LSM DELQ STAT =       REASON FOR DELQ = 031
COL 010712 LSM CALLED HOME   LEFT MSG TO CALL   UNABLE TO CONTACT         0109
COL 010612 ARP DELQ STAT =       REASON FOR DELQ = 031
COL 010612 ARP CALLED HOME   NO MESS LEFT        UNABLE TO CONTACT
COL 010512 JSF DELQ STAT =       REASON FOR DELQ = 031
COL 010512 JSF CALLED BUS    NO MESS LEFT        UNABLE TO CONTACT
COL 010512 *** SCORE 362   010512 AGT E60C DAYS DEL 065 RISK B
COL 010412 DVX               AMD NO MSG LEFT
COL 010312 DVX               AMD NO MSG LEFT
COL 123011 *** ORIGINAL OWNER        CONDITION ON 122811    S83R
```

EXHIBIT 5
PAGE 11

```
NOTS  0030995377          CONSOLIDATED NOTES LOG            09/10/12 14:01:30
SD ELLSWORT        L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                                PAGE NO: 12

COL 122911 3AC CALLED HOME    LEFT MSG TO CALL                        1231
COL 122811 DVX                AMD NO MSG LEFT
COL 122311 DFV CALLED BUS     LFT MSG ANS MACH                        1227
COL 122211 S6N LETTER SENT    OP961 Draft Pmt Applied NOI Vali
COL 122011 LSM DELQ STAT =        REASON FOR DELQ = 031
COL 122011 LSM CLD CELL PH    LEFT MSG TO CALL   UNABLE TO CONTACT    1222
COL 121611 PSH CALLED HOME    LEFT MSG TO CALL                        1218
COL 121511 DVX Inbound Caller ID: (949) 208-8982
COL 121311 JVM DELQ STAT =        REASON FOR DELQ = 006
COL 121311 JVM CALLED HOME    PARTY HUNG UP      CURTALMNT OF INCOME   1215
COL 121311 JVM COLL: COBRW ROBIN ELLSWORTH   CONTACTED 12/13/2011
               AT HOME  RFD: INCOME CURTAILED USER COMMENTS:TT
               B2 MMRANDA PITCHD FOR TAD, SHE SAID HER HUSBAND M
COL 121311 JVM COLL: KES PYMNT, THAT WE NEED TO CALLR HIM ...AND H
               UNG UP
COL 121311 JSF DELQ STAT =        REASON FOR DELQ = 031
COL 121311 JSF CALLED HOME    NO MESS LEFT       UNABLE TO CONTACT
COL 120911 SBL DELQ STAT =        REASON FOR DELQ = 031
COL 120911 SBL CALLED BUS     LEFT MSG TO CALL   UNABLE TO CONTACT    1212
COL 120611 6NG CLD CELL PH    LEFT MSG TO CALL                        1208
COL 120511 CCC Acct Monitored - High Likelihood to Pay
COL 120111 FTG DELQ STAT =        REASON FOR DELQ = 031
COL 120111 FTG CALLED HOME    LEFT MSG TO CALL   UNABLE TO CONTACT    1203
COL 113011 DVX                AMD NO MSG LEFT
COL 112911 DVX                AMD NO MSG LEFT
COL 112511 MBE CALLED HOME    LFT MSG ANS MACH                        1127
COL 112111 SB3 CALLED BUS     LEFT MSG TO CALL                        1123
COL 111911 CFC DELQ STAT =        REASON FOR DELQ = 031
COL 111911 CFC CALLED HOME    LFT MSG ANS MACH   UNABLE TO CONTACT    1121
COL 111611 NAG CALLED HOME    LEFT MSG TO CALL                        1118
COL 111511 DVX                AMD NO MSG LEFT
COL 111511 *** FN045 CA 45 Day Letter          LETTER SENT
COL 111411 1SK LETTER SENT    OP961 Draft Pmt Applied NOI Vali
COL 111011 6NG DELQ STAT =        REASON FOR DELQ = 006
COL 111011 6NG BRWR CALLED    WILL OVERNIGHT PYM CURTALMNT OF INCOM 7676.86 1112
COL 111011 6NG COLL: BRW SAMUEL ELLSWORTH    CONTACTED 11/10/2011
               AT    MULTIPLE PTP: OVERNIGHT MAIL 7676.86 11/10/2
               011   RFD: INCOME CURTAILED USER COMMENTS:TT BRWR
COL 111011 6NG COLL: , VER SSN, SD HE IS GOING TO SND A CERTIFIED
               CEHCK FR 1 PYMT TRU OVERNIGHT MAIL SO GVN THE ADD,
               SO RECAP DONE N EOC. RFD : LOSS OF INCOME.
COL 111011 6FA CLD CELL PH    LEFT MSG TO CALL                        1112
COL 111011 DVX Inbound Caller ID: (714) 343-2900
COL 110711 SBL DELQ STAT =        REASON FOR DELQ = 031
COL 110711 SBL CALLED HOME    LEFT MSG TO CALL   UNABLE TO CONTACT    1109
COL 110711 SBE CALLED HOME    NO MESS LEFT
COL 110511 JC0 DELQ STAT =        REASON FOR DELQ = 031
COL 110511 JC0 CALLED HOME    PARTY HUNG UP      UNABLE TO CONTACT
COL 110411 0NS                                   REQUESTING NEW NOI
```

EXHIBIT 5
PAGE 12

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:30
SD ELLSWORT       L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                            PAGE NO: 13
```

```
COL 110211 RSB CALLED HOME    LEFT MSG TO CALL                        1104
COL 110111 DVX                RECORD RESTRICTED
COL 103111 STN CALLED HOME    LEFT MSG TO CALL
COL 102611 SHG CALLED HOME    LEFT MSG TO CALL                        1028
COL 102511 DVX                AMD NO MSG LEFT
COL 102211 M6F CALLED HOME    LEFT MSG TO CALL    UNABLE TO CONT BWR   1023
COL 101711 GIL DELQ STAT =        REASON FOR DELQ = 006
COL 101711 GIL BRWR CALLED    NO ARRANG MADE     CURTALMNT OF INCOME   1020
COL 101711 GIL COLL: BRW SAMUEL ELLSWORTH    CONTACTED 10/17/2011
               AT    RFD: INCOME CURTAILED USER COMMENTS:TKD TO S
               AMUEL ELLSWORTH, HE CALLS CS HE WANTS TO WIRE THE
COL 101711 GIL COLL:  PAYMENT, I EXPLND HE CAN PAY BY WU, MG OR CH
               ECK OVERNIGHT, HE WILL OVERNIGHT BY FED EX TO 1525
               S BELTLINE RD. I EXPLND COLLECTING CALLS AND REP
COL 101711 GIL COLL: ORT TO CREDIT BUREAU WILL CONTINUE, I EXPLND
               WE SENT NOI ON 10/04, I TRIED TO GET INFO BUT HE I
               S AT THE BANK AND CANNOT ANSWER QUESTIONS, I ABOR
COL 101711 GIL COLL: TED CALL AND SUGGESTED TO CALL US BACK, HE TH
               ANKED.
COL 101711 DVX Inbound Caller ID: (714) 343-2900
COL 101411 ISP CALLED HOME    NO MESS LEFT
COL 101411 7KV CALLED BUS     NO MESS LEFT
COL 101411 AQR DELQ STAT =        REASON FOR DELQ = 006
COL 101411 AQR BRWR CALLED    WILL Q/C          CURTALMNT OF INCOM 7676.86 1015
COL 101411 AQR COLL: BRW SAMUEL ELLSWORTH    CONTACTED 10/14/2011
               AT    MULTIPLE PTP: WU 7676.86 10/14/2011    RFD: I
               NCOME CURTAILED USER COMMENTS:BRW CALD VAIG PIT T
COL 101411 AQR COLL: A SAID WANTS TO MKE ONE MMP INFORMED ABT CFO
               SAID WILL PAY OME MMP THRU W/Q ON 10/15 ..THEN HE
               HUNG UP..EOC
COL 101411 AQR BRWR CALLED
COL 101111 HNB DELQ STAT =        REASON FOR DELQ = 006
COL 101111 HNB CALLED HOME    LEFT MSG TO CALL    CURTALMNT OF INCOME
COL 101111 HNB CALLED HOME    LEFT MSG TO CALL                        1013
COL 100811 SR7 CALLED HOME    LEFT MSG TO CALL                        1010
COL 100811 CSM CALLED HOME    NO MESS LEFT
COL 100711 CT7 DELQ STAT =        REASON FOR DELQ = 031
COL 100711 CT7 CALLED HOME    CUSTOMER HUNG UP    UNABLE TO CONTACT
COL 100411 DRN CALLED HOME    LEFT MSG TO CALL                        1006
COL 100111 0JJ DELQ STAT =        REASON FOR DELQ = 031
COL 100111 0JJ CALLED HOME    LEFT MSG TO CALL    UNABLE TO CONTACT    1003
COL 092811 D6W CALLED HOME    LEFT MSG TO CALL                        0930
COL 092811 MBG CALLED HOME    NO MESS LEFT
COL 092711 DVX                AMD NO MSG LEFT
COL 092211 C2L CALLED HOME    LEFT MSG TO CALL                        0924
COL 092211 SRT CALLED HOME    NO MESS LEFT
COL 091911 FFS CALLED HOME    LEFT MSG TO CALL                        0921
COL 091511 OSP LETTER SENT    OP961 Draft Pmt Applied NOI Vali
COL 091411 SSK CALLED HOME    LFT MSG ANS MACH                        0916
```

EXHIBIT 5
PAGE 13

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:30
SD ELLSWORT        L:  F:A B:  R:       DUE 12/01/11  TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y      DATE SELECT: 01/01/01
                                                            PAGE NO: 14


 COL 091011 EOJ          LM EXPL/GVE HUD#
 COL 091011 EOJ DELQ STAT =        REASON FOR DELQ = 006
 COL 091011 EOJ BRWR CALLED    WILL Q/C         CURTALMNT OF INCOM 7676.86 0912
 COL 091011 EOJ TTB1.VAIG. TAD. RFD: CUT OF INCOME.  I GAVE HUD#428
            7 I ADV LATE CHARGES BAD CREDIT  CALLS CONT. WILLPA
            Y MONDAYS  W.U. I GAVE CODES
 COL 090911 P6S CALLED HOME    LEFT MSG TO CALL                           0912
 COL 090611 5LC CALLED HOME    LEFT MSG TO CALL                           0908
 COL 090211 DPN DELQ STAT =        REASON FOR DELQ = 006
 COL 090211 DPN COBRWR CALLED PARTY HUNG UP         CURTALMNT OF INCOME   0904
 COL 090211 DPN COLL: COBRW ROBIN ELLSWORTH   CONTACTED 09/02/2011
            AT   RFD: INCOME CURTAILED USER COMMENTS:TTB2 VA
            IG CI TO KNOW WHY SHE HAS ESCROW BALANCE AND WHY
 COL 090211 DPN COLL: IT CANT BE APPLIED TO HER MONTHLY PYMNT EXPLA
            INED ESCROW BALANCE IS SEPERATE FROM MONTHLY PYMNT
            AND FUNDS CANT BE MOVED, UNDERSTOOD, TAD ON 3MON
 COL 090211 DPN COLL: THS PAST DUE DISPUTED SAID SHE ALREADY PAID F
            OR 07/11 HUNG UP UPSET
 COL 090211 SOP CBP RETURNS
 COL 090211 SOP LETTER SENT    FA045 JAX 2nd NSF Notice
 COL 090111 FJV CALLED HOME    LEFT MSG TO CALL                           0904
 COL 090111 DVX               AMD NO MSG LEFT
 COL 090111 *** MISAPPLICATN REVERSAL
 COL 090111 *** NON-SUFFICIENT FUNDS
 COL 082911 I6S CALLED HOME    LEFT MSG TO CALL                           0831
 COL 082611 DVX               AMD NO MSG LEFT
 COL 081211 S6N LETTER SENT    OP961 Draft Pmt Applied NOI Vali
 COL 080611 (S3 PDSPY; AMNT $7978.03; DTD 8/25/2011;            7978.03 0825
            CFN#6336472; FEE CHRGD $9.95;
            2ND MTG=N; BK=N;MT
 COL 080611 (S3 PDSPY; AMNT $7978.03; DTD 8/10/2011;            7978.03 0810
            CFN#6336471; FEE CHRGD $16.95;
            2ND MTG=N; BK=N;
 COL 080511 LRB CBP RETURNS
 COL 080511 LRB LETTER SENT    FA038 JAX Rtn Check Notice
 COL 080411 DMU CALLED HOME    LEFT MSG TO CALL                           0806
 COL 080411 *** NON-SUFFICIENT FUNDS
 COL 080311 CG9 DELQ STAT =        REASON FOR DELQ = 031
 COL 080311 CG9 CALLED HOME   NO MESS LEFT        UNABLE TO CONTACT
 COL 080311 NVP ISSUED LOP 961
 COL 080311 NVP LETTER SENT    OP961 Draft Pmt Applied NOI Vali
 COL 080211 DVX               AMD NO MSG LEFT
 COL 072811 9BF DELQ STAT =        REASON FOR DELQ = 006
 COL 072811 9BF SINCE LAST COUPLE OF YRS SOF:PROFIT FROM BUSINESS..
            TOLD ME HE HAS TO GO FOR A MEETING HENCE NO OTHER Q
            UESTIONS
 COL 072811 (S3 PDSPY; AMNT $7978.03; DTD 7/31/2011;            7978.03 0731
            CFN#6315806; FEE CHRGD $16.95;
            2ND MTG=N; BK=N;
```

**EXHIBIT 5**

**PAGE 14**

```
NOTS  0030995377         CONSOLIDATED NOTES LOG          09/10/12 14:01:30
SD ELLSWORT      L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y     DATE SELECT: 01/01/01
                                                              PAGE NO: 15


COL 072811 9BF PYMNT OPTIONS .RECAP DONE. NO SAVINGS OR DEP,NO 401
               K & CANNOT BORROW,NO ADDITIONAL INCOME.RFD:INCOME H
               AS REDUCED
COL 072811 9BF BRWR CALLED     PDCBP OBTAINED     CURTALMNT OF INCOM 7979.03 0731
COL 072811 9BF BRWR CLD..A/C VERF..NO EMAIL, ALT PH NO..PITCHED TA
               D.. TOOK CBP OF 7978.03+16.95 FOR 7/31/2011,CONF NO
               6315806.. ADV OTHER
COL 072711 JPD CALLED HOME    LEFT MSG TO CALL                          0729
COL 072711 JPD CALLED HOME    NO MESS LEFT
COL 072611 JRG CALLED HOME    NO MESS LEFT
COL 072511 DVX                AMD NO MSG LEFT
COL 072311 7NW CALLED HOME    NO MESS LEFT
COL 072211 DVX                AMD NO MSG LEFT
COL 072111 SPX CALLED HOME    CUSTOMER HUNG UP
COL 072011 STN CALLED HOME    NO MESS LEFT
COL 071911 USA CALLED HOME    NO MESS LEFT
COL 071811 DVX                AMD NO MSG LEFT
COL 071611 PRI                PARTY HUNG UP
COL 071611 PRI                NO ANSWER
COL 071511 PRI                PARTY HUNG UP
COL 071411 ECG DELQ STAT =      REASON FOR DELQ = 031
COL 071411 ECG CALLED HOME    NO MESS LEFT        UNABLE TO CONTACT
COL 071311 JKJ CALLED HOME    NO MESS LEFT
COL 071311 BWA CALLED HOME    NO MESS LEFT
COL 071211 SSG CALLED BUS     NO MESS LEFT
COL 071111 DVX                AMD NO MSG LEFT
COL 070911 5HV CALLED HOME    CUSTOMER HUNG UP
COL 070811 VZP CALLED HOME    CUSTOMER HUNG UP
COL 070711 J4Z CALLED HOME    NO MESS LEFT
COL 070611 DVX                AMD NO MSG LEFT
COL 070511 DVX                SIT TONE
COL 070111 DVX                AMD NO MSG LEFT
COL 063011 PRI                PARTY HUNG UP
COL 063011 PRI                NO ANSWER
COL 062911 DVX                AMD NO MSG LEFT
COL 062811 DVX                AMD NO MSG LEFT
COL 062811 MN9 CALLED HOME    NO MESS LEFT
COL 062411 (S3 SPY; AMNT $7279.58; DTD 6/24/2011;          7279.58 0625
               CFN#6252138; FEE CHRGD $16.95;
               2ND MTG=N; BK=N;
COL 062411 OCS DELQ STAT =      REASON FOR DELQ = 006
COL 062411 OCS VALIDATED WITHIN LAST 30 DAYS/B1 SAID HE WILL CALL
               IN ANOTHER 2 WEEKS TO GIVE ANOTHER 1 MONTH PAYMENT.
COL 062411 OCS BRWR CALLED    PHONE PAY OBTAINED    CURTALMNT OF INCOM 7279.58 0625
COL 062411 OCS B1 CALLED/VAIG DONE/NO ALT TEL # OR EMAIL/PITCHED T
               AD/B1 GAVE A CBP DATED 06-24-11 FOR $7279.58 + $16.
               95 PROCESSING FEE/CONFIRMATION # 6252138/RFD WAS
COL 062311 BJV CLD CELL PH    NO MESS LEFT
COL 062211 SET CALLED HOME    NO MESS LEFT
```

**EXHIBIT 5**
**PAGE 15**

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:30
SD ELLSWORT        L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.    ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                              PAGE NO: 16


COL 062211 SS5 DELQ STAT =       REASON FOR DELQ = 031
COL 062211 SS5 CALLED HOME   NO MESS LEFT       UNABLE TO CONTACT
COL 062211 BJV CALLED HOME   NO ANSWER
COL 062111 DVX               AMD NO MSG LEFT
COL 062011 DVX               AMD NO MSG LEFT
COL 061711 KNT CALLED HOME   NO MESS LEFT
COL 061611 DVX               AMD NO MSG LEFT
COL 061511 CMO CALLED HOME   NO ANSWER
COL 061411 SET CALLED HOME   NO MESS LEFT
COL 061311 TSB CALLED HOME   NO MESS LEFT
COL 061011 5BS               NO MESS LEFT
COL 060911 SSG CALLED HOME   NO MESS LEFT
COL 060911 4CT CALLED HOME   NO MESS LEFT
COL 060811 DMJ CALLED HOME   NO MESS LEFT
COL 060811 HDS CALLED HOME   NO MESS LEFT
COL 060711 DVX               AMD NO MSG LEFT
COL 060611 DVX               AMD NO MSG LEFT
COL 060311 BPP CALLED HOME   NO MESS LEFT
COL 060311 OSP LETTER SENT   OP961 Draft Pmt Applied NOI Vali
COL 052811 JDF DELQ STAT =       REASON FOR DELQ = 006
COL 052811 JDF CALLED HOME   PDCBP OBTAINED     CURTALMNT OF INCOM 7279.58 0602
COL 052811 JDF OB/GMM/TTB1 IAO 7279.58 CON NUM..6195988//PDCBP OB/
               RFD LOST FIFTY OF INCOME/
COL 052811 (S3 PDSPY; AMNT $7279.58; DTD 6/2/2011;            7279.58 0602
               CFN#6195988; FEE CHRGD $16.95;
               2ND MTG=N; BK=N;
COL 052711 DVX               NO VALID NUMBERS
COL 052711 AEF CALLED HOME   NO MESS LEFT
COL 052611 BRO DELQ STAT =       REASON FOR DELQ = 031
COL 052611 BRO CALLED HOME   NO MESS LEFT       UNABLE TO CONTACT
COL 052511 B9P CALLED HOME   NO MESS LEFT
COL 052511 N5B CALLED HOME   NO MESS LEFT
COL 052411 JJG CALLED HOME   NO MESS LEFT
COL 052411 GMV CALLED HOME   NO MESS LEFT
COL 052311 SSG CALLED HOME   NO MESS LEFT
COL 052111 G3P CALLED HOME   CUSTOMER HUNG UP
COL 052011 BUC DELQ STAT =       REASON FOR DELQ = 031
COL 052011 BUC CALLED HOME   NO MESS LEFT       UNABLE TO CONTACT
COL 052011 BTS CALLED HOME   NO MESS LEFT
COL 051911 A2U CALLED HOME   NO MESS LEFT
COL 051911 BFP CALLED BUS    NO MESS LEFT
COL 051911 BFP CALLED HOME   NO MESS LEFT
COL 051811 JDF CALLED BUS    NO MESS LEFT
COL 051711 DVX               AMD NO MSG LEFT
COL 051711 M6F CALLED HOME   NO MESS LEFT
COL 051611 DVX               AMD NO MSG LEFT
COL 051411 DN9 CALLED HOME   NO MESS LEFT
COL 051311 DVX               AMD NO MSG LEFT
COL 051211 SXS CALLED HOME   NO MESS LEFT
```

**EXHIBIT 5**
**PAGE 16**

```
NOTS  0030995377         CONSOLIDATED NOTES LOG            09/10/12 14:01:30
SD ELLSWORT       L:  F:A B:  R:          DUE 12/01/11   TYPE CONV. RES.    ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                                PAGE NO: 17


COL 051211 VG3 CALLED HOME   NO MESS LEFT
COL 051111 K5G CALLED HOME   NO MESS LEFT
COL 051011 DVX               NO ANSWER
COL 050911 DEK CALLED HOME   NO MESS LEFT
COL 050611 4AY CALLED BUS    NO MESS LEFT
COL 050611 PJR CALLED HOME   NO MESS LEFT
COL 050611 MSV TT CBRW.GV MM.AND BEFORE I CUD PITCH TAD SHE HUNG U
               P.
COL 050611 MSV CALLED HOME   CUSTOMER HUNG UP
COL 050511 SCB DELQ STAT =      REASON FOR DELQ = 031
COL 050511 SCB CALLED HOME   NO MESS LEFT      UNABLE TO CONTACT
COL 050411 DVX               NO ANSWER
COL 050411 C5D CALLED HOME   NO MESS LEFT
COL 050311 DEK CALLED HOME   NO MESS LEFT
COL 050211 SET CALLED HOME   NO MESS LEFT
COL 043011 DVX               AMD NO MSG LEFT
COL 043011 NBP CALLED HOME   NO ANSWER
COL 042811 MJD CALLED HOME   AMD NO MSG LEFT
COL 042811 VG3 CALLED BUS    NO MESS LEFT
COL 042511 USA CALLED HOME   NO MESS LEFT
COL 042511 (S3 PDSPY; AMNT $7580.75; DTD 4/27/2011;        7580.75 0427
               CFN#6126509; FEE CHRGD $16.95;
               2ND MTG=N; BK=N;
COL 042511 FEI DELQ STAT =      REASON FOR DELQ = 006
COL 042511 FEI BRWR CALLED   PDCBP OBTAINED      CURTALMNT OF INCOM 7580.75 0427
COL 042511 FEI B1VAIG/PDCBP:7,580.75 + 16.95 4/27 CONF:6126509 RFD
               :FLUCTUATION IN INCOME, WILL CALL TO MAKE APR PMT S
               OON, DIDNT WANT TO SCHEDULE THAT ONE YET
COL 042311 BWA CALLED HOME   NO MESS LEFT
COL 042211 FLH CALLED HOME   NO MESS LEFT
COL 042211 2LR CALLED HOME   NO MESS LEFT
COL 042111 MVW CALLED HOME   NO MESS LEFT
COL 042011 ARE CALLED HOME   NO MESS LEFT
COL 042011 JDC DELQ STAT =      REASON FOR DELQ = 031
COL 042011 JDC CALLED HOME   NO MESS LEFT      UNABLE TO CONTACT
COL 041911 JHL CALLED HOME   AMD NO MSG LEFT
COL 041811 DVX               NO ANSWER
COL 041811 K2K CALLED HOME   NO MESS LEFT
COL 041611 KPJ CALLED HOME   NO MESS LEFT
COL 041511 DVX               AMD NO MSG LEFT
COL 041411 DVX               AMD NO MSG LEFT
COL 041311 DVX               AMD NO MSG LEFT
COL 041211 9BF CALLED BUS    NO MESS LEFT
COL 041111 DVX               AMD NO MSG LEFT
COL 040811 USD DELQ STAT =      REASON FOR DELQ = 031
COL 040811 USD CALLED BUS    NO MESS LEFT      UNABLE TO CONTACT
COL 040711 R8B CALLED HOME   NO MESS LEFT
COL 040611 JDC CLD CELL PH   LFT MSG ANS MACH
COL 040511 DVX               AMD NO MSG LEFT
```

EXHIBIT 5
PAGE 17

```
NOTS  0030995377            CONSOLIDATED NOTES LOG           09/10/12 14:01:30
SD ELLSWORT        L:  F:A B:  R:         DUE 12/01/11   TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                           PAGE NO: 18


COL 040411 DVX              DIALER DRPD FRM HD
COL 040111 DVX              AMD NO MSG LEFT
COL 033011 LFL CALLED BUS   NO MESS LEFT
COL 032911 NBT CALLED BUS   NO MESS LEFT
COL 032811 RHR CALLED HOME  NO MESS LEFT        UNABLE TO CONT BWR
COL 032611 AIA CALLED HOME  PARTY HUNG UP
COL 032511 SXT CALLED BUS   NO MESS LEFT
COL 032411 8KF CALLED BUS   NO MESS LEFT
COL 032311 E3V CALLED BUS   LEFT MSG TO CALL
COL 032211 I7U CALLED BUS   AMD NO MSG LEFT
COL 032111 DVX              AMD NO MSG LEFT
COL 032111 V6F CALLED HOME  NO MESS LEFT
COL 032111 *** CC021 20 Day Coll Ltr        LETTER SENT
COL 031911 SS5 DELQ STAT =     REASON FOR DELQ = 031
COL 031911 SS5 CALLED HOME  NO MESS LEFT        UNABLE TO CONTACT
COL 031811 DVX              AMD NO MSG LEFT
COL 031711 MVW CALLED HOME  CUSTOMER HUNG UP
COL 031711 MVW CLD & SPK TO B2. STATED MM. PITCH FOR TAD SHE HUNG
               UP
COL 031511 (S3 SPY; AMNT $7580.75; DTD 3/15/2011;        7580.75 0316
               CFN#6044135; FEE CHRGD $16.95;
               2ND MTG=N; BK=N;
COL 031511 HRJ DELQ STAT =     REASON FOR DELQ = 006
COL 031511 HRJ BRWR CALLED   PHONE PAY OBTAINED CURTALMNT OF INCOM 7580.75 0316
COL 031511 HRJ COLL: BRW SAMUEL ELLSWORTH   CONTACTED 03/15/2011
               AT   MULTIPLE PTP: CBP 7580.75 03/15/2011  CNF #
               6044135  RFD: INCOME CURTAILED USER COMMENTS:BORR
COL 031511 HRJ COLL:  CALLED IN FULLY VER////// ADV TAD///// DONE
               A CBP///EDU ABT CONSEQ LIKE BD CHK FEES///// REFUS
               ED PDC/////// GAVE NAP TO CALL SUBACK ON 03/18///
COL 031511 STN CALLED HOME  LEFT MSG TO CALL
COL 031411 DVX              AMD NO MSG LEFT
COL 031111 DVX              DIALER DRPD FRM HD
COL 031011 JCY CALLED HOME  NO MESS LEFT
COL 031011 VG3 CALLED HOME  NO MESS LEFT
COL 030911 DVX              AMD NO MSG LEFT
COL 030911 *** OP250 CA No Cont Primary Bor M LETTER SENT
COL 030811 JCY CALLED HOME  NO MESS LEFT
COL 030711 R8K DELQ STAT =     REASON FOR DELQ = 031
COL 030711 R8K CALLED HOME  NO MESS LEFT        UNABLE TO CONTACT
COL 030311 DVX              AMD NO MSG LEFT
COL 030211 MBZ CALLED BUS   NO MESS LEFT
COL 030211 3SN CALLED HOME  NO MESS LEFT
COL 030211 BWA CALLED HOME  NO MESS LEFT
COL 030111 DVX              AMD NO MSG LEFT
COL 022811 DVX              DIALER DRPD FRM HD
COL 022611 S4N CALLED HOME  NO ANSWER
COL 022611 SS5 DELQ STAT =     REASON FOR DELQ = 031
COL 022611 SS5 CALLED BUS   NO MESS LEFT        UNABLE TO CONTACT
```

EXHIBIT 5
PAGE 18

```
NOTS  0030995377        CONSOLIDATED NOTES LOG          09/10/12 14:01:30
SD ELLSWORT     L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y      DATE SELECT: 01/01/01
                                                             PAGE NO: 19


COL 022511 SJ6 CALLED HOME   NO ANSWER
COL 022411 DVX               DIALER DRPD FRM HD
COL 022311 DVX               AMD NO MSG LEFT
COL 022211 DVX               DIALER DRPD FRM HD
COL 022111 SXS CALLED HOME   CUSTOMER HUNG UP
COL 022111 *** CC021 20 Day Coll Ltr          LETTER SENT
COL 021911 MMF CALLED HOME   CUSTOMER HUNG UP
COL 021911 MMF CALLED HOME   WRONG NUMBER
COL 021811 A5E CALLED HOME   NO MESS LEFT
COL 021711 DVX               AMD NO MSG LEFT
COL 021611 DVX               DIALER DRPD FRM HD
COL 021511 SVK CALLED HOME   NO MESS LEFT
COL 021411 4AY CALLED HOME   LEFT MSG TO CALL
COL 021411 VZP CALLED BUS    NO MESS LEFT
COL 021211 BWA CALLED HOME   NO MESS LEFT
COL 021111 SS5 DELQ STAT =      REASON FOR DELQ = 031
COL 021111 SS5 CALLED HOME   NO MESS LEFT      UNABLE TO CONTACT
COL 021111 DVX               AMD NO MSG LEFT
COL 021111 FLH CALLED HOME   NO MESS LEFT
COL 021011 DVX               AMD NO MSG LEFT
COL 020911 DMU CALLED HOME   CUSTOMER HUNG UP
COL 020811 DVX               NO ANSWER
COL 020811 MSV CALLED HOME   NO MESS LEFT
COL 020411 P6D CALLED HOME   NO ARRANG MADE                          0205
COL 020411 P6D SPK TO B2/GAV MM/GAV TAD/SD WOTS THE DATE TODY ITS
               NOT DUE YET N WHY WE CALNG HER.. N HUNG UP//
COL 020411 SPX DELQ STAT =      REASON FOR DELQ = 031
COL 020411 SPX CALLED BUS    NO MESS LEFT      UNABLE TO CONTACT
HAZ 012111 Z04 351 #ET0593W1 UPDATED INS LINE - PREVIOUSLY PAID
HAZ 012111 Z04 RECVD P ON 939214539 DOCID ET0593W1
COL 011711 6LZ CALLED HOME   NO ANSWER
COL 011511 6LZ DELQ STAT =      REASON FOR DELQ = 006
COL 011511 6LZ JAN.
               NO ALT NUM AND NO EMAIL
COL 011511 6LZ BRWR CALLED   PHONE PAY OBTAINED CURTALMNT OF INCOM13433.21 0116
COL 011511 6LZ B1 CLD, VERIFIED, SD WNTS TO MK PYT, SO SETUP CBP I
               AO 13433.21+16.95 CONF#5904740. RFD--SD REDUCTION I
               NT THE PYT. ADV HE WILL RCV THE YES ARND THE END OF
COL 011511 (S3 SPY; AMNT $13433.21; DTD 1/15/2011;              13433.21 0116
               CFN#5904740; FEE CHRGD $16.95;
               2ND MTG=N; BK=N;
HAZ 011411 Z05 351 #ET055PVS UPDATED INS LINE - PREVIOUSLY PAID
COL 011311 DVX               AMD NO MSG LEFT
COL 011211 DVX               NO ANSWER
COL 011211 DVX               DIALER DRPD FRM HD
HAZ 011111 Z04 351 #AL05D54Q GENERATED HZ114 LETTER FOR COVERAGE
               DEFICIENCY
HAZ 011111 Z04 351 #AL05D54Q UPDATED INS LINE - PREVIOUSLY PAID
HAZ 011111 Z07 RECVD PN ON 939214539 DOCID AL05D54Q
```

EXHIBIT 5
PAGE 19

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:30
SD ELLSWORT        L:  F:A B:  R:         DUE 12/01/11  TYPE CONV. RES.   ARM
     ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
     PIF Y PMT Y REO Y SER Y TAX Y TSK Y       DATE SELECT: 01/01/01
                                                             PAGE NO: 20


HAZ 011011 Z03 RECVD PN ON 939214539 DOCID ET055PVS
HAZ 011011 WAS
               351 PER 22I REPORT: ERROR CODE: 1041 N/A TAKEN.
               MBA ON LOAN
COL 010711 P6B CALLED HOME    PARTY HUNG UP                              0108
COL 010711 P6B CLD CO BWR GAVE MM B4 GIVING TAD SHE HUNG UP.
HAZ 010711 D2H 351 S/W AGENT PAM DEBUSK @ 714.540.5200 RE: PREM P
               MT.  UPDTD POL, REQD PREM PMT, VFD MORT CLAUSE, RE
               QD DEC PAGE.
COL 010611 SXS DELQ STAT =       REASON FOR DELQ = 031
COL 010611 SXS CALLED HOME    CUSTOMER HUNG UP    UNABLE TO CONTACT
COL 010511 WER CALLED HOME    NO MESS LEFT
COL 010411 DVX               AMD NO MSG LEFT
COL 123110 KMJ RFD UPDATED AS PERNOTS IN LAST 30 DAYS
COL 123110 KMJ CALLED HOME    NO ARRANG MADE    UNCOOPERATIVE
COL 123110 KMJ CALLED HOME    CUSTOMER HUNG UP    UNCOOPERATIVE
COL 123110 KMJ CLD N SPK TO BRW2/MM GVN/PTCHD TAD /B4 CUD USE THE
               WORD TODAY SHE HUNGUP/EOC
COL 123010 DVX               NO ANSWER
COL 123010 DVX               DIALER DRPD FRM HD
COL 122910 DVX               AMD NO MSG LEFT
COL 122810 DVX               AMD NO MSG LEFT
COL 122710 DVX               AMD NO MSG LEFT
COL 122310 SSN CALLED HOME    AMD NO MSG LEFT    UNABLE TO CONT BWR
COL 122210 GCS CALLED HOME    PARTY HUNG UP      UNABLE TO CONT BWR
COL 122110 *** CC021 20 Day Coll Ltr            LETTER SENT
COL 122010 G3P CALLED HOME    CUSTOMER HUNG UP
COL 121810 AIA CALLED HOME    CUSTOMER HUNG UP
COL 121710 SJ6 DELQ STAT =       REASON FOR DELQ = 031
COL 121710 SJ6 CALLED HOME    NO MESS LEFT       UNABLE TO CONTACT
COL 121710 EOJ CALLED HOME    NO MESS LEFT
COL 121610 DVX               AMD NO MSG LEFT
COL 120310 DBN CALLED HOME    PDCBP OBTAINED     UNCOOPERATIVE   7580.75 1215
COL 120310 DBN CLD BRW //VERFD//GAV MM //NO ALT # UPDATED , EMAIL
               UPDATED AS &@& //PITCHED TAD , AGREED TO MK ONE PAY
               MNT DATED FOR 12/15/10 IAO 7580.75 + 16.95 N GAV
COL 120310 DBN CONF # 5807150 //SOF IS THRU PAYCHECK //SKD FOR RFD
               , SD HE IS IN THE SHOWER N CANNOT GIV IT , HE WAS
               IN HURRY //GAV ALT PAYMNT OPTIONS
COL 120310 DBN FOR DEC HE WILL MAKE THE PAYMNT SOMETIME ON THE 30T
               H OF DEC //RECAP DON //EOC
COL 120310 (S3 PDSPY; AMNT $7580.75; DTD 12/15/2010;           7580.75 1215
               CFN#5807150; FEE CHRGD $16.95;
               2ND MTG=N; BK=N;
COL 120210 DVX               AMD NO MSG LEFT
COL 120210 9PA CALLED HOME    NO MESS LEFT
COL 120110 DVX               AMD NO MSG LEFT
COL 112610 ENR CALLED HOME    AMD NO MSG LEFT
COL 112610 BJL DELQ STAT =       REASON FOR DELQ = 031
```

EXHIBIT 5
PAGE 20

```
NOTS  0030995377         CONSOLIDATED NOTES LOG          09/10/12 14:01:31
SD ELLSWORT      L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.    ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y       DATE SELECT: 01/01/01
                                                          PAGE NO: 21


COL 112610 BJL CALLED HOME   NO MESS LEFT        UNABLE TO CONTACT
COL 112410 A1P CALLED HOME   NO MESS LEFT
COL 112410 DIC CALLED HOME   NO MESS LEFT
COL 112310 K5G CALLED BUS    NO MESS LEFT
COL 112210 DVX               AMD NO MSG LEFT
COL 112210 G3P CALLED HOME   NO MESS LEFT
COL 112210 *** CC021 20 Day Coll Ltr      LETTER SENT
COL 111910 AK5 DELQ STAT =        REASON FOR DELQ = 031
COL 111910 AK5 CALLED HOME   NO MESS LEFT        UNABLE TO CONTACT
COL 111810 CM7 CALLED HOME   LEFT MSG TO CALL
COL 111810 BG4 CALLED HOME   NO MESS LEFT
COL 111610 5PN DELQ STAT =        REASON FOR DELQ = 003
COL 111610 5PN CALLED HOME   NO MESS LEFT        ILLNESS OF FAM MEM
COL 111610 (S3 SPY; AMNT $7279.58; DTD 11/16/2010;           7279.58 1117
               CFN#5767905; FEE CHRGD $16.95;
               2ND MTG=N; BK=N;
COL 111610 CBF DELQ STAT =        REASON FOR DELQ = 003
COL 111610 CBF BRWR CALLED  PHONE PAY OBTAINED ILLNESS OF FAM MEM 7279.58 1117
COL 111610 CBF COLL: BRW SAMUEL ELLSWORTH   CONTACTED 11/16/2010
               AT   MULTIPLE PTP: CBP 7279.58 11/16/2010   CNF #
               5767905  RFD: ILLNESS OF FAMILY MEMBR USER COMMEN
COL 111610 CBF COLL: TS:B1 CLLD IN VAIG.  B1 SD WILL VERIFY FUNDS
               1ST & CLLBCK TO POSTDATE 11/1/10 PMT.  EXPLND IMPO
               RTANCE OF AVOIDING DLQ.
COL 111510 S0V DELQ STAT =        REASON FOR DELQ = 003
COL 111510 S0V CALLED HOME   LEFT MSG TO CALL    ILLNESS OF FAM MEM
COL 111210 SGQ CALLED HOME   NO MESS LEFT
COL 111110 DVX               AMD NO MSG LEFT
COL 111110 M6K DELQ STAT =        REASON FOR DELQ = 031
COL 111110 M6K CALLED HOME   NO MESS LEFT        UNABLE TO CONTACT
COL 111010 DVX               NO ANSWER
COL 111010 DVX               DIALER DRPD FRM HD
COL 110910 0EP DELQ STAT =        REASON FOR DELQ = 031
COL 110910 0EP CALLED HOME   NO MESS LEFT        UNABLE TO CONTACT
COL 110810 DVX               AMD NO MSG LEFT
COL 110510 DVX               AMD NO MSG LEFT
COL 110410 DVX               AMD NO MSG LEFT
COL 110310 DVX               AMD NO MSG LEFT
COL 103010 GEB CALLED HOME   AMD NO MSG LEFT
COL 102810 JCK CALLED HOME   AMD NO MSG LEFT
COL 102710 T4K CALLED HOME   NO MESS LEFT
COL 102710 E3V CALLED BUS    NO MESS LEFT        UNABLE TO CONT BWR
COL 102610 TS5 CALLED HOME   NO MESS LEFT
COL 102610 B6A DELQ STAT =        REASON FOR DELQ = 003
COL 102610 B6A CALLED HOME   NO MESS LEFT        ILLNESS OF FAM MEM
COL 102510 QSG DELQ STAT =        REASON FOR DELQ = 031
COL 102510 QSG CALLED HOME   CUSTOMER HUNG UP    UNABLE TO CONTACT
COL 102310 R7M DELQ STAT =        REASON FOR DELQ = 031
COL 102310 R7M CALLED HOME   NO MESS LEFT        UNABLE TO CONTACT
```

EXHIBIT 5
PAGE 21

```
NOTS  0030995377          CONSOLIDATED NOTES LOG            09/10/12 14:01:31
SD ELLSWORT      L:  F:A B:  R:        DUE 12/01/11   TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y       DATE SELECT: 01/01/01
                                                            PAGE NO: 23


COL 092310 MBG CALLED HOME   NO MESS LEFT       UNABLE TO CONTACT
COL 092310 SXS DELQ STAT =        REASON FOR DELQ = 031
COL 092310 SXS CALLED HOME   NO MESS LEFT       UNABLE TO CONTACT
COL 092210 USA CALLED HOME   NO MESS LEFT
COL 092210 DVX               NO ANSWER
ANA 080210 ABE IMPOVG: MOVED 730.53 FROM ESC TO SUSPENSE, FUNDS N
               ORMALLY NOT MOVED WITHOUT REQUEST IN WRITING. APPR
               OVED DUE TO MULTIPLE REQUESTS
HAZ 072810 Z05 351 #ET03PJMC UPDATED INS LINE - PREVIOUSLY PAID
HAZ 072810 Z04 RECVD P ON 939214539 DOCID ET03PJMC
HAZ 072810 39C 351-CONTINUED, EXPLAINED TO BORR2 THAT SHE WAS GIV
               EN OVERAGE AMT IN ESCR BEFORE INS PREM WAS PIF, AG
               T ADVSD THAT REFUND FROM INS CO IS BEING SENT TO B
               ORR2 FOR PMT SHE MADE ON INS
HAZ 072810 39C 351 S/W AGENT PAM DEBUSK @ 7145405200 RE: PREM PMT
               . ADVSD AGENT WE SENT TO PMT THIS YR, ADSVD OF PMT
               AMT, DATES, THE 2 PMT WE SENT TOTAL THE YEARLY PR
               EM, ADVSD NO PMT WAS SENT FOR THE 2009 TERM, ADSVD
               THAT A  DEPOSIT WAS NADE TO ESCR ACCT ON 12/14/09
               FROM L/P POL, ADSVD AGT OF LAPSE STILL FOR 01/07/
               09-01/16/09, AGT STTD DID NOT HAVE COV FOR THAT TI
               ME, BORR2 CALLED WHILE S/W AGT, CONFERENCED IN TO
               EXPLAIN ESCR ACCT  AND PREM PMT ON INS,
SER 072810 HLR
               CONT IN THE AMT OF $729.28 B1 SD DDNT KNOW THAT WA
               S ESCROWED FOR INS WHEN SHE IS PAYING FOR INS HERS
               ELF ADV THAT HAS BEEN ESCROWED SINCE 06/09 B1 STAT
               ED WLL CONTACT INS COMPANY AND WLL RETRN CLL
SER 072810 HLR ESCROW ANALYSIS INQUIRY                      ESCANA
               B2 CI FULLY VAIG STATED THAT WANTED TO HVE OVERGE
               APPLIED TO ACCT ADV THAT OVERAGE IS IN AMTOF $
SER 072810 SN7 OFFERED INTER-DEPARTMENTAL ASSISTANCE        GASST
               BRU CALD IN... WANTED TO TALKT TO SOMEONE IN UNITE
               D STATESS THUS TRANSFERED THE CALL TO PZHLR..
HAZ 072310 36C RECEIVED THE DOCUMENT BACK FROM THE
               IMAGE DEPT
               NEW DOC# AG04F5XJ
ANA 072310 8EL CLOSED ZCSANA AS CHANGED IN PAYMENT IS LESS THAN $
               1, OPENED IMP318 TO REFUND OVERAGE
               PLEASE IGNORE BELOW NOTES
ANA 072310 8EL CLOSED IMPANA AS CHANGED IN PAYMENT IS LESS THAN $
               1, OPENED IMP318 TO REFUND OVERAGE
HAZ 072210 0C1 351 PLEASE RE-DIRECT PREM PMNT $1563.35 TO:
               FARMERS INS
               PAM DEBUSK INS AGENCY
               1072 BRISTOL ST #205
               COSTA MESA, CA 92626
```

**EXHIBIT 5**
**PAGE 22**

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:31
SD ELLSWORT      L:  F:A B:  R:          DUE 12/01/11   TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y          DATE SELECT: 01/01/01
                                                            PAGE NO: 24


HAZ 072210 0C1 ATTN: PAM DEBUSK, PH# 714-540-5200
               POL# 939214539
HAZ 072210 0C1 351 RCVD ADDTL PN VIA FAX FRM FARMER INS AGENCY
               FO POL# 939214539. DISB REMAINING PREM BAL IAO
               $1563.35 THRU F9. OPENED ZCSAPY TASK, PER AGT'S
               REQUEST. SENT DOCS TO BE IMAGED/GREY TAG.
               NO FURTHER ACTION. HAZ1 IS CURRENT.
SER 072210 1SD OFFERED INTER-DEPARTMENTAL ASSISTANCE          GASST
               ASST THE REP//PZSB4//OPEN TSK TO HAVE THE OVERAGE
               FOR THE AMT OF 3948.52 TO BE APPLIED TRWDS THE MON
               THLY PYMTS//CUST HAVE ALREADY SENT IN LETTER IN OP
               EN CLIEND LINE 97 AND 98
SER 072210 SXS OFFERED INTER-DEPARTMENTAL ASSISTANCE          GASST
               CLR SD WANT TO SPEAK TO RESOLUTION DEPT ADV CANT T
               RANSFER THEY DONT TAKE CALLS CLR HUNG UP
HAZ 072210 97S BORR2 CALLED AGAIN TO S/W CUST SVC. XFER CALL.
HAZ 072210 97S S/W BORR2 RE: STTD SHE WAS TOLD A RFD IAO 3948.52
               WAS SUPPOSE TO BE CREDITED BACK TO HER ACCT. ADVSD
               BORR2 I DID NOT SEE THAT AMT BUT DID SET UP A RE-
               ANA ON THE ACCT. BORR WANTED TO BE XFER TO 877-304
               -3100, XFER CALL TO CUST SVC.
HAZ 072210 1Z2 351- ET03L9Q3 ID #071310 RCVD C FROM FARMERS PER
               NOTES BELOW REIN WAS RCVD WITH BETTER ISSUE DATE
               HAZ 1 CURRENT N/A TAKEN
HAZ 072110 RDK 351 FIRE INS EXCH, DOC#ET03MJ0V, ID 7/19/10,
               RECVD REIN, UPDATED HAZ1.
HAZ 072110 0C1 351 INCOMING CALL FRM AGT PAM, SHE WANTED TO LET
               US NOW THAT INSURED WANTS US TO PAY THE ENTIRE
               PREM AMNT FOR $3093.60. ADVISED THAT PREM PMNT
               IAO $1,530.25WAS JUST SENT TO HER OFFICE. SHE WILL
               SEND US A BILL FOR THE REMAINING PREM BAL (TO BE
               SENT TO HER OFFICE AGAIN). PROVIDED 949 FAX#
               UPDTD CORRECT PREM AMNT ON HAZ1. NO FURTHER ACTION
               PER AGT, A REFUND WILL BE SENT TO INSURED FROM
               FARMERS FOR WHAT THEY HAVE ALREADY PAID TOWARDS
               THE PREM (PER INSUREDS REQUEST).
HAZ 072010 Z07 351 #ET03MTHL UPDATED INS LINE - PREVIOUSLY PAID
HAZ 072010 Z04 RECVD PN ON 939214539 DOCID ET03MTHL
SER 072010 MC5 OFFERED INTER-DEPARTMENTAL ASSISTANCE          GASST
               REP PZ WER CLLD FOR ASSISTANCE/WANTED TO KNOW WHY
               REQ FOR REFUND FOR ESC WAS REJECTED/INFORM ACCOUNT
               WAS DELINQ WHEN REQ WAS PLACED AND ACCOUNT HAS TO
               BE CURRENT TO SEND OUT ESC OVERAGE/INFORM CUST CA
               N SEND WRITTEN REQ TO RESOL TO HAVE FUNDS PLACED I
               N SUSPENSE TO USE TOWARDS PYMNT
HAZ 072010 A9C S/W BORR 2, RE: ESCROW OVERAGE. XFERD TO CUST SRV
               REP PZ ID WER.GAVE BORR 877#
HAZ 071910 Z03 RECVD REI ON 939214539 DOCID ET03MJ0V
HAZ 071910 57C 351 RCVD DOC# ET03L9Q3 -CLD PAM BK #7145405200
```

EXHIBIT 5
PAGE 23

```
NOTS  0030995377          CONSOLIDATED NOTES LOG          09/10/12 14:01:31
SD ELLSWORT      L:  F:A B:  R:          DUE 12/01/11  TYPE CONV. RES.  ARM
   ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
   PIF Y PMT Y REO Y SER Y TAX Y TSK Y        DATE SELECT: 01/01/01
                                                          PAGE NO: 25


HAZ 071910 57C
             REP STTD WILL CHANGE PAYOR TO BILL MTG COMPANY
             & ADDL DUE TO PIF $1530.25- OKAY TO PAY REG MAIL
             TO AGCY, OPEN TASK ZCSAPY F9
HAZ 071910 Z00 351 S/W PAM @714-540-5200 WITH FARMERS INSURANCE W
             ANTING TO SPEAK WITH FELIPE DE LA RIVA. SENT EMAIL
             TO CALL RE: INSURANCE INFO.AWOODS/STERLING
HAZ 071910 57C 351 RCVD DOC# ET03L9Q3 CONT NOTES CLD AGT
             714-540-5200 NON ANSWERED, FAXED AGT 714-556-6900
             NEED TO RSCH PMT INFO
HAZ 071610 0C1 351: RCVD CALL FRM AGT PAM, SHE WAS TRYING TO GET
             HOLD OF REP 41Z, PROVIDED 949 PH.
HAZ 071610 41Z 351 RCVD CALL FRM AGNT PAM STTD POL WAS REINSTATED
             AND POL IS ACTIVE NOW, I ADV HER THERE IS A ESCROW
             ACCNT, SHE'LL CHANGE TO MORTG BILL AND WILL SEND
             INVOICE FOR REMAINING BAL TO 949#.
HAZ 071610 57C 351 RCVD DOC# ET03L9Q3 FRM FARMERS INS FOR POL#
             939214539 ID:07.13.10 CP EFF 07.01.10 CLD CARR
             913-227-8700 S/W JEN VFD PREM $3093.60 POL CNCL
             070110 NON PMT REFERED TO AGCY
HAZ 071610 57C 351 RCVD DOC# ET03L9Q3 FRM FARMERS INS FOR POL#
             939214539 ID:07.13.10 CP EFF 07.01.10 CLD AGCY@71
             540-5200 IVR CLOSED
HAZ 071510 41Z 351 RCVD DOC# ET03L9Q3 FRM FARMERS INS FOR POL#
             939214539 ID:07.13.10 CP EFF 07.01.10 CLD AGCY@714
             540-5200 S/W PAM STTD PYMNT WAS MADE BUT WAS NOT
             APPLIED, SHE'LL VRFY AND CALL BACK
HAZ 071310 Z05 RECVD CAN ON 939214539 DOCID ET03L9Q3
ANA 070710 3VY IMPOVG - OVERAGES ARE NOT DISBURSED ON DELINQUENT
             LOANS.  BORROWER NEEDS TO CURRENT FOR OVERAGE
             TO BE DISBURSED OR CAN SUBMIT A REQUEST IN
             WRITTING TO HAVE FUNDS USED TOWARD THEIR MONTLY
             MORTGAGE PAYMENT
SER 070210 DGH DEBIT REVIEW RECON: ADVANCES OWED FROM BORROWER    DBTOWD
             160.00 CORP ADVANCE DUE FROM BORROWER FOR 100.00
             BPO FEE 60.00 (3 @20.00) BREACH LETTERS.
ANA 051810 ABE IMPOVG: NO ACTION TAKEN. REJECTED TASK
HAZ 121609 E15 LENDER PLACED HAZ REFUND IN THE AMOUNT OF 8330.4.T
             HE LAPSE PERIOD IS 1/7/2009(COVERAGE EFFECTIVE DAT
             E) THROUGH 1/16/2009(CANCELLATION EFFECTIVE DATE).
HAZ 121009 C26 351 ET02DS7X FARMERS POLICY  NTC ID 12.08.09
             UPDTD HAZ1; BORR PAYS PREM/MOD
HAZ 120809 0Z0 351 FARMERS, POL RCVD FAX FP009F56, ID
             12.07.09, INFO UPDATED OVER LP.
HAZ 120809 Z03 RECVD P ON 939214539 DOCID ET02DS7X
HAZ 120709 7MW 351 S/W AGENT CAROLINE,FARMERS INSURANCE @ 7145405
             200, VFD MTGE CLS, 949 FAX#, AND ADVSD AGT TO HAVE
              BORR CALL BACK T O CUST SVCE RE MTG PYMT INCREASE
                 .
```

**EXHIBIT 5**
**PAGE 24**

```
NOTS  0030995377           CONSOLIDATED NOTES LOG           09/10/12 14:01:31
SD ELLSWORT       L:  F:A B:  R:        DUE 12/01/11  TYPE CONV. RES.   ARM
    ANA Y ARM Y ASM Y BLN Y BNK Y CCN Y COL Y ELC Y FOR Y HAZ Y LMT Y MIP Y
    PIF Y PMT Y REO Y SER Y TAX Y TSK Y      DATE SELECT: 01/01/01
                                                              PAGE NO: 26
```

```
HAZ 050109 C26  ZCSPTC: CHANGED SEAS TO ESCROWED
HAZ 043009 ASB  ***FORCED ESCROW FOR INSURANCE ONLY***
                LOAN SUBMITTED FOR ANALYSIS
ANA 043009 ASB  ***FORCED ESCROW FOR INSURANCE ONLY***          ESCFIN
                LOAN SUBMITTED FOR ANALYSIS
HAZ 032809 D0K  351 NE RPT CLD BORR@714-343-2900,LEFT V/M MSG,SO
                N/A TAKEN.ZCS/DKESWANI
HAZ 032609 Z81  351, NE RPT CLD CARR# 800-835-7750 (HAZN) S/W
                JERMANE, POL CANCD EFFC 01/07/09, DUE TO NP,
                GAVE AGT#, CLD AGT# 626-574-1000, S/W ROBERT
                CONFIRMED THE SAME, SO NO UPDATE AS LP CYCLE
                STARTED, ZCS/ADUTTA
HAZ 032409 Z81  351, NE RPT CLD CARR# 800-835-7750 (HAZ1) CAL
                HOLD FOR MORE THAN 5 MINS, CLD AGT# 626-574-1
                000,(DOC AH02SJWB) FOUND# BUSY, ZCS/ADUTTA
HAZ 012309 38Z  351 HIGH VALUE RPT, PER DOC# AG036Q5B, POL CANCLD
                EFF 010709, CYCLED LOAN.
HAZ 123108 S31  351 FIREMANS FUND INS  DOC# AG036Q5B ID 121808
                RCVD CP HAZ1 UPDATED
HAZ 122908 Z04  RECVD CAN ON NZF02243463 DOCID AG036Q5B
HAZ 101508 Z05  351 #AH02SJWB UPDATED MORTGAGE CLAUSE FLAG TO Y
HAZ 101508 Z05  351 #AH02SJWB UPDATED INS LINE AS NON ESCROW
HAZ 101508 Z05  RECVD P ON NZF2243463 DOCID AH02SJWB
```

**EXHIBIT 5**
**PAGE 25**

Exhibit 6

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
**Power Default Services, Inc.**
**1525 South Beltline**
**Coppell, Texas 75019**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder



**15.00**

\* S R 0 0 0 4 7 3 0 1 3 4 $ \*

**2012000215868 04:30pm 04/16/12**
65 404 N15 3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

1146420

TS No.: 2012-00323    Loan No.: 0030995377

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$40,791.12** as of **4/13/2012**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
**American Home Mortgage Servicing, Inc.**
**C/O Power Default Services, Inc.**
**1525 South Beltline**
**Coppell, Texas 75019**
**Phone: (469) 645-3000**

EXHIBIT 6
PAGE 1

TS No.: **2012-00323**      Loan No.: **0030995377**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Power Default Services, Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **1/24/2006**, executed by **SAMUEL D. ELLSWORTH AND ROBIN ELLSWORTH, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR FIRST GUARANTY FINANCIAL CORPORATION**, as beneficiary, recorded **1/31/2006**, as Instrument No. 2006000071388, in Book , Page , of Official Records in the Office of the Recorder of **Orange** County, California describing land therein as: **As more fully described on said Deed of Trust. The subject Deed of Trust was modified by a Loan Modification effective 04/01/2009.**

Including one NOTE(S) **FOR THE ORIGINAL** sum of $1,500,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 12/1/2011 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Attempts to contact the borrower have been unsuccessful. A first-class letter was sent to the borrower that included a toll-free contact number for the beneficiary as well as the toll-free telephone number for the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. In addition, at least three attempts were made to contact the borrower by telephone, followed-up by a certified letter, return receipt requested.**

Dated: 4/13/2012

Power Default Services, Inc.

BY: _Jessica Drab_

Jessica Drab, Foreclosure Specialist

**EXHIBIT 6**
**PAGE 2**

<u>CALIFORNIA SB 1137 DECLARATION - NOTICE OF DEFAULT</u>- LOAN :0030995377          CASE:
                    PROPERTY: 1702 LA LOMA DR, LEMON HEIGHTS AREA CA 92705          BORROWER: SAMUEL D ELLSWORTH
                                                                                    ROBIN ELLSWORTH

## PLEASE COMPLETE AND EXECUTE ONLY <u>ONE</u> OF THE BELOW DECLARATION

### DECLARATION OF DUE DILIGENCE

DUE DILIGENCE DOCUMENTATION

DUE DILIGENCE COMPLETED

3 calls attempt made on : 01/17/2012(14:37)01/18/2012(11:09)01/19/2012(15:50)

no contact letter sent -02/07/2012 , 45 day collection letter sent :01/17/2012

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent has contacted the borrower, tried with due diligence to contact the borrower as required by CCC Section 2923.5.

Dated: 4/9/2012

By: Nurfeta Bektic

Nurfeh Bekhi          **Vice President**

Signature of Mortgagee, Beneficiary of Authorized Agent

(ONLY COMPLETE THE BELOW DECLARATION OF IF APPLICABLE)

### Declaration that Compliance with CCC Section 2923.5(b) is Not Required

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent was not required to comply with CCC Section 2923.5(b) because:

☐ Pursuant to California Civil Code § 2923.5(h)(1), the borrower has surrendered the property as evidence by a letter confirming the surrender or by delivering the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent of the mortgagee, trustee, or beneficiary.

☐ Pursuant to Civil Code § 2923.5(b) and (h)(2), the beneficiary or beneficiary's authorized agent has evidence in its file, and reasonably believes, that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to beneficiaries

☐ Pursuant to Civil Code § 2923.5(b) and (h)(3), the beneficiary or the beneficiary's authorized agent verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the proceedings have not finalized. "Finalized" is not defined by § 2923.5(h)(3). For purposes of this Code section, trustee, foreclosure agent and/or their authorized agent are defining the term as either: (1) an order entered on the court's docket closing the file by the court; or, (2) an order entered on the court's docket missing the bankruptcy case. If the beneficiary believes that the bankruptcy's agent interprets "finalized" in another manner please, state the basis upon which the beneficiary believes that the bankruptcy has not been "finalized":

Dated:

By:

Signature of Mortgagee, Beneficiary of Authorized Agent

EXHIBIT 6
PAGE 3

Exhibit 7

REPRESENTATION OF PRINTED DOCUMENT

003099537



**DO NOT MAIL PAYMENTS TO THIS ADDRESS**

P.O. Box 619063
Dallas, TX 75261-9063

AUGUST 23, 2010

3-764-51610-0030031-007-1-000-000-000-000
Samuel D Ellsworth
Robin Ellsworth
1702 LA Loma Dr
Santa Anna, CA 92705-

Re:  American Home Mortgage Servicing, Inc. Loan Number 0030995377
     Property Address: 1702 La Loma Dr
                       Lemon Heights Area CA 92705

Dear Samuel D Ellsworth and Robin Ellsworth :

Your immediate response is required. Your mortgage payment is now more than twenty days delinquent. Should the loan become 31 days delinquent, in accordance with applicable state and federal law, a Notice of Intent to Foreclose may be issued. Additionally, since your credit rating is based on the promptness of your payments, we are required by law to inform you that we may report information about your account to the credit bureaus.

If you have overlooked this month's payment, please remit the payment immediately along with the late charge. If you are experiencing financial difficulty based on the loss of employment or income, illness, or any other situation that is beyond your control, please contact us so that we can help at 877-304-3100 and one of our associates will assist you in discussing payment options. Our office hours are Monday through Friday, 7:00 am to 9:00 pm CST, and Saturday, 7:00 am to 4:00 pm CST, or you can obtain financial counseling through a HUD approved non-profit counseling agency by calling 800-569-4287.

To view our online payment options, please visit us at www.ahmsi3.com. Click on the "My Account" menu to make your payment online now.

Overnight Payment Address:
American Home Mortgage Servicing, Inc.
1525 South Beltline Road
Coppell, TX 75019

To wire your payment, visit www.moneygram.com. Please check with MoneyGram for exact fees. Your transaction will require you to include your loan number and the MoneyGram receive code of 4513.

CC021 086 CPI                                    Page 1 of 2

**EXHIBIT 7**
PAGE 1
INTERNET REPRINT

C25514                                                06/11/2010

REPRESENTATIVE PRINTED DOCUMENT

0030995377

Here are some of the possible solutions that we may be able to offer you.

1. Repayment Plan or Special Forbearance
   AHMSI may be able to arrange a plan based on your financial situation to spread out repayment of your past-due balance over an extended period of time.
2. Loan Modification
   It may be possible to modify your mortgage contract to incorporate all or a portion of your past-due amounts into the loan balance and possibly even reduce your monthly payment. This may be done by extending the loan term, lowering the interest rate or capitalizing past-due interest. However, this is a legal change to the terms of the loan and involves obtaining approval from the loan owner or investor.
3. Short Sale or Pre-Foreclosure Sale
   This will allow you to avoid foreclosure by selling your property, often times for less than the amount you owe on your mortgage. This may be less damaging to your credit than a foreclosure.
4. Deed-in-Lieu of Foreclosure
   As a last resort, you may be able to voluntarily "give back" your property to the lender. You won't be able to stay in your home, but it is not as damaging to your credit rating as a foreclosure. This option is only available if there are no other liens or judgments on the property.

In order to pursue the option that is best for you, please fill out the Financial Analysis form located online at www.ahmsi3.com under "Payment Help." Upon completion, send the Financial Analysis form, along with the required documents listed below to our dedicated fax 866-452-1837. Please be aware that filling out the financial analysis form and faxing the additional documentation does not guarantee that you will qualify for a workout option.

Required Documents:
Item 1: Hardship Letter (Please state in writing the situation that caused you to fall behind temporarily and if you are now in a position to make your payments on time.)
Item 2: Two current pay stubs
Item 3: Two current bank statements

These additional items are required if applying for a Short Sale or Pre-Foreclosure Sale
Item 4: Estimated HUD 1 or Estimated Net sheet
Item 5: Signed Purchase contract

Sincerely,

Contact Center
American Home Mortgage Servicing, Inc.

American Home Mortgage Servicing, Inc., is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.

CC021 086 CPI 0030995377                                     Page 2 of 2

EXHIBIT 7
PAGE 2
INTERNET REPRINT

REPRESENTATIVE PRINTED DOCUMENT

0030995377



**DO NOT MAIL PAYMENTS TO THIS ADDRESS**

P.O. Box 619063
Dallas, TX 75261-9063

SEPTEMBER 21, 2010

3-764-52395-0030450-007-1-000-000-000-000
Samuel D Ellsworth
Robin Ellsworth
1702 La Loma Dr
Santa Anna, CA 92705-

Re:  American Home Mortgage Servicing, Inc. Loan Number 0030995377
     Property Address: 1702 La Loma Dr
     Lemon Heights Area CA 92705

Dear Samuel D Ellsworth and Robin Ellsworth :

Your **immediate** response **is required**. Your mortgage payment is now **more** than twenty days delinquent. **Should** the loan become **31** days delinquent, in accordance with applicable state and federal law, a Notice of Intent to Foreclose may be issued. Additionally, since **your** credit rating is based **on** the promptness of your payments, we **are** required by law to inform you that we **may report** information about your account **to** the credit bureaus.

If you have overlooked this month's payment, **please remit** the payment immediately along **with** the **late** charge. If you **are** experiencing financial **difficulty** based **on** the loss **of** employment or income, **illness**, **or any** other situation that **is** beyond your control, please contact us **so that we** can help at 877-304-3100 and one of our **associates** will assist you **in** discussing **payment** options. **Our office hours are** Monday through Friday, 7:00 am to 9:00 pm CST, and Saturday, 7:00 am to 4:00 pm CST, or you can obtain **financial** counseling through **a** HUD **approved** non-profit counseling **agency** by calling 800-569-4287.

To view **our online** payment **options, please visit us at** www.ahmsi3.com. Click on the "My Account" menu to make your payment online now.

Overnight Payment Address:
American Home Mortgage Servicing, Inc.
1525 South Beltline Road
Coppell, TX 75019

To **wire** your **payment, visit** www.moneygram.com. **Please check with** MoneyGram for **exact fees. Your** transaction **will** require **you** to include your loan number and the MoneyGram receive code of 4513.

CC021 086 CPI                                    Page 1 of 2

**EXHIBIT 7**
**PAGE 3**

REPRESENTATIVE PRINTED DOCUMENT                0030995377

Here are some of the possible solutions that we may be able to offer you.

1. Repayment Plan or Special Forbearance
   AHMSI may be able to arrange a plan based on your financial
   situation to spread out repayment of your past-due balance over an
   extended period of time.
2. Loan Modification
   It may be possible to modify your mortgage contract to incorporate
   all or a portion of your past-due amounts into the loan balance and
   possibly even reduce your monthly payment. This may be done by
   extending the loan term, lowering the interest rate or capitalizing
   past-due interest. However, this is a legal change to the terms of
   the loan and involves obtaining approval from the loan owner or
   investor.
3. Short Sale or Pre-Foreclosure Sale
   This will allow you to avoid foreclosure by selling your property,
   often times for less than the amount you owe on your mortgage. This
   may be less damaging to your credit than a foreclosure.
4. Deed-in-Lieu of Foreclosure
   As a last resort, you may be able to voluntarily "give back" your
   property to the lender. You won't be able to stay in your home, but
   it is not as damaging to your credit rating as a foreclosure. This
   option is only available if there are no other liens or judgments on
   the property.

In order to pursue the option that is best for you, please fill out the
Financial Analysis form located online at www.ahmsi3.com under
"Payment Help." Upon completion, send the Financial Analysis form,
along with the required documents listed below to our dedicated fax
866-452-1837. Please be aware that filling out the financial analysis
form and faxing the additional documentation does not guarantee that you
will qualify for a workout option.

Required Documents:
Item 1: Hardship Letter (Please state in writing the situation that
        caused you to fall behind temporarily and if you are now in a
        position to make your payments on time.)
Item 2: Two current pay stubs
Item 3: Two current bank statements

These additional items are required if applying for a Short Sale or
Pre-Foreclosure Sale
Item 4: Estimated HUD 1 or Estimated Net sheet
Item 5: Signed Purchase contract

Sincerely,

Contact Center
American Home Mortgage Servicing, Inc.

American Home Mortgage Servicing, Inc., is a debt collector attempting
to collect a debt. Any information obtained will be used for that
purpose.⊠However, in the event the debt has been discharged pursuant
to or the addressee or recipient is under the protection of federal
bankruptcy law, this communication is solely for informational purposes
and is not an attempt to collect a debt.

CC021 086 CPI 0030995377                          Page 2 of 2

EXHIBIT 7
PAGE 4
INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

0030995377



**DO NOT MAIL PAYMENTS TO THIS ADDRESS**

P.O. Box 619063
Dallas, TX 75261-9063

DECEMBER 22, 2011

2-764-65896-0000700-001-1-000-000-000-000
Samuel D Ellsworth
Robin Ellsworth
1702 LA Loma Dr
Santa Anna, CA 92705-

American Home Mortgage Servicing, Inc Loan No. 0030995377
Property Address:   1702 La Loma Dr
                    Lemon Heights Area CA 92705

**IMPORTANT NOTICE REGARDING YOUR MORTGAGE LOAN**

Dear Samuel D Ellsworth and Robin Ellsworth :

We are in receipt of your recent payment in the amount of $7900.00.
We have applied these funds to your loan as the 10/01/11 mortgage
payment.  This payment did not represent the total amount due stated
in the 'Notice of Intent to Foreclose' issued on 12/13/11.
Therefore, your loan remains in default.

Though we have accepted a partial payment, the 'Notice of Intent to
Foreclose' issued on 12/13/11 is still valid and in effect until
we receive sufficient funds to bring your loan to a current status.
We do not waive our rights to initiate any default action deemed
necessary.  Per the terms of your Promissory Note and/or Security
Instrument including all Riders thereto, default action could include
the initiation of foreclosure proceedings.  Please refer to the
Notice of Intent to Foreclose' to determine the remaining amount due.
Payment should be remitted immediately.

Our business hours are Monday through Friday, 7:00 a.m. to 9:00 p.m.
CST and Saturday, 7:00 a.m. to 4:00 p.m. CST. If you have any
questions, please contact us at our toll free number, (877) 304-3100.

Page 1 of 2
OP961 089 S6N

**EXHIBIT 7**
**PAGE 5**

REPRESENTATIVE PRINTED DOCUMENT
0030995377

For your convenience, we offer the use of our interactive Self Service application, Western Union Speed Pay service, and also offer you the choice of a phone pay with one of our associates. Charges for either of these services are shown below.

    Western Union - Self Service

    0 - 16 days past due          $9.95
    17+ days past due             $12.95

    Western Union - AGENT

    Standard Fee                  $16.95

* Junior Lien (2nd mortgage) will incur an additional fee.
* Regardless of weekend and/or Holiday

Money Gram
Pay to: American Home Mortgage Servicing, Inc.
Receive Code Needed: 4513

Overnight Mail Address               Western Union Quick Collect
AHMSI                                Pay to: American Home Mortgage
1525 South Beltline Road             Servicing, Inc.
Coppell, TX 75019                    Code City: AHMSI
                                     Code State: TX

Sincerely,


Customer Care Department
American Home Mortgage Servicing, Inc.


Page 2 of 2

OP961 089 S6N 0030995377


**EXHIBIT 7**
**PAGE 6**

Exhibit 8.1

REPRESENTATIVE PRINTED DOCUMENT

0030995377



**DO NOT MAIL PAYMENTS TO
THIS ADDRESS**
P.O. Box 619063
Dallas, TX 75261-9063

NOVEMBER 22, 2010

5-764-54199-0026466-006-1-000-000-000-000
Samuel D Ellsworth
Robin Ellsworth
1702 LA Loma Dr
Santa Anna, CA 92705-

Re:  American Home Mortgage Servicing, Inc. Loan Number 0030995377
     Property Address: 1702 La Loma Dr
                       Lemon Heights Area CA 92705

Dear Samuel D Ellsworth and Robin Ellsworth :

Your immediate response is required. Your mortgage payment is now more
than twenty days delinquent. Should the loan become 31 days delinquent,
in accordance with applicable state and federal law, a Notice of Intent
to Foreclose may be issued. Additionally, since your credit rating is
based on the promptness of your payments, we are required by law to
inform you that we may report information about your account to the
credit bureaus.

If you have overlooked this month's payment, please remit the payment
immediately along with the late charge. If you are experiencing
financial difficulty based on the loss of employment or income, illness,
or any other situation that is beyond your control, please contact us so
that we can help at 877-304-3100 and one of our associates will assist
you in discussing payment options. Our office hours are Monday through
Friday, 7:00 am to 9:00 pm CST, and Saturday, 7:00 am to 4:00 pm CST, or
you can obtain financial counseling through a HUD approved non-profit
counseling agency by calling 800-569-4287.

To view our online payment options, please visit us at www.ahmsi3.com.
Click on the "My Account" menu to make your payment online now.

Overnight Payment Address:
American Home Mortgage Servicing, Inc.
1525 South Beltline Road
Coppell, TX 75019

To wire your payment, visit www.moneygram.com. Please check with
MoneyGram for exact fees. Your transaction will require you to include
your loan number and the MoneyGram receive code of 4513.

CC021 087 CPI                                    Page 1 of 2

**EXHIBIT 8.1**
**PAGE 1**
INTERNET REPRINT

C25514                                                        06/11/2010

REPRESENTATIVE PRINTED DOCUMENT

0030995377

Here are some of the possible solutions that we may be able to offer you.

1. Repayment Plan or Special Forbearance
   AHMSI may be able to arrange a plan based on your financial situation to spread out repayment of your past-due balance over an extended period of time.
2. Loan Modification
   It may be possible to modify your mortgage contract to incorporate all or a portion of your past-due amounts into the loan balance and possibly even reduce your monthly payment. This may be done by extending the loan term, lowering the interest rate or capitalizing past-due interest. However, this is a legal change to the terms of the loan and involves obtaining approval from the loan owner or investor.
3. Short Sale or Pre-Foreclosure Sale
   This will allow you to avoid foreclosure by selling your property, often times for less than the amount you owe on your mortgage. This may be less damaging to your credit than a foreclosure.
4. Deed-in-Lieu of Foreclosure
   As a last resort, you may be able to voluntarily "give back" your property to the lender. You won't be able to stay in your home, but it is not as damaging to your credit rating as a foreclosure. This option is only available if there are no other liens or judgments on the property.

In order to pursue the option that is best for you, please fill out the Financial Analysis form located online at www.ahmsi3.com under "Payment Help." Upon completion, send the Financial Analysis form, along with the required documents listed below to our dedicated fax 866-452-1837. Please be aware that filling out the financial analysis form and faxing the additional documentation does not guarantee that you will qualify for a workout option.

Required Documents:
Item 1: Hardship Letter (Please state in writing the situation that caused you to fall behind temporarily and if you are now in a position to make your payments on time.)
Item 2: Two current pay stubs
Item 3: Two current bank statements

These additional items are required if applying for a Short Sale or Pre-Foreclosure Sale
Item 4: Estimated HUD 1 or Estimated Net sheet
Item 5: Signed Purchase contract

Sincerely,

Contact Center
American Home Mortgage Servicing, Inc.

American Home Mortgage Servicing, Inc., is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.

CC021 087 CPI 0030995377                                        Page 2 of 2

EXHIBIT 8.1
PAGE 2
INTERNET REPRINT

Exhibit 8.2

REPRESENTATIVE PRINTED DOCUMENT

0030995377



**DO NOT MAIL PAYMENTS TO THIS ADDRESS**
P.O. Box 619063
Dallas, TX 75261-9063

DECEMBER 21, 2010

6-764-55010-0027528-006-1-000-000-000-000
Samuel D Ellsworth
Robin Ellsworth
1702 LA Loma Dr
Santa Anna, CA 92705-

Re:   American Home Mortgage Servicing, Inc. Loan Number 0030995377
      Property Address: 1702 La Loma Dr
                        Lemon Heights Area CA 92705

Dear Samuel D Ellsworth and Robin Ellsworth :

Your immediate response is required. Your mortgage payment is now more
than twenty days delinquent. Should the loan become 31 days delinquent,
in accordance with applicable state and federal law, a Notice of Intent
to Foreclose may be issued. Additionally, since your credit rating is
based on the promptness of your payments, we are required by law to
inform you that we may report information about your account to the
credit bureaus.

If you have overlooked this month's payment, please remit the payment
immediately along with the late charge. If you are experiencing
financial difficulty based on the loss of employment or income, illness,
or any other situation that is beyond your control, please contact us so
that we can help at 877-304-3100 and one of our associates will assist
you in discussing payment options. Our office hours are Monday through
Friday, 7:00 am to 9:00 pm CST, and Saturday, 7:00 am to 4:00 pm CST, or
you can obtain financial counseling through a HUD approved non-profit
counseling agency by calling 800-569-4287.

To view our online payment options, please visit us at www.ahmsi3.com.
Click on the "My Account" menu to make your payment online now.

Overnight Payment Address:
American Home Mortgage Servicing, Inc.
1525 South Beltline Road
Coppell, TX 75019

To wire your payment, visit www.moneygram.com. Please check with
MoneyGram for exact fees. Your transaction will require you to include
your loan number and the MoneyGram receive code of 4513.

CC021 087 CPI                                        Page 1 of 2

**EXHIBIT 8.2**
INTERNET REPRINT

C25514                                                          06/11/2010

REPRESENTATIVE PRINTED DOCUMENT
0030995377

Here are some of the possible solutions that we may be able to offer you.

1. Repayment Plan **or** Special Forbearance
   AHMSI may be **able** to arrange **a** plan based **on** your financial situation to spread out repayment of **your** past-due **balance** over an extended period **of** time.
2. Loan Modification
   **It** may be possible **to modify** your mortgage contract to incorporate **all** or **a** portion **of your** past-due amounts into the loan balance and possibly even **reduce** your monthly payment. **This** may be **done** by extending the loan term, lowering the interest **rate** or **capitalizing** past-due interest. **However,** this **is a** legal change to the terms of the **loan and involves** obtaining approval from the loan owner or investor.
3. Short Sale or **Pre-Foreclosure Sale**
   This will allow you to avoid **foreclosure by selling** your property, often times for less **than** the **amount you** owe **on** your **mortgage.** This **may** be **less** damaging to your **credit than a** foreclosure.
4. **Deed-in-Lieu of** Foreclosure
   **As a** last resort, you may be **able** to voluntarily "give back" your property to the lender. You **won't** be able to **stay in** your **home,** but it **is** not **as** damaging to your credit **rating as a** foreclosure. **This** option **is** only available if **there are no** other **liens or** judgments on the **property.**

In order **to** pursue **the** option that **is** best for **you,** please **fill** out the Financial Analysis **form** located **online** at www.**ahmsi3.com** under "Payment Help." Upon completion, send the Financial **Analysis** form, along with the required documents listed below **to** our dedicated **fax** 866-452-1837. Please be aware that filling out **the** financial analysis **form and** faxing **the** additional documentation does not **guarantee** that you **will qualify for a** workout **option.**

Required Document**s:**
Item 1: Hardship Letter (Please **state in** writing **the** situation that caused you to fall behind temporarily and if you are **now** in a position to make your **payments on** time.)
Item 2: Two **current** pay stubs
Item 3: Two current bank statements

These additional items are required if applying for a Short Sale or Pre-Foreclosure **Sale**
Item 4: Estimated HUD 1 or Estimated Net sheet
Item 5: Signed Purchase contract

Sincerely,

**Contact Center**
American Home Mortgage Servicing, Inc.

American Home Mortgage Servicing, Inc., **is a** debt **collector attempting** to collect **a** debt. Any information obtained **will** be used for **that** purpose. However, **in** the event the debt has **been** discharged pursuant to or the address**ee** or **recipient is** under the **protection** of federal bankruptcy **law,** this communication **is** solel**y** for informational **purposes** and is not an attempt to collect **a** debt.

CC021 087 CPI 0030995377                                    Page 2 of 2

---

**EXHIBIT 8.2**
**PAGE 2**
INTERNET REPRINT

Exhibit 9

REPRESENTATION OF PRINTED DOCUMENT

0030995377



**DO NOT MAIL PAYMENTS TO THIS ADDRESS**
P.O. Box 619063
Dallas, TX 75261-9063



NOVEMBER 15, 2011

7-764-64789-0001159-001-1-000-000-000-000
Samuel D Ellsworth
Robin Ellsworth
1702 LA Loma Dr
Santa Anna,CA 92705-

Re:  American Home Mortgage Servicing, Inc. Loan Number 0030995377

Dear Samuel D Ellsworth and Robin Ellsworth :

American Home Mortgage Servicing, Inc. (AHMSI) is very active in pursuing alternatives to foreclosure and has several options available. If you have experienced a financial hardship that is preventing you from making your regular monthly mortgage payment or is forcing you to sell your home, please call our Home Retention Contact Center. A member of our staff will assess your circumstances and explain the options that may be available to you.

Here are some of the possible solutions that we may be able to offer you. If you are interested in being considered for any of these options, please contact us immediately at (877) 304-3100.

A. Repayment Plan or Special Forbearance
   American Home Mortgage Servicing Inc. may be able to arrange a plan based on your financial situation to spread out the repayment of your past-due balance over an extended period of time.
B. Loan Modification
   You may be eligible for the Home Affordable Modification Program (HAMP), part of the initiative announced by President Obama to help homeowners. In order to establish your eligibility for HAMP, we will need to conduct an evaluation of your current situation through your submission of an Initial Package consisting of the following (all forms available at https://ahmsi3.com/servicing/forms.asp):

1. Request for Modification and Affidavit,
2. Dodd-Frank Certification Form
3. IRS Form 4506T-EZ or Form 4506-T, and
4. Documentation of income from all sources that may be used to pay your loan, which may include:
   a. Two most recent paystubs for all employed borrowers showing year-to-date earnings;
   b. Most recent audited or unaudited quarterly or year-to-date profit and loss statements for all self-employed borrowers;
   c. Documentation to substantiate the use of alimony or child support, such as a divorce decree, separation agreement, legal written agreement, or court order documenting continuance for at least three years, and evidence of receipt of income such as deposit advices, two most recent bank statements, or verification from court, state agency, or disinterested third party;
   d. Documentation to substantiate the use of social security, disability, pension, or death benefits, such as a disability policy, benefits statement, or letter from provider documenting amount, frequency, and continuance for at least three years,

FN045 067 CPI                                           Page 1 of 2

**EXHIBIT 9**
INTERNET REPRINT
**PAGE 1**

REPRESENTATION OF PRINTED DOCUMENT                    0030995377

and evidence of receipt of income, such as a letter or benefits statement from the benefits agency indicating that the payments have been made, copies of two most recent bank statements, or deposit advices;

e. Documentation to substantiate the use of rental income, including a copy of a signed, most recent, federal income tax return with Schedule E (If Schedule E is not available because the property was not previously rented, a current lease agreement with bank statements or cancelled rent checks may be substituted. If the rental income is from a property other than your principal residence, you must provide documentation of property taxes, hazard insurance and association fees,);

f. Documentation to substantiate other earned income (e.g., bonuses, commissions, fees, housing allowances, tips, overtime, etc.), such as an employment contract or employer printout of income. If this other earned income is shown through year-to-date earnings on paystub and describes the nature of the income, additional documentation is not required.

If you are not interested in participating or are ineligible for HAMP you may be eligible for a Non-HAMP modification. In order to be evaluated for a Non-HAMP modification you must submit

1. Affidavit of Financial Hardship - This is a written and signed explanation of the financial hardship(s) that has reduced your income or increased your expenses; thereby impacting your ability to pay your mortgage as agreed.
2. Documentation of income from all sources that may be used to pay your loan (examples listed above).

C. Other Options
We also have other options available if you do not feel that you can afford to stay in your home. AHMSI participates in the Home Affordable Foreclosure Alternatives (HAFA) Program as well as a Non-HAFA short-sale and deed-in-lieu programs. A short-sale and/or deed-in-lieu of foreclosure can help you exit your property gracefully and may have a lesser negative impact on your credit than a foreclosure.

Should you have any further questions or concerns, please contact us at (877) 304-3100. Our office hours are Monday through Friday, 7:00 a.m.to 9:00 p.m. CT and Saturday, 7:00 a.m. to 4:00 p.m. CT, or you can obtain financial counseling through a HUD approved non-profit counseling agency by calling (800) 569-4287.

Sincerely,

American Home Mortgage Servicing, Inc.

American Home Mortgage Servicing, Inc. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.

FN045 067 CPI 0030995377                                    Page 2 of 2

EXHIBIT 9
INTERNET REPRINT
PAGE 25

Exhibit 10

American Home Mortgage Servicing Inc.
PO Box 9092
Temecula, CA 92589-9092

Send Payments to:
American Home Mortgage Servicing Inc
P.O. Box 660029
Dallas, TX 75266-0029

Send Correspondence to:
American Home Mortgage Servicing Inc.
P.O. Box 632237
Irving, TX 75063-2237

7196 9006 9295 7223 1884

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

20120119-156

SAMUEL D ELLSWORTH
ROBIN ELLSWORTH
1702 LA LOMA DR
SANTA ANA, CA 92705-3027



OP001_CA

**EXHIBIT 10**
**PAGE 1**



P.O. Box 631730
Irving, TX 75063-1730

www.ahmsi3.com

01/19/2012

Sent Via Certified Mail
7196 9006 9295 7223 1884

SAMUEL D ELLSWORTH
ROBIN ELLSWORTH
1702 LA LOMA DR
SANTA ANA, CA 92705-3027

Loan Number:         0030995377
Property Address:    1702  LA LOMA DR
                     LEMON HEIGHTS AREA, CA  92705

Dear SAMUEL D ELLSWORTH and ROBIN ELLSWORTH:

You are hereby provided formal notice by American Home Mortgage Servicing, Inc., the Servicer of the above-referenced loan, on behalf of Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3, the Creditor to whom the debt is owed, that you are in default under the terms and conditions of the Note and Security Instrument (i.e. Deed of Trust, Mortgage, etc.), for failure to pay the required installments when due.

This letter serves as further notice that American Home Mortgage Servicing, Inc. intends to enforce the provisions of the Note and Security Instrument. You must pay the full amount of the default on this loan by the thirty-fifth (35th) day from the date of this letter which is 02/23/2012 (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). If you do not pay the full amount of the default, we shall accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property.

You are hereby informed that you have the right to "cure" or reinstate the loan after acceleration and the right to assert in a foreclosure proceeding, or to bring a court action to assert, the non-existence of a default or any other defense you may have to acceleration and sale. In the event you pay the amount set forth above in a timely fashion, but said payment is returned for insufficient funds or for any other reason, your default will not be cured. American Home Mortgage Servicing, Inc. reserves the right to accept or reject a partial payment of the total amount due without waiving its right to proceed with foreclosure.

As of 01/19/2012 the amount of the debt that we are seeking to collect is $16,048.92, which includes the sum of payments that have come due on and after the date of default 12/01/2011, any late charges, periodic adjustments to the payment amount (if applicable) and expenses of collection. In addition, any subsequent advances made by the Servicer to protect its lien position must be added to the total amount necessary to cure the default. Because of interest, late charges, and other charges or credits that may vary from day to day, or be assessed during the processing of this letter, the amount due on the day that you pay may be greater. Please contact American Home Mortgage Servicing, Inc. at (877) 304-3100 on the day that you intend to pay for the full amount owed on your account. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current delinquency.

Please note, however, that your right to cure this default as referenced herein does not suspend your payment obligations.



OP001_CA
Page 1 of 3

**EXHIBIT 10**
**PAGE 2**

7196 9006 9295 7223 1884

Pursuant to the terms of the Note, your **02/01/2012** installment is still due on **02/01/2012** (or if said date(s) falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter). Please disregard this notice if a payment sufficient to cure the default has already been sent.

**American Home Mortgage Servicing, Inc. is attempting to collect a debt, and any information obtained will be used for that purpose. Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.**

**Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.**

A "CURE" or "Reinstatement Right" similar to that described in the prior paragraph may be available in many states. If, at any time, you make a written request not to be contacted by phone at your place of employment, we will not do so. If, at any time, you make a written request to us not to contact you, we will not do so, except to send statutorily and/or contractually required legal notice. The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8:00 a.m. or after 9:00 p.m. They may not harass you by using threats of violence or arrest or by using obscene language.

Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at (877) FTC-HELP or www.ftc.gov.

American Home Mortgage Servicing, Inc. would like you to be aware that if you are unable to make payments or resume payments within a reasonable period of time due to a reduction in your income resulting from a loss or reduction in your employment, you may be eligible for Homeownership Counseling. To obtain a list of HUD approved counseling agencies, please call (800) 569-4287 or by visiting http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You may also contact the Homeownership Preservation Foundation's Hope hotline at (888) 995-HOPE (4673).

**Attention Servicemembers and dependents:** The Federal Servicemembers' Civil Relief Act ("SCRA") and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently on active duty in the military service, or have been within the last nine (9) months, please notify American Home Mortgage Servicing, Inc. immediately.  When contacting American Home Mortgage Servicing, Inc. as to your active duty status, please provide positive proof as to your active duty status, i.e. a copy of your active duty orders. This information is also applicable to you if you are considered a "dependent", as defined by the "SCRA", of a servicemember who is currently on active duty in the military service, or has been within the last nine (9) months. If you do not provide this information, it will be assumed that you are not entitled to protection under the above-mentioned Act.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. American Home Mortgage Servicing, Inc. requests that all payments be sent overnight to 1525 S. Beltline Rd. Coppell, TX 75019 or mailed to P.O. Box 660029 Dallas, TX 75266-0029. You may also send payments via Western Union: Code City-AHMSI Code State - TX. You may contact American Home Mortgage Servicing, Inc. at (877) 304-3100 should you have servicing questions regarding your account or by mail at P.O. Box 632237, Irving, TX 75063-2237. You may have options available to you to help you avoid foreclosure. Please contact

**EXHIBIT 10**
**PAGE 3**

7196 9006 9295 7223 1884

American Home Mortgage Servicing, Inc.'s Loss Mitigation Department at (877) 304-3100 or by visiting www.ahmsi3.com for additional information and to see what options are available to you.

The matters discussed herein are of extreme importance. We trust you will give them appropriate attention.

Sincerely,

American Home Mortgage Servicing, Inc.
P.O. Box 632237
Irving, TX 75063-2237
Phone: (877) 304-.3100

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only. Additionally, if you did not sign the Note or are not otherwise personally obligated to pay this debt, this letter is being sent for informational purposes.**

OP001_CA
Page 3 of 3

**EXHIBIT 10**
**PAGE 4**

7196 9006 9295 7223 1884

Exhibit 11

Homeward Residential > Home Retention > Possible Solutions





**Home   My Account   Payment**   Home Retention   **Support Center   Insurance Service   Investors   About Us   Contact Us   Site Map**

## Possible Solutions



If you're past due or facing foreclosure, Homeward Residential's Home Retention Team may be able to work out a way for you to catch up or minimize the damage to your credit. They determine eligibility on a case-by-case basis and may be able to arrange one of the following loan solutions.

You can contact the Home Retention Team at 877 304 3100 or you can also log in to your online account and go to Payment Help. You'll find the necessary forms there to help you through this process.

You may want to consider getting advice from a housing counselor approved by the U.S. Department of Housing and Urban Development. For a listing of HUD-approved housing counseling agencies, call 800 569 4287 toll free, or access www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm

Here are some of the possible solutions that we may be able to offer you. Fax your information to 866 452 1837

**Making Home Affordable**
Homeward Residential, Inc. (Homeward) participates in the government sponsored Home Affordable Modification Program (HAMP), the Home Affordable Refinance Program (HARP), the Home Affordable Foreclosure Alternatives (HAFA) and the Home Affordable Unemployment Program (HAUP). Click here for more information

**Repayment Plan or Special Forbearance**
Homeward may be able to arrange a plan based on your financial situation to spread out repayment of your past-due balance over an extended period of time

**Loan Modification**
It may be possible to modify your mortgage contract to incorporate your past-due amounts and sometimes even reduce your monthly payment. This may be done by extending the loan term, lowering the interest rate or capitalizing past-due interest. However, this is a legal change to the terms of the loan and involves obtaining approval from the loan owner or investor

### Pre-Qualifying Factors

- Customer must have a source of Income
- Income must be stable.
  No Temporary Source of Income
  No Unemployment or Temporary Social Security
  Pensions are allowed as long as they are permanent
- Property and Mortgage must belong to person(s) applying for the Loan Modification
- All liable parties must be willing to sign the Modification Documents

   **\*\*Note** - A Processing Fee may apply, if applicable

### Items Required For Loan Modification Review

- Completion of Financial Analysis Form
- A letter detailing the circumstances surrounding your current financial situation (Hardship Letter)
- Copy of 2 most recent bank statements
- Copy of 2 most recent pay-stubs
  **\*\*Note** - Please provide 6 months of profit and loss statements if self-employed
- Previous year's Tax Return or W2

**Mortgage Insurance Claim**
Homeward may be able to work with you to obtain a one-time loan from the mortgage insurance fund to bring your mortgage current. Then the borrower would have to pay back this loan to the insurance company over time

**Short Sale or Pre-Foreclosure Sale**
This will allow you to avoid foreclosure by selling your property for less than the amount you owe on your mortgage. This may be less damaging to your credit than a foreclosure

### Pre-Qualifying Factors

- There is a formal written offer on the Property
- The offer for the property is equal or less than the amount to payoff in full
- Jr Liens (i.e. 2nd mortgages) must be willing to have an open line of communication with customer on possible negotiation efforts
- The customer must be willing to allow Homeward to evaluate the property's interior to gain a proper value for the workout
  **\*\*Note** - The customer may provide their own appraisal if available
- Preferred that the property has been listed for sale on the market

### Items Required For Short Sale Review

**EXHIBIT 11**
**PAGE 1**

Homeward Residential > Home Retention > Possible Solutions

- Completion of Financial Analysis Form
- Signed Purchase Contract by Seller and Buyer
- Estimated HUD1 or Net Sheet
- Pre-Approval letter for buyer, with no contingencies
  **Note** - For cash purchases proof of available funds
- Listing Agreement
- A letter detailing the circumstances surrounding your current financial situation (Hardship Letter)
- Copy of 2 most recent bank statements
- Copy of 2 most recent pay-stubs
  **Note** - Please provide 6 months of profit and loss statements if self-employed
- Previous year's Tax Return or W2
- Letter of authorization for third parties, if applicable

**Deed-In-Lieu of Foreclosure**

As a last resort, you may be able to voluntarily "give back" your property to the lender. You won't be able to stay in your home, but it is not as damaging to your credit rating as a foreclosure. This option is only available if there are no other liens or judgments on the property.

### Pre-Qualifying Factors

- No liens or judgments (i.e. 2nd mortgages)
  **(Small liens** or judgments that may be negotiated to accept less may still qualify for a DIL.)
- Upon approval, property must be vacant and "open house clean" or "broom swept clean".
- The customer must be willing to allow Homeward to evaluate the property's interior to gain a proper value for the workout
  **Note** - The customer may provide their own appraisal if available
- Preferred that the property has been listed prior and during the DIL process, but not required

### Items Required For Deed-In-Lieu Review

- Completion of Financial Analysis Form
- A letter detailing the circumstances surrounding your current financial situation (Hardship Letter)
- Copy of 2 most recent bank statements
- Copy of 2 most recent pay-stubs
  **Note** - Please provide 6 months of profit and loss statements if self-employed
- Previous year's Tax Return or W2

**State Assistance Programs**

The Hardest Hit Fund program provides targeted aid to homeowners in states hit hardest by the housing downturn. The assistance is provided through your state housing agency and comes in the form of reinstatement funds, monthly payment assistance or a one-time payment to complete a short sale or deed-in-lieu of foreclosure. Homeward is a participating servicer in all 19 state Hardest Hit Fund programs. To determine if your state participates in this program and if you qualify for assistance, please contact your state housing agency. The contact information can be found on your Homeward monthly billing statement.

Privacy Notice

© 2013 Homeward Residential, Inc. All rights reserved. NMLS ID # 3984.

The trademarks Homeward<sup>SM</sup>, Homeward Residential<sup>SM</sup> and the Homeward logos are trademarks of Homeward Residential, Inc.

# Exhibit 12

```
                    HOMEWARD RESIDENTIAL, INC.
                    1525 SOUTH BELT LINE ROAD
                       COPPELL, TX 75019

                  TELEPHONE NO.:  1-877-304-3100

                CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
REQ BY NRM                                                   PAGE    1


SAMUEL D ELLSWORTH
ROBIN ELLSWORTH
1702 LA LOMA DR
SANTA ANNA         CA 92705


LOAN NUMBER: 0030995377
*****************************************************************************
---------------------- CURRENT ACCOUNT INFORMATION ----------------------
   DATE       TOTAL       PRINCIPAL      LOAN        CURRENT
 PAYMENT     PAYMENT      & INTEREST   INTEREST     PRINCIPAL
   DUE       AMOUNT        PAYMENT       RATE        BALANCE        ESCROW
                                                                   BALANCE
12-01-11    7,676.86      6,023.45     2.00000    1387,997.89    21,686.58-
  2ND MORTGAGE:                        0.00   0.00000    131,128.64
*****************************************************************************

              ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS   DUE   TRANSACTION         TRANSACTION              EFFECTIVE DATE
 DATE    DATE   CODE                DESCRIPTION              OF TRANSACTION
-----------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/       ESCROW PAID/ -----------OTHER------------
    AMOUNT       BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
-----------------------------------------------------------------------------
02-27-13  12-11  161  ESCROW ADVANCE
     6,801.32       0.00       0.00   6801.32
02-27-13  03-13  312  COUNTY TAX DISBURSEMENT
     6,801.32-      0.00       0.00   6801.32-
                                     21686.58-  NEW PRINCIPAL/ESCROW BALANCES
02-27-13  00-00  632  STATUTORY EXPENSES
     1,529.00       0.00       0.00    0.00
02-27-13  00-00  632  STATUTORY EXPENSES
       460.00       0.00       0.00    0.00
02-27-13  00-00  632  STATUTORY EXPENSES
        15.00       0.00       0.00    0.00
02-27-13  00-00  632  STATUTORY EXPENSES
       125.00       0.00       0.00    0.00
02-27-13  00-00  632  STATUTORY EXPENSES
       806.00       0.00       0.00    0.00
02-27-13  00-00  632  STATUTORY EXPENSES
        21.00       0.00       0.00    0.00
02-27-13  00-00  632  STATUTORY EXPENSES
        18.00       0.00       0.00    0.00
02-27-13  00-00  632  STATUTORY EXPENSES
        15.00       0.00       0.00    0.00
02-27-13  00-00  630  ATTORNEY ADVANCES
       765.00       0.00       0.00    0.00
```

EXHIBIT 12
PAGE 1

```
                        HOMEWARD RESIDENTIAL, INC.
                        1525 SOUTH BELT LINE ROAD
                          COPPELL, TX 75019

                    TELEPHONE NO.:  1-877-304-3100

                 CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
REQ BY NRM                                                    PAGE   2


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

                    ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS    DUE    TRANSACTION              TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE                     DESCRIPTION              OF TRANSACTION
-------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/           ESCROW PAID/ -----------OTHER------------
    AMOUNT       BALANCE    INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
02-27-13  00-00  630  ATTORNEY ADVANCES
      35.00        0.00       0.00      0.00
02-13-13  00-00  633  MISC. F/C AND B/R EXPENSES
       5.76        0.00       0.00      0.00
02-07-13  00-00  633  MISC. F/C AND B/R EXPENSES
      10.00        0.00       0.00      0.00
01-18-13  00-00  633  MISC. F/C AND B/R EXPENSES
   3,263.36        0.00       0.00      0.00
01-08-13  12-11  161  ESCROW ADVANCE
   3,637.43        0.00       0.00   3637.43
01-08-13  01-13  351  HAZARD INSURANCE DISBURSEMENT (PRIMARY POLICY)
   3,637.43-       0.00       0.00   3637.43-
                                    14885.26-  NEW PRINCIPAL/ESCROW BALANCES
01-04-13  00-00  633  MISC. F/C AND B/R EXPENSES
      10.00        0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00-       0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
   3,445.00-       0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00        0.00       0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00-       0.00       0.00      0.00
```

EXHIBIT 12
PAGE 2

```
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
        85.00-       0.00      0.00      0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
        85.00-       0.00      0.00      0.00
```

**EXHIBIT 12**
**PAGE 3**

HOMEWARD RESIDENTIAL, INC.
1525 SOUTH BELT LINE ROAD
COPPELL, TX 75019

TELEPHONE NO.:  1-877-304-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 02/28/13
PAGE   3

REQ BY NRM

SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

ACTIVITY FOR PERIOD 01/01/01 - 02/27/13

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | CODE/DESCRIPTION |

```
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
   3,445.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00        0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      10.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
       9.60-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
     110.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      10.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      10.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
       9.60-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
     110.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00     0.00     0.00
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00     0.00     0.00
```

EXHIBIT 12
PAGE 4

```
                    HOMEWARD RESIDENTIAL, INC.
                    1525 SOUTH BELT LINE ROAD
                       COPPELL, TX 75019

                  TELEPHONE NO.:  1-877-304-3100

              CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
REQ BY NRM                                                 PAGE    4


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

                 ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS    DUE     TRANSACTION           TRANSACTION              EFFECTIVE DATE
DATE       DATE    CODE                  DESCRIPTION              OF TRANSACTION
-------------------------------------------------------------------------------
   TRANSACTION  PRIN. PAID/        ESCROW PAID/ -----------OTHER------------
     AMOUNT      BALANCE    INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
01-04-13  00-00  745  CORP. ADVANCE ADJUSTMENT
      10.00-       0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00-       0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
   3,445.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00-       0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      10.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
       9.60        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
     110.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      85.00        0.00      0.00      0.00
12-28-12  00-00  745  CORP. ADVANCE ADJUSTMENT
      10.00        0.00      0.00      0.00
12-07-12  00-00  633  MISC. F/C AND B/R EXPENSES
```

EXHIBIT 12
PAGE 5

```
    7,017.90          0.00          0.00          0.00
12-05-12  00-00   633   MISC. F/C AND B/R EXPENSES
         10.00          0.00          0.00          0.00
```

.

**EXHIBIT 12**
**PAGE 6**

.

```
                        HOMEWARD RESIDENTIAL, INC.
                        1525 SOUTH BELT LINE ROAD
                           COPPELL, TX 75019

                     TELEPHONE NO.:  1-877-304-3100

                 CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
REQ BY NRM                                                    PAGE   5


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377


                     ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS    DUE     TRANSACTION          TRANSACTION              EFFECTIVE DATE
DATE       DATE    CODE                 DESCRIPTION              OF TRANSACTION
------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/          ESCROW PAID/ ------------OTHER------------
    AMOUNT     BALANCE    INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
------------------------------------------------------------------------------
11-26-12  12-11  161  ESCROW ADVANCE
     6,801.32        0.00      0.00   6801.32
11-26-12  11-12  312  COUNTY TAX DISBURSEMENT
     6,801.32-       0.00      0.00   6801.32-
                                     11247.83-  NEW PRINCIPAL/ESCROW BALANCES
11-02-12  00-00  633  MISC. F/C AND B/R EXPENSES
     4,672.55        0.00      0.00      0.00
11-01-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
10-05-12  00-00  633  MISC. F/C AND B/R EXPENSES
     3,445.00        0.00      0.00      0.00
10-02-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
09-05-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
08-03-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
07-25-12  00-00  633  MISC. F/C AND B/R EXPENSES
        85.00        0.00      0.00      0.00
07-25-12  00-00  633  MISC. F/C AND B/R EXPENSES
       110.00        0.00      0.00      0.00
07-09-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
06-05-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
05-11-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
04-03-12  00-00  633  MISC. F/C AND B/R EXPENSES
        10.00        0.00      0.00      0.00
03-16-12  12-11  152  LATE CHARGE ASSESSMENT
         0.00        0.00      0.00      0.00     301.17-1 LATE CHARGES   FEE 1
03-07-12  12-11  161  ESCROW ADVANCE
     4,446.51        0.00      0.00   4446.51
03-07-12  03-12  312  COUNTY TAX DISBURSEMENT
     6,986.81-       0.00      0.00   6986.81-
                                      4446.51-  NEW PRINCIPAL/ESCROW BALANCES
```

EXHIBIT 12
PAGE 7

```
                         HOMEWARD RESIDENTIAL, INC.
                         1525 SOUTH BELT LINE ROAD
                             COPPELL, TX 75019

                       TELEPHONE NO.:  1-877-304-3100

                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
REQ BY NRM                                                       PAGE   6


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

                    ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS    DUE     TRANSACTION          TRANSACTION            EFFECTIVE DATE
DATE       DATE    CODE                 DESCRIPTION            OF TRANSACTION
-----------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/        ESCROW PAID/ ------------OTHER------------
    AMOUNT      BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------
03-06-12  00-00  633  MISC. F/C AND B/R EXPENSES
      10.00        0.00      0.00      0.00
02-16-12  12-11  152  LATE CHARGE ASSESSMENT
       0.00        0.00      0.00      0.00     301.17-1 LATE CHARGES   FEE 1
02-14-12  00-00  633  MISC. F/C AND B/R EXPENSES
      85.00        0.00      0.00      0.00
02-02-12  00-00  633  MISC. F/C AND B/R EXPENSES
      10.00        0.00      0.00      0.00
02-02-12  00-00  633  MISC. F/C AND B/R EXPENSES
     110.00        0.00      0.00      0.00
01-26-12  00-00  633  MISC. F/C AND B/R EXPENSES
       1.01        0.00      0.00      0.00
01-26-12  00-00  633  MISC. F/C AND B/R EXPENSES
       5.15        0.00      0.00      0.00
01-14-12  11-11  172  PAYMENT
       0.00        0.00      0.00      0.00
01-14-12  11-11  172  PAYMENT
    7,800.00    3,703.95  2,319.50  1653.41    123.14
             1,519,126.53             2540.30  NEW PRINCIPAL/ESCROW BALANCES
01-12-12  01-12  351  HAZARD INSURANCE DISBURSEMENT (PRIMARY POLICY)
    3,292.39-      0.00      0.00   3292.39-
                                     886.89   NEW PRINCIPAL/ESCROW BALANCES
01-03-12  00-00  633  MISC. F/C AND B/R EXPENSES
      10.00        0.00      0.00      0.00
12-20-11  10-11  172  PAYMENT
       0.00        0.00      0.00      0.00
12-20-11  10-11  172  PAYMENT                                      12-19-11
    7,900.00    3,697.78  2,325.67  1653.41    223.14
             1,522,830.48             4179.28  NEW PRINCIPAL/ESCROW BALANCES
12-19-11  00-00  633  MISC. F/C AND B/R EXPENSES
       5.77        0.00      0.00      0.00
12-19-11  00-00  633  MISC. F/C AND B/R EXPENSES
       1.01        0.00      0.00      0.00
```

**EXHIBIT 12**
**PAGE 8**

```
12-16-11  10-11  152  LATE CHARGE ASSESSMENT
       0.00          0.00         0.00       0.00      301.17-1 LATE CHARGES    FEE 1
11-17-11  00-00  633  MISC. F/C AND B/R EXPENSES
       6.17          0.00         0.00       0.00
```

**EXHIBIT 12**
**PAGE 9**

```
                        HOMEWARD RESIDENTIAL, INC.
                        1525 SOUTH BELT LINE ROAD
                           COPPELL, TX 75019

                      TELEPHONE NO.:  1-877-304-3100

                CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
                                                             PAGE   7
REQ BY NRM


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

                   ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS   DUE    TRANSACTION           TRANSACTION              EFFECTIVE DATE
 DATE    DATE    CODE                  DESCRIPTION              OF TRANSACTION
-------------------------------------------------------------------------------
 TRANSACTION  PRIN. PAID/      ESCROW PAID/  -----------OTHER-------------
  AMOUNT       BALANCE    INTEREST   BALANCE  AMOUNT   CODE/DESCRIPTION
-------------------------------------------------------------------------------
11-11-11 09-11 172  PAYMENT
         0.00       0.00      0.00      0.00
11-11-11 09-11 172  PAYMENT
     7,676.86  3,691.63  2,331.82  1653.41
              1,526,528.26              2525.87   NEW PRINCIPAL/ESCROW BALANCES
11-08-11 11-11 312  COUNTY TAX DISBURSEMENT
     6,986.81-      0.00      0.00  6986.81-
                                     872.46   NEW PRINCIPAL/ESCROW BALANCES
10-20-11 00-00 633  MISC. F/C AND B/R EXPENSES
         5.15       0.00      0.00      0.00
10-20-11 00-00 633  MISC. F/C AND B/R EXPENSES
         1.63       0.00      0.00      0.00
10-18-11 08-11 172  PAYMENT
         0.00       0.00      0.00      0.00
10-18-11 08-11 172  PAYMENT
     7,676.86  3,685.49  2,337.96  1653.41
              1,530,219.89              7859.27   NEW PRINCIPAL/ESCROW BALANCES
10-17-11 08-11 152  LATE CHARGE ASSESSMENT
         0.00       0.00      0.00      0.00    301.17-1 LATE CHARGES    FEE 1
09-14-11 07-11 173  PAYMENT
         0.00       0.00      0.00      0.00
09-14-11 07-11 173  PAYMENT                                      09-13-11
         0.00  3,679.36  2,344.09  1653.41  7,676.86-
              1,533,905.38              6205.86   NEW PRINCIPAL/ESCROW BALANCES
09-13-11 07-11 172  PAYMENT
     5,000.00       0.00      0.00      0.00  5,000.00
09-13-11 07-11 172  PAYMENT
     2,676.86       0.00      0.00      0.00  2,676.86
09-13-11 00-00 633  MISC. F/C AND B/R EXPENSES
         5.25       0.00      0.00      0.00
09-13-11 00-00 633  MISC. F/C AND B/R EXPENSES
         1.04       0.00      0.00      0.00
09-01-11 07-11 148  RETURN CHECK
         0.00  3,679.36- 2,344.09- 1653.41-  301.17-
              1,537,584.74              4552.45   NEW PRINCIPAL/ESCROW BALANCES
09-01-11 08-11 147  ADJUSTMENT
         0.00       0.00      0.00      0.00    602.34-1 LATE CHARGES    FEE 1
                                               602.34
```

EXHIBIT 12
PAGE 10

```
                        HOMEWARD RESIDENTIAL, INC.
                        1525 SOUTH BELT LINE ROAD
                          COPPELL, TX 75019

                    TELEPHONE NO.: 1-877-304-3100

               CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
REQ BY NRM                                                  PAGE    8


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

                  ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS   DUE    TRANSACTION          TRANSACTION            EFFECTIVE DATE
DATE      DATE   CODE                 DESCRIPTION            OF TRANSACTION
-------------------------------------------------------------------------
 TRANSACTION  PRIN. PAID/      ESCROW PAID/ ------------OTHER------------
   AMOUNT       BALANCE  INTEREST   BALANCE  AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------
08-26-11  08-11  170  PREDISTRIBUTED PAYMENT
        0.00         0.00       0.00     0.00      602.34 1 LATE CHARGES   FEE 1
                                                  602.34-
08-25-11  07-11  172  PAYMENT
        0.00         0.00       0.00     0.00
08-25-11  07-11  172  PAYMENT
     7,978.03     3,679.36   2,344.09  1653.41     301.17
                 1,533,905.38          6205.86   NEW PRINCIPAL/ESCROW BALANCES
08-10-11  06-11  172  PAYMENT
        0.00         0.00       0.00     0.00
08-10-11  06-11  172  PAYMENT
     7,978.03     3,673.23   2,350.22  1653.41     301.17
                 1,537,584.74          4552.45   NEW PRINCIPAL/ESCROW BALANCES
08-04-11  06-11  148  RETURN CHECK
        0.00     3,673.23-  2,350.22- 1653.41-    301.17-
                 1,541,257.97          2899.04   NEW PRINCIPAL/ESCROW BALANCES
07-31-11  06-11  172  PAYMENT
        0.00         0.00       0.00     0.00
07-31-11  06-11  172  PAYMENT
     7,978.03     3,673.23   2,350.22  1653.41     301.17
                 1,537,584.74          4552.45   NEW PRINCIPAL/ESCROW BALANCES
07-25-11  00-00  633  MISC. F/C AND B/R EXPENSES
       20.65         0.00       0.00     0.00
07-18-11  06-11  152  LATE CHARGE ASSESSMENT
        0.00         0.00       0.00     0.00      301.17-1 LATE CHARGES   FEE 1
06-24-11  05-11  172  PAYMENT
        0.00         0.00       0.00     0.00
06-24-11  05-11  172  PAYMENT
     7,279.58     3,667.12   2,356.33  1256.13
                 1,541,257.97          2899.04   NEW PRINCIPAL/ESCROW BALANCES
06-02-11  04-11  172  PAYMENT
        0.00         0.00       0.00     0.00
06-02-11  04-11  172  PAYMENT
```

EXHIBIT 12
PAGE 11

```
    7,279.58      3,661.02    2,362.43    1256.13
              1,544,925.09                1642.91    NEW PRINCIPAL/ESCROW BALANCES
05-31-11  00-00  633  MISC. F/C AND B/R EXPENSES
        20.65          0.00        0.00      0.00
```

EXHIBIT 12
PAGE 12

```
                        HOMEWARD RESIDENTIAL, INC.
                        1525 SOUTH BELT LINE ROAD
                             COPPELL, TX 75019

                       TELEPHONE NO.:  1-877-304-3100

                    CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 02/28/13
REQ BY NRM                                                         PAGE   9


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

                    ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS   DUE      TRANSACTION             TRANSACTION              EFFECTIVE DATE
 DATE     DATE     CODE                    DESCRIPTION              OF TRANSACTION
------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/       ESCROW PAID/ ------------OTHER-------------
   AMOUNT        BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
------------------------------------------------------------------------------
05-16-11  04-11  152  LATE CHARGE ASSESSMENT
          0.00        0.00     0.00      0.00     301.17-1 LATE CHARGES    FEE 1
04-28-11  04-11  170  PREDISTRIBUTED PAYMENT
          0.00        0.00     0.00      0.00     301.17 1 LATE CHARGES    FEE 1
                                                 301.17-
04-27-11  03-11  172  PAYMENT
          0.00        0.00     0.00      0.00
04-27-11  03-11  168  REPAY OF ESCROW ADVANCE
          0.00        0.00     0.00    869.35-   869.35
04-27-11  03-11  172  PAYMENT
       7,580.75    3,654.93 2,368.52  1256.13    301.17
               1,548,586.11             386.78   NEW PRINCIPAL/ESCROW BALANCES
04-21-11  00-00  633  MISC. F/C AND B/R EXPENSES
         20.65
04-18-11  03-11  152  LATE CHARGE ASSESSMENT
          0.00        0.00     0.00      0.00     301.17-1 LATE CHARGES    FEE 1
03-16-11  03-11  170  PREDISTRIBUTED PAYMENT
          0.00        0.00     0.00      0.00     301.17 1 LATE CHARGES    FEE 1
                                                 301.17-
03-15-11  02-11  172  PAYMENT
          0.00        0.00     0.00      0.00
03-15-11  02-11  168  REPAY OF ESCROW ADVANCE
          0.00        0.00     0.00   1256.13-   1,256.13
03-15-11  02-11  172  PAYMENT
       7,580.75    3,648.85 2,374.60  1256.13    301.17
               1,552,241.04             869.35-  NEW PRINCIPAL/ESCROW BALANCES
03-09-11  02-11  161  ESCROW ADVANCE
       2,125.48       0.00     0.00   2125.48
03-09-11  03-11  312  COUNTY TAX DISBURSEMENT
       6,997.22-      0.00     0.00   6997.22
                                      2125.48-   NEW PRINCIPAL/ESCROW BALANCES
02-16-11  02-11  152  LATE CHARGE ASSESSMENT
          0.00        0.00     0.00      0.00     301.17-1 LATE CHARGES    FEE 1
01-18-11  01-11  173  PAYMENT
          0.00        0.00     0.00      0.00
01-18-11  01-11  173  PAYMENT                                      01-17-11
          0.00    3,642.78 2,380.67  1256.13     7,279.58-
               1,555,889.89            4871.74   NEW PRINCIPAL/ESCROW BALANCES
```

**EXHIBIT 12**
**PAGE 13**

```
                        HOMEWARD RESIDENTIAL, INC.
                        1525 SOUTH BELT LINE ROAD
                            COPPELL, TX 75019

                      TELEPHONE NO.:  1-877-304-3100

                  CUSTOMER ACCOUNT ACTIVITY STATEMENT            DATE 02/28/13
REQ BY NRM                                                       PAGE  10


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377


                   ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS     DUE     TRANSACTION              TRANSACTION              EFFECTIVE DATE
DATE        DATE    CODE                     DESCRIPTION              OF TRANSACTION
-----------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/          ESCROW PAID/ ------------OTHER-------------
    AMOUNT      BALANCE    INTEREST   BALANCE    AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------------
01-17-11  12-10  172  PAYMENT
          0.00        0.00      0.00      0.00
01-17-11  12-10  172  PAYMENT
    13,433.21    3,636.71   2,386.74  1256.13   6,153.63
               1,559,532.67            3615.61   NEW PRINCIPAL/ESCROW BALANCES
01-07-11  01-11  351  HAZARD INSURANCE DISBURSEMENT (PRIMARY POLICY)
     3,204.62-       0.00      0.00  3204.62-
                                     2359.48   NEW PRINCIPAL/ESCROW BALANCES
12-15-10  11-10  172  PAYMENT
          0.00        0.00      0.00      0.00
12-15-10  11-10  172  PAYMENT
     7,580.75    3,630.66   2,392.79  1256.13    301.17
               1,563,169.38            5564.10   NEW PRINCIPAL/ESCROW BALANCES
11-16-10  10-10  172  PAYMENT
          0.00        0.00      0.00      0.00
11-16-10  10-10  172  PAYMENT
     7,279.58    3,624.62   2,398.83  1256.13
               1,566,800.04            4307.97   NEW PRINCIPAL/ESCROW BALANCES
11-11-10  11-10  312  COUNTY TAX DISBURSEMENT
     6,997.22-       0.00      0.00  6997.22-
                                     3051.84   NEW PRINCIPAL/ESCROW BALANCES
10-15-10  09-10  172  PAYMENT
          0.00        0.00      0.00      0.00
10-15-10  09-10  172  PAYMENT
     7,580.75    3,618.59   2,404.86  1256.13    301.17
               1,570,424.66           10049.06   NEW PRINCIPAL/ESCROW BALANCES
09-24-10  09-10  170  PREDISTRIBUTED PAYMENT                              09-23-10
          0.00        0.00      0.00      0.00    20.00 *
                                                 20.00-
09-24-10  00-00  745  CORP. ADVANCE ADJUSTMENT
         20.00-       0.00      0.00      0.00
09-23-10  00-00  633  MISC. F/C AND B/R EXPENSES
         20.00        0.00      0.00      0.00
```

**EXHIBIT 12**
**PAGE 14**

```
09-22-10  09-10  173  PAYMENT
        0.00         0.00      0.00      0.00      301.17 1 LATE CHARGES   FEE 1
                                                  301.17-
```

**EXHIBIT 12**
**PAGE 15**

```
                    HOMEWARD RESIDENTIAL, INC.
                    1525 SOUTH BELT LINE ROAD
                       COPPELL, TX 75019

                 TELEPHONE NO.: 1-877-304-3100

              CUSTOMER ACCOUNT ACTIVITY STATEMENT         DATE 02/28/13
REQ BY NRM                                                PAGE  11


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377


                ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS    DUE   TRANSACTION          TRANSACTION                  EFFECTIVE DATE
DATE       DATE  CODE                 DESCRIPTION                  OF TRANSACTION
-------------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/      ESCROW PAID/ -----------OTHER------------
    AMOUNT       BALANCE    INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
-------------------------------------------------------------------------------
09-21-10  08-10  172  PAYMENT
       0.00         0.00       0.00       0.00
09-21-10  08-10  172  PAYMENT
    7,279.58    3,612.57    2,410.88    1256.13
             1,574,043.25              8792.93   NEW PRINCIPAL/ESCROW BALANCES
09-16-10  08-10  152  LATE CHARGE ASSESSMENT
       0.00         0.00       0.00       0.00   301.17-1 LATE CHARGES   FEE 1
09-09-10  00-00  633  MISC. F/C AND B/R EXPENSES
      85.00         0.00       0.00       0.00
08-23-10  08-10  173  PAYMENT
       0.00         0.00       0.00       0.00   301.17 1 LATE CHARGES   FEE 1
                                                 301.17-
08-23-10  08-10  170  PREDISTRIBUTED PAYMENT                          08-20-10
       0.00         0.00       0.00       0.00   120.00 *
                                                 120.00-
08-23-10  00-00  745  CORP. ADVANCE ADJUSTMENT
     120.00-        0.00       0.00       0.00
08-20-10  07-10  172  PAYMENT
       0.00         0.00       0.00       0.00
08-20-10  07-10  172  PAYMENT
    7,279.58    3,606.56    2,416.89    1256.13
             1,577,655.82              7536.80   NEW PRINCIPAL/ESCROW BALANCES
08-19-10  00-00  633  MISC. F/C AND B/R EXPENSES
      20.00         0.00       0.00       0.00
08-16-10  07-10  152  LATE CHARGE ASSESSMENT
       0.00         0.00       0.00       0.00   301.17-1 LATE CHARGES   FEE 1
08-06-10  00-00  633  MISC. F/C AND B/R EXPENSES
     100.00         0.00       0.00       0.00
08-04-10  07-10  147  ADJUSTMENT
       0.00         0.00       0.00     730.53-    730.53
                                       6280.67   NEW PRINCIPAL/ESCROW BALANCES
07-22-10  01-11  351  HAZARD INSURANCE DISBURSEMENT (PRIMARY POLICY)
    1,563.35-       0.00       0.00    1563.35-
                                       7011.20   NEW PRINCIPAL/ESCROW BALANCES
07-19-10  01-11  351  HAZARD INSURANCE DISBURSEMENT (PRIMARY POLICY)
    1,530.25-       0.00       0.00    1530.25-
                                       8574.55   NEW PRINCIPAL/ESCROW BALANCES
```

**EXHIBIT 12**
**PAGE 16**

```
                      HOMEWARD RESIDENTIAL, INC.
                      1525 SOUTH BELT LINE ROAD
                         COPPELL, TX 75019

                   TELEPHONE NO.:  1-877-304-3100

                CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 02/28/13
REQ BY NRM                                                   PAGE  12


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377


                   ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS    DUE    TRANSACTION          TRANSACTION              EFFECTIVE DATE
DATE       DATE   CODE                 DESCRIPTION              OF TRANSACTION
-----------------------------------------------------------------------------
  TRANSACTION  PRIN. PAID/         ESCROW PAID/ ------------OTHER------------
    AMOUNT       BALANCE   INTEREST   BALANCE  AMOUNT  CODE/DESCRIPTION
-----------------------------------------------------------------------------
07-19-10  07-10  173  PAYMENT
          0.00         0.00      0.00     0.00      25.00 2 NSF CHARGES    FEE 2
                                                   25.00-
07-19-10  07-10  173  PAYMENT
          0.00         0.00      0.00     0.00     602.34 1 LATE CHARGES   FEE 1
                                                  602.34-
07-19-10  07-10  170  PREDISTRIBUTED PAYMENT                            07-16-10
          0.00         0.00      0.00     0.00     160.00 *
                                                  160.00-
07-19-10  00-00  745  CORP. ADVANCE ADJUSTMENT
        160.00-        0.00      0.00     0.00
07-16-10  06-10  172  PAYMENT
          0.00         0.00      0.00     0.00
07-16-10  06-10  172  PAYMENT
      7,580.75     3,600.56  2,422.89  1256.13     301.17
                  1,581,262.38          10104.80  NEW PRINCIPAL/ESCROW BALANCES
07-09-10  05-10  172  PAYMENT
          0.00         0.00      0.00     0.00
07-09-10  05-10  172  PAYMENT
      8,000.00     3,594.57  2,428.88  1256.13     720.42
                  1,584,862.94           8848.67  NEW PRINCIPAL/ESCROW BALANCES
06-29-10  00-00  633  MISC. F/C AND B/R EXPENSES
         20.00         0.00      0.00     0.00
06-23-10  05-10  148  RETURN CHECK
          0.00     3,594.57- 2,428.88- 1380.52-    301.17-
                  1,588,457.51           7592.54  NEW PRINCIPAL/ESCROW BALANCES
06-23-10  06-10  147  ADJUSTMENT
          0.00         0.00      0.00     0.00     602.34-1 LATE CHARGES   FEE 1
                                                  602.34
06-18-10  06-10  170  PREDISTRIBUTED PAYMENT
          0.00         0.00      0.00     0.00     602.34 1 LATE CHARGES   FEE 1
                                                  602.34-
06-17-10  05-10  172  PAYMENT
```

EXHIBIT 12
PAGE 17

```
        0.00        0.00        0.00        0.00
06-17-10   05-10   172   PAYMENT
    7,705.14     3,594.57    2,428.88    1380.52       301.17
           1,584,862.94                  8973.06    NEW PRINCIPAL/ESCROW BALANCES
```

EXHIBIT 12

PAGE 18

```
                        HOMEWARD RESIDENTIAL, INC.
                        1525 SOUTH BELT LINE ROAD
                            COPPELL, TX 75019

                      TELEPHONE NO.:  1-877-304-3100

                    CUSTOMER ACCOUNT ACTIVITY STATEMENT        DATE 02/28/13
REQ BY NRM                                                     PAGE  13


SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377


                    ACTIVITY FOR PERIOD 01/01/01 - 02/27/13
PROCESS    DUE    TRANSACTION                                   EFFECTIVE DATE
 DATE      DATE   CODE           DESCRIPTION                    OF TRANSACTION
------------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/        ESCROW PAID/ -----------OTHER------------
   AMOUNT        BALANCE    INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
------------------------------------------------------------------------------
06-02-10  04-10  172  PAYMENT
       0.00        0.00       0.00      0.00
06-02-10  04-10  172  PAYMENT
    7,705.14    3,588.59   2,434.86   1380.52     301.17
             1,588,457.51                        7592.54   NEW PRINCIPAL/ESCROW BALANCES
06-02-10  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00-        0.00       0.00      0.00
06-02-10  00-00  745  CORP. ADVANCE ADJUSTMENT
      20.00         0.00       0.00      0.00
05-25-10  00-00  633  MISC. F/C AND B/R EXPENSES
      20.00         0.00       0.00      0.00
05-17-10  04-10  152  LATE CHARGE ASSESSMENT
       0.00         0.00       0.00      0.00      301.17-1 LATE CHARGES    FEE 1
04-29-10  03-10  172  PAYMENT
       0.00         0.00       0.00      0.00
04-29-10  03-10  172  PAYMENT
    7,403.97    3,582.62   2,440.83   1380.52
             1,592,046.10                        6212.02   NEW PRINCIPAL/ESCROW BALANCES
04-28-10  00-00  633  MISC. F/C AND B/R EXPENSES
     100.00         0.00       0.00      0.00
04-21-10  00-00  633  MISC. F/C AND B/R EXPENSES
      20.00         0.00       0.00      0.00
04-16-10  03-10  152  LATE CHARGE ASSESSMENT
       0.00         0.00       0.00      0.00      301.17-1 LATE CHARGES    FEE 1
04-08-10  00-00  633  MISC. F/C AND B/R EXPENSES
      85.00         0.00       0.00      0.00
04-07-10  00-00  713  MISC. EXPENSE REPAYMENT
      85.00         0.00       0.00      0.00
04-07-10  00-00  713  MISC. EXPENSE REPAYMENT
      85.00         0.00       0.00      0.00
04-02-10  00-00  633  MISC. F/C AND B/R EXPENSES
      85.00         0.00       0.00      0.00
04-02-10  00-00  633  MISC. F/C AND B/R EXPENSES
      85.00         0.00       0.00      0.00
03-26-10  03-10  312  COUNTY TAX DISBURSEMENT
    5,989.99-       0.00       0.00   5989.99-
                                      4831.50   NEW PRINCIPAL/ESCROW BALANCES
```

EXHIBIT 12
PAGE 19

HOMEWARD RESIDENTIAL, INC.
1525 SOUTH BELT LINE ROAD
COPPELL, TX 75019

TELEPHONE NO.: 1-877-304-3100

CUSTOMER ACCOUNT ACTIVITY STATEMENT

DATE 02/28/13
PAGE  14

REQ BY NRM

SAMUEL D ELLSWORTH
LOAN NUMBER: 0030995377

ACTIVITY FOR PERIOD 01/01/01 - 02/27/13

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | ----------OTHER------------ CODE/DESCRIPTION |
|---|---|---|---|---|---|
| 03-09-10 03-10 170 PREDISTRIBUTED PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 299.12 | 1 LATE CHARGES    FEE 1 |
| | | | | 299.12- | |
| 03-08-10 02-10 172 PAYMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | | |
| 03-08-10 02-10 172 PAYMENT | | | | | |
| 7,703.08 | 3,576.65 | 2,446.80 | 1380.51 | 299.12 | |
| | 1,595,628.72 | | 10821.49 | | NEW PRINCIPAL/ESCROW BALANCES |
| 02-16-10 02-10 152 LATE CHARGE ASSESSMENT | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 299.12- | 1 LATE CHARGES    FEE 1 |

EXHIBIT 12
PAGE 20