Rachel Dollar, SBN 199977
Sherrill A. Oates, SBN 213763
SMITH DOLLAR PC
Attorneys at Law
404 Mendocino Avenue, Second Floor
Santa Rosa, California 95401
Telephone:  (707) 522-1100
Facsimile:  (707) 522-1101

Attorneys for Defendants  Homeward Residential, Inc. formerly known as American
Home Mortgage Servicing, Inc. and Power Default Services, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL D. ELLSWORTH and ROBIN ELLSWORTH, <br><br>     Plaintiffs, <br><br> v. <br><br> AMERICAN HOME MORTGAGE SERVICING, INC., a business entity form unknown and POWER DEFAULT SERVICES, INC.,  a business entity form unknown and DOES 1-100, inclusive <br><br>     Defendants. | CASE NO: SACV12-1499 AG (MLGX) <br><br> REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT <br><br> Date:  June 3, 2013 <br> Time:  10:00 a.m. <br> Dept:  10D <br><br> Judge:  Honorable Andrew J. Guilford <br><br> Complaint Filed:  August 2, 2012 <br> Trial Date:        N/A |

Pursuant to Federal Rules of Evidence section 201, Defendants Homeward Residential, Inc. formerly known as American Home Mortgage Servicing, Inc. and Power Default Services, Inc. ("Defendants") respectfully request that the Court take judicial notice of the following documents, true and correct copies of which have been included for the convenience of the Court in support of their Motion for Summary Judgment:

/ / / / /

- 1 -

| Ex. No | Date | Document | Authority |
|---|---|---|---|
| 1. | January 31, 2006 | Deed of Trust recorded in the Orange County Recorder's Office as Instrument No. 2006000071388 | *Fed.R.Evid.§ 201* |
| 2. | April 16, 2012 | Notice of Default recorded in the Orange County Recorder's Office as Instrument No. 2012000215868. | *Id.* |
| 3. | August 2, 2012 | Complaint of Samuel Ellsworth and Robin Ellsworth against American Home Mortgage Servicing, et al. filed in Orange County Superior Court as case no. 30-2012-0058834 | *Id.* |
| 4. | September 7, 2012 | Defendants' removal of the Action to this Court. | *Id.* |
| 5. | September 14, 2012 | Defendants' answer to the Complaint | *Id.* |

Dated:  April 11, 2013

SMITH DOLLAR PC

/s/ Sherrill A. Oates

By _____
Sherrill A. Oates
Attorneys for Defendants Homeward Residential, Inc. formerly known as American Home Mortgage Servicing, Inc. and Power Default Services, Inc.

Exhibit 1

RECORDING REQUESTED BY:
LandAmerica Commonwealth Title

**This Document was electronically recorded by Common Wealth**

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||| 69.00
2006000071388 04:30pm 01/31/06
227 92 D11 22
0.00 0.00 0.00 0.00 63.00 0.00 0.00 0.00

Recording Requested By:
FIRST GUARANTY FINANCIAL
CORPORATION

And After Recording Return To:
FIRST GUARANTY FINANCIAL CORPORATION
3 HUTTON CENTRE, STE#150
SANTA ANA, CALIFORNIA 92707
Loan Number: 00628856

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

MIN: 1000157-0006302080-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 24, 2006 , together with all Riders to this document.
(B) "Borrower" is SAMUEL D. ELLSWORTH AND ROBIN ELLSWORTH, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is FIRST GUARANTY FINANCIAL CORPORATION

Lender is a CALIFORNIA CORPORATION                                        organized
and existing under the laws of CALIFORNIA
Lender's address is 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707

(D) "Trustee" is LAND AMERICA COMMONWEALTH
28 EXECUTIVE PARK, STE 300, IRVINE, CALIFORNIA 92614

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JANUARY 24, 2006
The Note states that Borrower owes Lender ONE MILLION FIVE HUNDRED THOUSAND AND 00/100                    Dollars (U.S. $ 1,500,000.00 ) plus interest.

Borrower Initials: _____  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                          Page 1 of 14
DocMagic eForms 800-649-1362
www.docmagic.com

Ca30051.mzd.1.tem

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
FEBRUARY 1, 2036 .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Other(s) [specify]
☐ 1-4 Family Rider     ☐ Biweekly Payment Rider

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the
              COUNTY    of           ORANGE         :
             [Type of Recording Jurisdiction]               [Name of Recording Jurisdiction]

Borrower Initials: _____ _____ _____ _____ _____ _____

Ca30052.mzd.2.tem

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 502-181-19

which currently has the address of   1702 LA LOMA DRIVE

[Street]

LEMON HEIGHTS (AREA)                  , California   92705        ("Property Address"):
[City]                                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Borrower Initials: _____   _____   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS         *DocMagic eFormss* 800-649-1362
Form 3005 01/01                              Page 3 of 14                                 www.docmagic.com

Ca30053.mzd.3.tem

Loan Number: 00628856

Date: JANUARY 24, 2006

Property Address: 1702 LA LOMA DRIVE, LEMON HEIGHTS (AREA), CALIFORNIA 92705

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 502-181-19

DocMagic eForms 800-649-1362
www.docmagic.com

Legal15.msc

 Exhibit A

All that certain real property situated in the County of Orange, State of California, described as follows:

PARCEL 1:

THAT PORTION OF BLOCK 14 OF IRVINE' S SUBDIVISION, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON MAP RECORDED IN BOOK 1, PAGE 88 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF LOT 349, IN BLOCK 14 OF SAID IRVINE'S SUBDIVISION, AND RUNNING THENCE NORTH 40 DEGREES EAST 1320 FEET; THENCE SOUTH 50 DEGREES EAST 1320 FEET; THENCE SOUTH 40 DEGREES WEST 931.84 FEET; THENCE NORTH 20 DEGREES 29' WEST 193.09 FEET TO THE TRUE POINT OF BEGINNING OF THE BOUNDARY OF LAND DESCRIBED HEREIN; THENCE NORTH 55 DEGREES 55' EAST 169.38 FEET; THENCE NORTH 18 DEGREES 16' WEST 73.82 FEET; THENCE NORTH 27 DEGREES 56' WEST 98.14 FEET TO THE MOST EASTERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO JOHN C. BLYSTONE AND OTHERS, RECORDED AUGUST 19, 1949 IN BOOK 1891, PAGE 184 OF OFFICIAL RECORDS; THENCE SOUTH 55 DEGREES 16' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LAND CONVEYED TO BLYSTONE, 182.72 FEET TO THE MOST NORTHERLY CORNER OF THE PARCEL OF LAND DESCRIBED IN PARCEL 1 OF THE DEED TO EMMET C. ROGERS AND WIFE, RECORDED DECEMBER 31, 1959 IN BOOK 5038, PAGE 588 OF OFFICIAL RECORDS; THENCE ALONG THE NORTHEASTERLY LINE OF SAID LAND, SOUTH 21 DEGREES 07' 40" EAST 170.88 FEET TO THE MOST EASTERLY CORNER OF SAID LAND; THENCE NORTH 55 DEGREES 55' EAST 21.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 2:

AN EASEMENT FOR ROAD AND PUBLIC UTILITY PURPOSES ALONG A STRIP OF LAND 40 FEET IN WIDTH, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE NORTHEASTERLY LINE OF SAID LAND CONVEYED TO BLYSTONE BY DEED RECORDED IN BOOK 1319, PAGE 510 OF OFFICIAL RECORDS, DISTANT THEREON SOUTH 50 DEGREES 04' 30" EAST 646.63 FEET FROM THE MOST NORTHERLY CORNER THEREOF AND RUNNING THENCE SOUTH 10 DEGREES 58' 30" WEST 192.36 FEET; THENCE SOUTH 39 DEGREES 58' 30" WEST 241.31 FEET; THENCE SOUTH 9 DEGREES 04' 45" EAST 167.16 FEET; THENCE SOUTH 34 DEGREES 20' EAST 112 FEET; THENCE SOUTH 26 DEGREES 07' 30" EAST 44.95 FEET; EXCEPTING FROM SAID LAST MENTIONED COURSE THE NORTHEASTERLY 20 FEET THEREOF.

PARCEL 3:

AN EASEMENT FOR SEWER PURPOSES OVER A STRIP OF LAND 10.00 FEET IN WIDTH THE NORTHWESTERLY LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE TRUE POINT OF BEGINNING OF PARCEL 1 ABOVE DESCRIBED; THENCE SOUTH 55 DEGREES 55' 00" WEST 10.00 FEET, SAID POINT BEING THE TRUE POINT OF BEGINNING OF SAID NORTHWESTERLY LINE; THENCE CONTINUING SOUTH 55 DEGREES 55' 00" WEST 11.00 FEET; THENCE SOUTH 39 DEGREES 15'45" WEST 96.57 FEET.

legal rev. (010698)

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Borrower Initials: _____   _____   _____   _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                        Page 4 of 14                          *DocMagic eForms* 800-649-1362
                                                                                                      www.docmagic.com

Ca30054.mzd.4.tem

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____ _____ _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 5 of 14                    DocMagic *eForms* 800-649-1362
                                                                                   www.docmagic.com

Ca30055.mzd.5.tem

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Borrower Initials: _____ _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                          Page 6 of 14
DocMagic eForms 800-649-1362
www.docmagic.com

Ca30056.mzd.6.tem

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

Borrower Initials: _____ _____ _____ _____ _____

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower  Initials: _____  _____  _____  _____  _____

Ca3005B.mzd 8.tem

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

Borrower Initials: _____   _____   _____   _____   _____

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

Borrower Initials: _____ _____ _____

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

Borrower Initials: _____  _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 11 of 14                    DocMagic *eForms* 800-649-1362
                                                                         www.docmagic.com

Ca30051l.mzd.11.tem

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Borrower Initials: _____  _____  _____  _____  _____  _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SAMUEL D. ELLSWORTH          -Borrower

_____ (Seal)
ROBIN ELLSWORTH             -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

Witness:                                    Witness:

_____          _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 13 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

State of California )
) ss.
County of ORANGE )

On Jan. 24, 2006 before me, D.K. Baumgartner, Notary Public

personally appeared  SAMUEL D. ELLSWORTH, ROBIN ELLSWORTH

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

D. K. BAUMGARTNER
Commission # 1471898
Notary Public - California
Riverside County
My Comm. Expires Mar 4, 2008

NOTARY SEAL

_____
NOTARY SIGNATURE

D. K. Baumgartner
(Typed Name of Notary)

GOVERNMENT CODE 27361.7

I certify under penalty that the Notary Seal on the document to which this statement is attached read as follows:

NAME OF THE NOTARY:  D. K. Baumgartner

DATE COMMISSION EXPIRES:  March 4, 2008

COUNTY WHERE BOND IS FILED:  Riverside

COMMISSION NUMBER: 1471898                VENDOR NUMBER:  NNA1

I certify under penalty of perjury and the laws of the State of California that the illegible portion of this document to which this statement is attached reads as follows:

PLACE OF EXECUTION Irvine                    DATE  1/26/06

SIGNATURE

*personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

MIN: 1000157-0006302080-0                    Loan Number: 00628856
Doc ID#:

## ADJUSTABLE RATE RIDER

**(MTA-Twelve Month Average Index - Payment Caps)**

THIS ADJUSTABLE RATE RIDER is made this    24th    day of JANUARY
2006           , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST GUARANTY FINANCIAL CORPORATION, A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and
located at:

1702 LA LOMA DRIVE, LEMON HEIGHTS (AREA), CALIFORNIA 92705
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
**(A)   Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I
will pay interest at a yearly rate of    1.500 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note.

**(B)   Interest Rate Change Dates**
The interest rate I will pay may change on the    1st    day of MARCH
2006           , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

Borrower Initials:

**PayOption MTA ARM Rider**
**FE-5315 (0511)**                        Page 1 of 5

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 725/1000        percentage point(s)    2.725 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950  %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the    1st        day of each month beginning on MARCH 1, 2006     .  I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3 HUTTON CENTRE, STE#150, SANTA ANA, CALIFORNIA 92707

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 5,176.80        unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the    1st day of MARCH, 2007        , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

Borrower Initials: _____  _____  _____  _____  _____  _____

**PayOption MTA ARM Rider**

**FE-5315 (0511)**                                   Page 2 of 5

Us531322.cw

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D)  Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

### (E)  Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to  my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

### (F)  Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to ONE  HUNDRED FIFTEEN  AND  000/1000 percent ( 115.000 %)of  the  Principal  amount  I  originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

### (G)  Required Full Payment

On the    5th      Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**PayOption MTA ARM Rider**
FE-5315 (0511)                                              Page 3 of 5

Borrower Initials:

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Borrower Initials: _____  _____  _____  _____  _____

PayOption MTA ARM Rider

FE-5315 (0511)                              Page 4 of 5

Us531544.cw

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____   -Borrower
SAMUEL D. ELLSWORTH

_____   -Borrower
ROBIN ELLSWORTH

_____   -Borrower

_____   -Borrower

PayOption MTA ARM Rider
**FE-5315 (0511)**                    Page 5 of 5

Us531555 cw

Exhibit 2

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
**Power Default Services, Inc.**
**1525 South Beltline**
**Coppell, Texas 75019**



Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

**15.00**

★ S R 0 0 0 4 7 3 0 1 3 4 S ★

**2012000215868 04:30pm 04/16/12**

65 404 N15 3
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

1146420

TS No.: **2012-00323**    Loan No.: **0030995377**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$40,791.12** as of **4/13/2012**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
**American Home Mortgage Servicing, Inc.**
**C/O Power Default Services, Inc.**
**1525 South Beltline**
**Coppell, Texas 75019**
**Phone: (469) 645-3000**

TS No.: **2012-00323**        Loan No.: **0030995377**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Power Default Services, Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 1/24/2006, executed by **SAMUEL D. ELLSWORTH AND ROBIN ELLSWORTH, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., AS NOMINEE FOR FIRST GUARANTY FINANCIAL CORPORATION**, as beneficiary, recorded **1/31/2006**, as Instrument No. 2006000071388, in Book , Page , of Official Records in the Office of the Recorder of **Orange** County, California describing land therein as: **As more fully described on said Deed of Trust. The subject Deed of Trust was modified by a Loan Modification effective 04/01/2009.**

Including one NOTE(S) **FOR THE ORIGINAL** sum of $1,500,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 12/1/2011 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Attempts to contact the borrower have been unsuccessful. A first-class letter was sent to the borrower that included a toll-free contact number for the beneficiary as well as the toll-free telephone number for the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. In addition, at least three attempts were made to contact the borrower by telephone, followed-up by a certified letter, return receipt requested.**

Dated: 4/13/2012

Power Default Services, Inc.

BY: _Jessica Drab_

Jessica  Drab, Foreclosure Specialist

<u>CALIFORNIA SB 1137 DECLARATION - NOTICE OF DEFAULT- LOAN :0030995377</u>          CASE:
          PROPERTY: 1702 LA LOMA DR, LEMON HEIGHTS AREA CA 92705          BORROWER: SAMUEL D ELLSWORTH
                                                                                                 ROBIN ELLSWORTH

### PLEASE COMPLETE AND EXECUTE ONLY <u>ONE</u> OF THE BELOW DECLARATION

#### DECLARATION OF DUE DILIGENCE

DUE DILIGENCE DOCUMENTATION

**DUE DILIGENCE COMPLETED**

3 calls attempt made on : 01/17/2012(14:37)01/18/2012(11:09)01/19/2012(15:50)

no contact letter sent -02/07/2012 , 45 day collection letter sent :01/17/2012

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent has contacted the borrower, tried with due diligence to contact the borrower as required by CCC Section 2923.5.

Dated: _4 / 9 / 2012_____

By: Nurfeta Bektic

*Wurfeh Bethi*          **Vice President**

Signature of Mortgagee, Beneficiary of Authorized Agent

(ONLY COMPLETE THE BELOW DECLARATION OF IF APPLICABLE)

#### Declaration that Compliance with CCC Section 2923.5(b) is Not Required

This statement is to certify that the below signed mortgagee, beneficiary or authorized agent was not required to comply with CCC Section 2923.5(b) because:

☐ Pursuant to California Civil Code § 2923.5(h)(1), the borrower has surrendered the property as evidence by a letter confirming the surrender or by delivering the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent of the mortgagee, trustee, or beneficiary.

☐ Pursuant to Civil Code § 2923.5(b) and (h)(2), the beneficiary or beneficiary's authorized agent has evidence in its file, and reasonably believes, that the borrower has contacted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to beneficiaries

☐ Pursuant to Civil Code § 2923.5(b) and (h)(3), the beneficiary or the beneficiary's authorized agent verified information that, on or before the date of this declaration, the borrower(s) has filed for bankruptcy, and the proceedings have not finalized. "Finalized" is not defined by § 2923.5(h)(3). For purposes of this Code section, trustee, foreclosure agent and/or their authorized agent are defining the term as either: (1) an order entered on the court's docket closing the file by the court; or, (2) an order entered on the court's docket missing the bankruptcy case. If the beneficiary believes that the bankruptcy agent interprets "finalized" in another manner please, state the basis upon which the beneficiary believes that the bankruptcy has not been "finalized":

Dated: _____

By: _____

_____
Signature of Mortgagee, Beneficiary of Authorized Agent

Exhibit 3

1  Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
   **THE LAW OFFICES OF JOSEPH R. MANNING, JR.**
2  **A PROFESSIONAL CORPORATION**
   4667 MacArthur Blvd., Suite 150
3  Newport Beach, CA 92660
   PH: (949) 200-8755
4  FX: (866) 843-8308

5  Attorneys for Plaintiffs SAMUEL D. ELLSWORTH and ROBIN ELLSWORTH

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9              COUNTY OF ORANGE- CENTRAL JUSTICE CENTER

10                                          **30-2012**

11  SAMUEL D. ELLSWORTH and         CASE No:    **00588341**
12  ROBIN ELLSWORTH,

13         Plaintiffs,              **COMPLAINT FOR DAMAGES AND
                                    DEMAND FOR JURY TRIAL**
14  v.

15  AMERICAN HOME MORTGAGE          1. **VIOLATION OF CIVIL CODE
    SERVICING, INC., a business        SECTION 2923.5**
16  form unknown, and POWER DEFAULT 2. **VIOLATION OF BUSINESS AND
    SERVICES, INC., a business form    PROFESSIONS CODE SECTION
17  unknown, and DOES 1-100, inclusive,   17200**

18         Defendants.             3. **ACCOUNTING**

19                                 **JUDGE JAMOA A. MOBERLY
20                                 DEPT. C12**

21  TO DEFENDANTS and to their counsel of record:

22      Plaintiffs, SAMUEL D. ELLSWORTH and ROBIN ELLSWORTH ("Plaintiffs"), by

23  their attorney, for causes of action against defendants AMERICAN HOME MORTGAGE

24  SERVICING, INC., a business entity form unknown, and POWER DEFAULT SERVICES,

25  INC., and DOES 1 through 100, inclusive (hereinafter collectively known as "Defendants")

26  allege the following on information and belief:

27

28

                    **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
                                          1

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

AUG 02 2012

ALAN CARLSON, Clerk of the Court

**I.**

**INTRODUCTION**

1. Plaintiffs sue Defendants and DOES 1 TO 100 based on:

   a. Defendants' Violations of California Civil Code section 2923.5

   b. Business & Professions Code section 17200 and engaging in unsafe and unsound banking procedures;

   c. Accounting.

2. Plaintiffs own the subject property located at **1702 La Loma Drive, Santa Ana, CA 92705** (the "Property").

3. We are now in the fifth year of the foreclosure crisis brought on by the Great Recession and made worse by the business practices of lenders, servicers, foreclosure trustees and vendors to whom critical functions are outsourced with little if any supervision.

4. The misconduct in the foreclosure industry, including Defendant AMERICAN HOME MORTGAGE SERVICING, INC. is well chronicled and is at this point beyond rational dispute.

**II.**

**PARTIES**

5. Plaintiffs are individuals, residing in Orange County, California at all times mentioned herein.

6. Upon information and belief, Defendant AMERICAN HOME MORTGAGE SERVICING, INC. is an entity of unknown form doing business in the State of California.

7. Upon information and belief, Defendant POWER DEFAULT SERVICES, INC. is an entity of unknown form doing business in the State of California.

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

2

8. Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 1-100, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities.

9. Plaintiffs are informed and believe, and based on such information and belief, allege that at all times mentioned in this Complaint Defendants were agents, servants, partners and/or employee of co-defendants, and in doing the actions mentioned below were, unless otherwise alleged, within the course and scope of their authority as such agent, servant, partner, and/or employee with the permission and consent of co-defendants.

10. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

11. Plaintiffs believe and are informed, and on that basis allege, that each of said Defendants was in some manner legally responsible for the unlawful actions, unlawful policies, and unlawful practices, complained of herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations when the same have been identified.

12. Venue and jurisdiction are proper in this Court because injury and damage to Plaintiffs occurred in its jurisdictional area and the Property is located in this jurisdictional area.

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

3

## III.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

14. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California. Cal. Code Civ. Proc. §410.10.

15. This Court is the appropriate venue for this action under California Code of Civil Procedure sections 395 and 395.5, because the acts that give rise to the causes of action alleged herein occurred in the County of Orange, State of California and the Subject Property is located in this county. Plaintiffs hereby designate the County of Orange, State of California, as the place of proper venue.

## IV.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues in this case.

## V.

## BACKGROUND FACTS

16. **Defendants' flawed Notice of Default.**  Defendant's April 16, 2012, Notice of Default contains a "California Declaration" indicating that American Home Mortgage Servicing, Inc. "tried with due diligence" to contact Plaintiffs in compliance with California Civil Code

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
4

section 2923.5.  Essentially, by their California Declaration, Defendants contend they tried to contact Plaintiffs through the various means outlined in the statute, but could not reach them. California Civil Code section 2923.5 provides that in the event that the lender is unable to contact the borrower via phone or in person, and has satisfied the very specific provisions of the "due diligence" requirements, the lender still has to wait 30 days before filing a Notice of Default.

17. Defendants **did not** in fact satisfy the provisions of Civil Code section 2923.5 despite the fact their California Declaration was under oath and, as a result, the current sale of August 13, 2012, should not go forward.

18. The foregoing acts and material omissions of the Defendants herein alleged, including Defendant American Home Mortgage Servicing, Inc. were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiffs' rights.

19. Defendant American Home Mortgage Servicing, Inc., as employer of representatives who Plaintiffs contacted, had advance knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights and safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

20. American Home Mortgage Servicing, Inc. is a corporate employer.  As such, its officers, directors, and/or managing agents had advanced knowledge the willful and despicable conduct herein alleged and ratified the aforementioned acts of its representatives and employees.

21. Defendants are acting in concert to deprive Plaintiffs of their civil rights by attempting to

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

5

take the Property without due process of law especially because Plaintiffs can afford modified payments.

22. Plaintiffs can enter into a loan modification that is affordable for Plaintiffs and one which would be more profitable to the Defendants than a foreclosure.

## VI.

### FIRST CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA CIVIL CODE § 2923.5

#### (As to All Defendants)

23. Plaintiffs re-allege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

24. Attached to the Notice of Default, Defendant American Home Mortgage Servicing, Inc. claims it complied with the requirements of California Civil Code section 2923.5 under the "Due Diligence" provisions of the code, which it did not.

25. The Due Diligence provisions are set forth in section 2923.5(g) and require that if Defendant cannot reach Plaintiffs, Defendant is obligated to mail a first class letter that includes the toll free telephone number made available by HUD to find a HUD-certified housing counseling agency. (CC 2923.5(g)(1).)  In the California Declaration, Defendant states under oath that it complied, but in fact Defendant did not mail such a letter to Plaintiffs.

26. Also, section 2923.5(g)(2) provides that Defendant must attempt to contact Plaintiffs by telephone at least three times at different houses and on different days.  The telephone calls shall be made to the primary telephone number on file.  In the California Declaration, Defendant states under oath it complied, but in fact, Defendants did not make the required telephone calls to Plaintiffs.

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

6

27. Section 2923.5(g)(3) obligates Defendant to send a certified letter to Plaintiffs, return receipt requested. In the California Declaration, Defendant states under oath it complied, but in fact, Defendant did not send the required letter to Plaintiffs.

28. As a result, Defendant's California Declaration is without foundation and fatally flawed and Defendant is unable to demonstrate that their foreclosure on Plaintiffs' home strictly complied with the tenets *of* California Civil Code section 2923.5 in order to maintain an action for possession.

29. As a result of these wrongful acts and omissions, Plaintiffs have been precluded from benefiting from the rights granted by Civil Code section 2923.5.

## VII.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF BUSINESS AND PROFESSIONS CODE SECTION 17200

### (As to all Defendants)

30. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

31. The Court has jurisdiction over this action pursuant to Business and Professions Code section 17200 et seq., specifically Business and Professions Code section 17203, which provides any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and Business

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

7

and Professions Code section 17204, which provides for actions for any relief pursuant to the Unfair Competition Law to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association or by any person acting for the interests of itself, their members or the general public.

32. Defendant's conduct of foreclosing on properties by failing to follow California Civil Code section 2923.5 and skipping the review process and proceeding with the sale is a violation of Business and Professions Code Section 17200. Defendants must take the steps required by California Civil Code section 2923.5 to *avoid* foreclosure. The failure to do so constitutes an unfair Business practice and Plaintiffs are now threatened with the sale of their property.

33. Defendants recorded a Notice of Default on April 16, 2012. The declaration attached to the Notice erroneously states that American Home Mortgage Servicing, Inc. "tried with due diligence to contact the borrower in accordance with CC §2923.5". However, as set forth herein, the claim of "due diligence" is erroneous. There is no evidence that Defendants sent a first-class letter to Plaintiffs that contained the required toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency. There is also no evidence that Defendants attempted to contact the Plaintiffs by telephone at least three times at different hours on different days. Additional, Defendants did not provide a certified letter, with return receipt requested.

34. Furthermore, the Declaration itself is deficient on the grounds that it is silent as to whether the Declarant, Nurfeta Bektic dated April 9, 2012 had foundational knowledge of the facts alleged in the Declaration.

35. Plaintiffs are informed and believe, and based thereon allege, that the illegal acts of Defendants is a serious threat to Plaintiffs because these illegal acts have allowed, or will allow, Defendants to wrongfully foreclose on the subject property, transfer title or interest of the subject property, and to cause the imminent eviction of Plaintiffs from their home. Because of Defendants' illegal actions, Plaintiffs will be forced out of the subject property. Such eviction will cause Plaintiffs to suffer further immediate and irreparable injury, loss, and damage.

36. At all times relevant to this Complaint, Defendants were lenders who were in the business of providing residential mortgages to the general public and were acting within the scope of that business with regard to the loan provided to Plaintiffs.

37. As set forth above, the predicate unlawful business acts and/or practices include Defendants' failure to comply California Civil Code section 2923.5 and/or section 2923.6.

38. Thus, Defendants acted unlawfully in that they violated California Civil Code section 2923.5 and/or section 2923.6.

39. As a direct, proximate, and foreseeable result of the unlawful conduct of Defendants, their business acts or practices have caused injury to Plaintiffs and the public; and Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profit, compensation, and benefit, which may have been obtained by Defendants as a result of such business acts or practices.

40. As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiffs have also lost equity in their home and may lose their home through foreclosure.

41. In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

## VIII.

## THIRD CAUSE OF ACTION

## ACCOUNTING

### (As to all Defendants)

42. Plaintiffs re-allege, and incorporate by reference, all paragraphs above, as though fully set forth in this cause of action.

43. Defendants have held themselves out to be Plaintiffs' creditor and mortgage servicer. As a result of this relationship with Plaintiffs, said Defendants has a duty to Plaintiff to properly account for payments made by Plaintiffs.

44. Plaintiffs have made mortgage payments to Defendant and its predecessors.   Plaintiffs believe and are informed that the amount claimed due and owing at the time of the Notice of Default of $40,791.12 is not correct.

45. Plaintiffs have a reasonable good faith belief that the claimed arrearages include improper excess charges and fees imposed by all Defendants without Plaintiffs' knowledge or consent, and which are not allowed by law.

46. The actual amount of the arrearages on Plaintiffs' loan is unknown to Plaintiffs and cannot be ascertained without an accounting.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as set forth below:

1.  For damages sustained by the Plaintiffs due to Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

2.  Pursuant to Business and Professions code section 17200, et seq., that all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

with them, be permanently enjoined from making any untrue or misleading statements or falsely reporting negative credit to reporting agencies, and selling the foreclosed property on an unlawfully procured debt in violation of Business and Professions Code section 17200, et seq.

3. Pursuant to Business and Professions Code section 17200, et seq., that the Court make such orders or judgments as may be necessary to prevent the use or employment by any Defendants of any practices which violate section 17200, et seq., of the Business and Professions Code, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any such practices.

4. Pursuant to Business and Professions Code section 17200, et seq., that this court make such orders or judgments as may be necessary to prevent the use of employment by any Defendants of any practice which constitutes an unfair business practice or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unlawful actions.

5. For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

6. For interest on the sum at the rate of 10% per annum;

7. For punitive damages against Defendants due to their intentional and wrongful acts;

8. For costs of suit.

9. For such other and further relief as the Court deems just and proper.

Dated: August 2, 2012                 LAW OFFICES OF JOSEPH R. MANNING, JR.
                                       A PROFESSIONAL CORPORATION


                                       By:_____
                                           Joseph R. Manning, Jr., Esq.
                                           Attorney for Plaintiffs

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

11

Exhibit 4

1  Rachel Dollar, SBN 199977
   Sherrill A. Oates, SBN 213763
2  SMITH DOLLAR PC
   Attorneys at Law
3  404 Mendocino Avenue, Second Floor
   Santa Rosa, CA 95401
4  Telephone: (707) 522-1100
   Facsimile:  (707) 522-1101
5
   Attorneys for Defendant Homeward Residential, Inc., formerly known as American
6  Home Mortgage Servicing, Inc. and Power Default Services, Inc.



7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10 SAMUEL D. ELLSWORTH and ROBIN    | CASE NO.: SACV 12-1499
   ELLSWORTH,
11                                  | **DEFENDANT HOMEWARD
         Plaintiff,                 | RESIDENTIAL, INC., FORMERLY
12                                  | KNOWN AS AMERICAN HOME
   v.                               | MORTGAGE SERVICING, INC.
13                                  | AND POWER DEFAULT SERVICES,
   AMERICAN HOME MORTGAGE           | INC.'S NOTICE OF REMOVAL OF
14 SERVICING, INC., a business entity| CIVIL ACTION PURSUANT TO 28
   form unknown and POWER DEFAULT   | U.S.C. §1441(b) AND 28 U.S.C. §1332
15 SERVICES, INC., a business entity form|
   unknown and DOES 1-100, inclusive|
16                                  |
         Defendants.                |

17

18      TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

19 CENTRAL DISTRICT OF CALIFORNIA:

20      PLEASE TAKE NOTICE that Defendants Homeward Residential, Inc.,

21 formerly known as American Home Mortgage Servicing, Inc. and Power Default

22 Services, Inc. ("Removing Defendants"), hereby removes the above-captioned action

23 described further below:

24      1.   A complaint was filed in the Superior Court of California, County of

25 Orange, on or about August 2, 2012, entitled *Ellsworth v. American Home Mortgage*

26 *Servicing, Inc.*, Case No. 30-2012-00588341 (the "State Court Action").  Copies of

27 the summons, complaint and pleadings filed and received by Removing Defendants

28 are attached hereto collectively as **Exhibit "A"**.



---
- 1 -
---
NOTICE OF REMOVAL OF CIVIL ACTION

2. Removing Defendants received the summons and complaint on or about August 8, 2012.

3. Removing Defendants remove this Action within 30 days of service, and within one year from the filing of the complaint, thus the removal was timely, pursuant to 28 U.S.C. § 1446(b).

4. This action could have been originally filed in this Court and is removable to the instant Court pursuant to 28 U.S.C. § 1441(b) because neither of the Defendants is a citizen of the State of California and there exists complete diversity of citizenship. Both named Defendants are citizens of Delaware and the principal place of business for both Defendants is Texas. Both Defendants' "nerve centers" are also located in Texas. *Giannini v. American Home Mortgage Servicing, Inc.,* 2011 U.S. Dist. LEXIS 144434, *10 (N.D. Cal. Dec. 15, 2011).

5. This case meets the amount in controversy for diversity purposes because Plaintiffs are seeking a permanent injunction to keep Defendants from selling the foreclosed property and have disputed the defaulted loan and claim that the debt was "unlawfully procured." Complaint Prayer for Relief at paragraph 2. For amount in controversy purposes, when the object of the litigation is a permanent injunction prohibiting the foreclosure or sale of real property, the amount in controversy is determined by the value of the Property. *See Reyes v. Wells Fargo Bank, N.A.,* 2010 U.S. Dist. LEXIS 113821, *12-13 (remanding the action in part because Plaintiffs were only seeking a temporary injunction, where in this case, Plaintiffs have sought a permanent injunction barring foreclosure and Plaintiffs also dispute the debt); *see also Forsythe v. Wells Fargo Bank, N.A.,* 2012 U.S. Dist. LEXIS 44031, *7 (C.D. Cal., Mar. 28, 2012). Moreover, Plaintiffs obtained an Order from the Orange County Superior Court requiring Defendants to rescind a foreclosure sale that Plaintiffs claim occurred on August 13, 2012 and enjoining the issuance of the Trustee's Deed Upon Sale. The Orange County Tax Assessor has assessed the value of the Property at $1,272,000. Therefore, the $75,000 minimum amount in

NOTICE OF REMOVAL OF CIVIL ACTION

1  controversy has been met.

2      6.    Removing Defendants have met the procedural requirements for

3  removal because no other named or identified defendants in this Action have yet been

4  served and have not yet appeared and thus no consent of other parties is required.

5  Immediately prior to removing this Action the undersigned checked with the Orange

6  County Superior Court's website and found no proofs of service for any other

7  identified Defendant, and upon information and belief no other defendants in this

8  action have been joined or served.

9      7.    Venue is proper in the United States District Court for the Central

10  District of California, because the original Complaint was filed in the Orange County

11  Superior Court.  Thus, this Court is the "district and division embracing the place

12  where such action is pending." 28 U.S.C. § 1441(a).

13      8.    A copy of this Notice of Removal is being served on all adverse parties

14  and filed with the clerk of the state court pursuant to 28 U.S.C. §1446(d).  A copy of

15  the notice to all adverse parties and the state court is attached (without exhibits) as

16  **Exhibit "B"**.

17      No previous application has been made for the relief requested herein.

18      WHEREFORE, Defendant hereby remove this Action from the Superior Court

19  of California for the County of Orange to this Court pursuant to 28 U.S.C. § 1441.

20

21  Dated:  September 7, 2012

22                      SMITH DOLLAR PC

23                      /s/ Sherrill A. Oates

24                 By_____

25                      Sherrill A. Oates
                    Attorneys for Defendant Homeward

26                      Residential, Inc., formerly known as
                    American Home Mortgage Servicing, Inc.
                    and Power Default Services, Inc.

27

28

1

**PROOF OF SERVICE**

2

I am employed in the County of Sonoma, State of California. I am over the age of 18 years and not a party to the within action. My business address is 404 Mendocino Avenue, Second Floor, Santa Rosa, California 95401. On September 7, 2012, I served the **DEFENDANT HOMEWARD RESIDENTIAL, INC., FORMERLY KNOWN AS AMERICAN HOME MORTGAGE SERVICING, INC. AND POWER DEFAULT SERVICES, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §1441(b) AND 28 U.S.C. §1332** on the parties to this action by serving:

3

4

5

6

7

Joseph R. Manning, Jr.
The Law Offices of Joseph R.
Manning, Jr. A Professional
Corporation
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660

Attorney for Plaintiffs
Telephone: (949) 361-3232
Facsimile: (866) 843-8308
Email:
          BHashemi@manninglawoffice.com

8

9

10

11

/XX/ **BY U.S. MAIL:** I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Santa Rosa, California, following ordinary business practices. I am readily familiar with the practice of Smith Dollar PC for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

12

13

14

15

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

16

17

Dated: September 7, 2012

18

19

*Debbie Smith*

20

21

————————————            Debbie Smith

22

23

24

25

26

27

28

- 1 -

PROOF OF SERVICE

Exhibit 5

1   Rachel Dollar, SBN 199977
    Sherrill A. Oates, SBN 213763
2   SMITH DOLLAR PC
    Attorneys at Law
3   404 Mendocino Avenue, Second Floor
    Santa Rosa, California 95401
4   Telephone: (707) 522-1100
    Facsimile: (707) 522-1101
5
    Attorneys for Defendants Homeward Residential, Inc., formerly known as American
6   Home Mortgage Servicing, Inc. and Power Default Services, Inc.

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                         SOUTHERN DIVISION

11

12  SAMUEL D. ELLSWORTH and ROBIN       CASE NO.:   SACV12-1499 AG
    ELLSWORTH,                          (MLGX)
13
            Plaintiffs,                 **ANSWER TO COMPLAINT**
14  v.
                                        **REQUEST FOR JURY TRIAL**
15  AMERICAN HOME MORTGAGE
    SERVICING, INC., a business entity   Judge: Andrew Guilford
16  form unknown and POWER DEFAULT
    SERVICES, INC., a business entity form  Complaint Filed: August 2, 2012
17  unknown and DOES 1-100, inclusive,  Trial Date:      N/A

18          Defendants.

19

20       Homeward Residential, Inc., f/k/a American Home Mortgage Servicing, Inc.

21  ("Homeward") and Power Default Services, Inc. ("Power") (together "Defendants")

22  hereby answer the Complaint filed by Samuel and Robin Ellsworth ("Plaintiffs") as

23  follows:

24       1.    Defendants admit the allegations on ¶ 1 of the Complaint that Plaintiffs

25  have sued them alleging that Defendants violated Civil Code §2923.5, Business and

26  Professions  Code  §  17200  and  accounting.    Defendants  deny  the  remaining

27  allegations against them, as neither is a bank.

28       2.    Defendants are without sufficient information or belief to admit or deny



252809                           - 1 -
                         **ANSWER TO COMPLAINT**

the allegations of ¶2 of the Complaint, and thereby deny ¶2.

3.    Defendants are without sufficient information or belief to admit or deny the allegations of ¶3 of the Complaint, and thereby deny ¶3.

4.    Defendants are without sufficient information or belief to admit or deny the allegations of ¶4 of the Complaint, and thereby deny ¶4.

5.    Defendants are without sufficient information or belief to admit or deny the allegations of ¶5 of the Complaint and thereby deny ¶ 5.

6.    Defendants admit the allegations in ¶ 6 of the Complaint.

7.    Defendants admit the allegations in ¶ 7 of the Complaint.

8.    Defendants are without sufficient information or belief to admit or deny the allegations of ¶8 of the Complaint, and thereby deny ¶8.

9.    Defendants admit that Power is an agent of Homeward as alleged in ¶ 9 of the Complaint.  However, to the extent that the statement "doing the actions mentioned below" refers to any allegations of unlawful, improper, or otherwise wrongful conduct on the part of Defendants, the allegations are denied.

10.    Defendants are without sufficient information or belief to admit or deny the allegations of ¶10 of the Complaint, and thereby deny ¶10.

11.    Defendants are without sufficient information or belief to admit or deny the allegations of ¶11 of the Complaint, and thereby deny ¶11.

12.    Defendants admit that the events alleged in the Complaint at ¶12 occurred in Orange County, California, but deny that the Superior Court for the State of California, County of Orange is the correct Court because Defendants have removed the Action to this Court based upon diversity of citizenship.

13.    Defendants admit that the United States District Court for the Central District of California has subject matter jurisdiction over the matters alleged in the Complaint as alleged in ¶13 of the Complaint.

14.    Defendants admit that the Court has personal jurisdiction over Defendants because they are incorporated in Delaware and their principal place of

business and nerve center is in Texas, and Plaintiffs reside in Orange County, California as alleged in ¶14. Defendants deny that they reside in, are incorporated in, or have their main place of business in the State of California as alleged in ¶14.

15.     Defendants admit that this Court is the proper venue for the Action and deny that the Superior Court of the State of California, County of Orange is the proper venue for the Action because the Action has been removed to this Court.

16.     Defendants admit that a Notice of Default ("NOD") was recorded on April 16, 2012 against the Property owned by Plaintiffs as alleged in ¶16 of the Complaint. Defendants deny that the NOD was flawed in any way.

17.     Defendants deny the allegations in ¶17 of the Complaint.

18.     Defendants deny the allegations in ¶18 of the Complaint.

19.     Defendants deny the allegations in ¶19 of the Complaint.

20.     Defendants deny the allegations in ¶20 of the Complaint.

21.     Defendants deny the allegations of ¶21 of the Complaint.

22.     Defendants are without sufficient information or belief to admit or deny the allegations of ¶22 of the Complaint, and thereby deny ¶22.

23.     Defendants incorporate their responses to paragraphs 1-22 as though fully set forth herein.

24.     Defendants admit that a declaration of due diligence was attached to the recorded NOD as alleged in ¶ 24. Defendants deny that they did not comply with the provisions of Civil Code § 2923.5.

25.     Defendants admit that due diligence provisions are set forth in section 2923.5(g) as alleged in ¶25. Defendants deny the remaining allegations of ¶25 of the Complaint.

26.     Defendants admit that Civil Code section 2923.5(g) sets forth the contact procedures, and that it complied with those procedures as alleged in ¶ 26. Defendants deny the remaining allegations in ¶ 26.

27.     Defendants admit that Civil Code section 2923.5(g) sets forth the

1    contact procedures and that Defendants complied with them and stated such on the

2    declaration recorded with the NOD as alleged in ¶ 27 of the Complaint.  Defendants

3    deny the remaining allegations in ¶27 of the Complaint.

4        28.    Defendants deny the allegations of ¶ 28 of the Complaint.

5        29.    Defendants deny the allegations of ¶29 of the Complaint.

6        30.    Defendants incorporate their responses to paragraphs 1-29 as though

7    fully set forth herein.

8        31.    Defendants deny that the Superior Court for the State of California,

9    County of Orange has jurisdiction over this matter. Defendants admit that jurisdiction

10   is appropriate in the United States District Court for the Central District of California

11   because Defendants removed the Action to this court based upon diversity of

12   citizenship.

13       32.    Defendants deny the allegations of ¶32 of the Complaint.

14       33.    Defendants admit that a NOD was recorded on April 16, 2012, and that

15   the recorded NOD included a declaration of due diligence with it.  Defendants deny

16   the remaining allegations in ¶33 of the Complaint.

17       34.    Defendants deny the allegations of ¶34 of the Complaint.

18       35.    Defendants deny the allegations of ¶35 of the Complaint.

19       36.    Defendants deny the allegations of ¶36 of the Complaint.

20       37.    Defendants deny the allegations of ¶37 of the Complaint.

21       38.    Defendants deny the allegations of ¶ 38 of the Complaint.

22       39.    Defendants deny the allegations of ¶39 of the Complaint.

23       40.    Defendants deny that any of their conduct has been unlawful as alleged

24   in ¶ 40 of the Complaint.  Defendants deny the remaining allegations of ¶40 of the

25   Complaint.

26       41.    Defendants can neither admit nor deny the statements made in ¶ 41 of

27   the Complaint.

28       42.    Defendants incorporate their responses to all allegations above as though

1    fully set forth herein.

2        43.    Defendants deny that Power is a creditor or mortgage servicer as set

3    forth in ¶43 of the Complaint.  Defendants deny that any duty was owed to Plaintiffs.

4        44.    Defendants admit that Plaintiffs have made some payments on the

5    mortgage as alleged in ¶44 of the Complaint. Defendants deny the remaining

6    allegations in ¶44 of the Complaint.

7        45.    Defendants deny the allegations in ¶45 of the Complaint.

8        46.    Defendants deny the allegations in ¶ 46 of the Complaint.

9                        **First Affirmative Defense**

10       47.    The Complaint fails to state a cause of action against these Defendants.

11                      **Second Affirmative Defense**

12       48.    Defendants' acts as alleged in the Complaint were privileged.

13                       **Third Affirmative Defense**

14       49.    Plaintiffs have already received one loan modification which they

15   defaulted upon.

16                      **Fourth Affirmative Defense**

17       50.    Plaintiffs' failure to make their mortgage payments is the reason for

18   their damages.

19                       **Fifth Affirmative Defense**

20       51.    Plaintiffs are estopped from making the claims alleged in the Complaint.

21                       **Sixth Affirmative Defense**

22       52.    Defendants' acts alleged in the Complaint were justified.

23                      **Seventh Affirmative Defense**

24       53.    Defendants' acts were excused by Plaintiffs' breach of contract.

25                       **Eighth Affirmative Defense**

26       54.    Defendants complied with the provisions of Civil Code Section 2923.5

27   prior to recording the NOD.

28



252809

**ANSWER TO COMPLAINT**

## Ninth Affirmative Defense

55.   Defendants applied all of Plaintiffs' payments it received in accordance with the Deed of Trust and Note executed by Plaintiffs.

## Tenth Affirmative Defense

56.   Defendants have unreasonably delayed in bringing this action to the prejudice of these answering Defendants and are therefore barred from bringing this action pursuant to the Doctrine of Laches.

## Eleventh Affirmative Defense

57.   Defendants are informed and believe and on the basis of such information and belief allege that the injuries and damages of Plaintiffs, in this action, if any, were caused by or contributed to by defendants, other than these answering Defendants, and/or by other parties unknown, acting without authority from these Defendants and not from any negligence, fault or breach of duty owed by these Defendants.

## Twelfth Affirmative Defense

58.   That Plaintiffs' injuries, if any, were unforeseeable to these answering Defendants.

## Thirteenth Affirmative Defense

59.   That Plaintiffs directed, ordered, approved and/or ratified the conduct set forth within their TAC and are therefore estopped from asserting any claims based thereon.

## Fourteenth Affirmative Defense

60.   That Plaintiffs were careless and negligent in and about the matters alleged in the TAC, and alleged causes of action therein, and that said carelessness and negligence contributed to their alleged damages, if any.  Plaintiffs' contributory negligence shall reduce any and all damages sustained by Plaintiffs, if any such damages exist.  Further, in the event that Plaintiffs should recover an award in this case, the same should be reduced proportionately by the percentage of negligence contributed to by the Plaintiffs as a proximate cause of the damages alleged.

252809

- 6 -

**ANSWER TO COMPLAINT**

1

### Fifteenth Affirmative Defense

2   61. That the damages, if any, sustained by Plaintiffs are the direct result of

3 Plaintiffs' sole fault and negligence, thereby barring Plaintiffs' claim completely.

4

### Sixteenth Affirmative Defense

5   62. That Defendants offered Plaintiffs a loan modification which they

6 accepted, but then failed to perform under.

7

### Seventeenth Affirmative Defense

8   63. That the recording of foreclosure-related documents is privileged.

9

### Eighteenth Affirmative Defense

10   64. These answering Defendants presently have insufficient knowledge or

11 information on which to form a belief as to whether they may have additional, as yet

12 unstated, defenses available.  These answering Defendants reserve the right to assert

13 additional defenses in the event discovery indicates that they would be appropriate.

14   WHEREFORE, these answering Defendants pray judgment as follows:

15   1. That Plaintiffs take nothing by way of their FAC;

16   2. That Defendants recover from Plaintiffs their costs, including reasonable

17 attorney's fees; and

18   3. That the Court order such other and further relief as it may deem proper.

19

20 Dated:  September 14, 2012

21

22       SMITH DOLLAR PC

        /s/ Sherrill A. Oates

23

       By _____

24        Sherrill A. Oates
        Attorneys for Defendants Homeward

25        Residential, Inc., formerly known as
        American Home Mortgage Servicing, Inc.

26        and Power Default Services, Inc.

27

28

### ANSWER TO COMPLAINT